```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

MARCEL BROWN,                      ) No. 19 C 4082
                                   )
              Plaintiffs,          )
                                   )
         vs.                       ) Chicago, Illinois
                                   )
CITY OF CHICAGO, et al.,           )
                                   ) January 11, 2022
              Defendants.          ) 1:45 p.m.

              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HON. SARA L. ELLIS

APPEARANCES:

For the Plaintiff:    MR. LOCKE E. BOWMAN III
                      Roderick and Solange MacArthur
                      Justice Center,
                      Northwestern University School of Law,
                      160 East Grand Avenue, 6th Floor,
                      Chicago, Illinois  60611


For Defendant
Spizzirri:            MR. PETER J. O'MARA
                      MS. MARGARET A. HAYES
                      O'Mara, Gleason & O'Callaghan, LLC,
                      230 West Monroe Street, Suite 2620,
                      Chicago, Illinois  60606
```

PATRICK J. MULLEN
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1412
Chicago, Illinois  60604
(312) 435-5565

(Telephonic proceedings on the record.)

THE CLERK: 2019 CV 4082, Brown versus City of Chicago.

MR. O'MARA: Good morning. This is Peter O'Mara on behalf of the movant, Michelle Spizzirri.

MS. HAYES: Good morning. This is Margaret Hayes also on behalf of Michelle Spizzirri.

MR. BOWMAN: Locke Bowman, Your Honor, on behalf of Marcel Brown and also a movement with respect to a separate motion.

THE COURT: All right. Good morning.

Okay. So we've got defendant's motion for leave to file excess pages and their motion to dismiss, and then we've got plaintiff's motion to strike that motion. So my question to the defendants is this. When you wanted to file a 12(c) motion, I essentially said that I can't review the videotape and interpret any of the interactions that occurred on that tape to determine at the motion to dismiss stage whether the defendant should be made to answer the complaint or whether the plaintiff has failed to state a claim, that it seemed to me what the defendant was asking me to do was to convert this into a summary judgment motion, which I'm not going to do at this stage.

If the defendants believe that they could move forward on a summary judgment motion and that there's enough factual

1 record developed at this point to do that, then go ahead and do
2 it. If the plaintiff, however, then makes a motion saying he
3 can't respond because we're still in the middle of discovery
4 and there's more facts needed to be developed, then I would
5 allow the plaintiffs to do that.
6 So having kind of gone through that previously on your
7 12(c) motion, I'm not sure why it is the defendant then turned
8 around and filed a 12(b)(6) motion essentially asking me to do
9 the same thing that I said I wasn't going to do.
10 MR. O'MARA: Yes, Your Honor. I would just articulate
11 that there was a different sort of procedural posture.
12 Contemporaneously with the last motion, the plaintiff was
13 seeking leave to file a second amended complaint, and I think
14 that was part of the calculus. The 12(c) would not be
15 responsive to the operative complaint when leave was granted to
16 file the amended complaint.
17 Respectfully, it is true that you stated the Court
18 can't consider anything beyond the four corners of the
19 complaint for the purposes of a motion to dismiss, but the
20 Court laid out the exception, which is unless the plaintiff
21 referenced the video, the extrinsic record, in the complaint
22 and that ERI, the video record, refutes the allegations in the
23 complaint, that that would be the only circumstance under which
24 the Court would consider that evidence as part of a motion to
25 dismiss.

1       That is precisely what we've done.  We have pointed
2  out, you know, in the attached 12(b)(6) as an exhibit that the
3  video is expressly referenced in the complaint and referred to
4  many, many times throughout the complaint.  Many paragraphs of
5  the complaint refer to conduct that is depicted in that video,
6  and the express articulation at paragraph 39 of the currently
7  operative second amended complaint states that the
8  interrogation was recorded on video.
9       So we've met the two elements of the exception you
10 laid out in your order, that unless the plaintiff references
11 the extrinsic record in the complaint and those records refute
12 the allegations in the complaint we're out of luck.  But we're
13 not out of luck because that is precisely what has occurred
14 here.
15      As to the plaintiff's claim that we failed on the
16 second prong, that we didn't give any instances where the
17 content of the video contradicts the substance of allegations
18 contained in the complaint, we have.  You know, at pages 24 and
19 25, we lay out seven or eight specific instances where it would
20 not require the Court to engage in any interpretation of facts,
21 just merely reviewing the video.
22      You know, for example, we discuss that they allege
23 that our client provided the plaintiff with false information.
24 That is refuted by the video.  That the plaintiff spoke with a
25 raised or angry voice, that is refuted by the video.  That

1  doesn't require interpretation by the Court.  Just watch the
2  video and you'll see that those allegations are contradicted by
3  the objective recording of the events that occurred that are
4  alleged against our client.
5       Now, as to some of the other defendants, there are
6  allegations about conduct engaged in, you know, potentially
7  constitutionally violative conduct that occurred outside of
8  that interview room and, therefore, are not depicted on the
9  video.  But all of the allegations as to ASA Spizzirri have to
10 do with what happened in that room for the 68 minutes she was
11 in the room, and there is no better evidence than the objective
12 video recording.
13      Because the principles of absolute and qualified
14 immunity provide protection from suit, we do feel that it is
15 the appropriate procedural juncture now that there's a second
16 operative complaint and we are responsively pleading with a
17 12(b)(6) and have met the two prongs of the test that the Court
18 laid out, that the complaint expressly refers to the recorded
19 video and then relies on allegations that are depicted on that
20 video throughout the entire complaint which are contradicted
21 when viewing the video.  This is the exact scenario that the
22 Court laid out, so that is our position.
23      THE COURT:  All right.  Mr. Bowman, go ahead.
24      MR. BOWMAN:  Judge, you got it right in the order that
25 you entered earlier in this case on November 29, 2021.  The

1  basic idea of a 12(b)(6) motion, just like a 12(c) motion, is
2  to attack the sufficiency of allegations that have been made in
3  the complaint.  So it's a discussion about what is alleged in
4  the complaint.  That can encompass additional material under
5  very limited circumstances.  Where, for example, a contract is
6  attached to the complaint and incorporated by reference, the
7  discussion about the sufficiency of the allegations can include
8  that contract.  That's basically what a 12(b)(6) motion is
9  about, what's alleged.
10          A Rule 56 motion isn't about what is alleged.  It's
11 about what actually happened in the underlying circumstances.
12 What Mr. O'Mara's motion wishes to engage the Court in is a
13 consideration of what actually happened, and that is the
14 province of a Rule 56 motion.  There are very limited
15 circumstances in which material that is not incorporated by
16 reference into a complaint may be considered as part of a
17 12(b)(6) "what is alleged" discussion, and that is a situation
18 where the moving party can point to a document that
19 specifically contradicts what is alleged in the complaint.
20          So the classic example of that would be a securities
21 fraud case based on statements that are made in a prospectus or
22 in an SEC filing that happens not to be attached to the
23 complaint, but when it is examined it can be shown to be flatly
24 inconsistent with what is alleged in the complaint.
25          One of the cases that we cited in our earlier filing

1  makes the point that the reason for this very narrow exception
2  is to avoid gamesmanship, so where a plaintiff makes an
3  allegation that is factually false.
4  　　　　　The problem with this 34-hour videotape is that
5  consideration of the video involves an interpretation
6  essentially of what happened.  Mr. O'Mara says that voices are
7  raised and threatening.  Mr. Brown in his deposition affirms
8  that that is how he perceived the situation.  Or say I say that
9  and then Mr. O'Mara says:  No, that's not the case.  In our
10 interpretation of the video, it's different.
11 　　　　　Then the discussion becomes a discussion about what
12 happened.  Is it the way we described it, or is it the way that
13 Mr. O'Mara in his motion describes it?  In the context of
14 summary judgment, we can decide whether there is a basis for
15 competing inferences and that summary judgment should be denied
16 or whether, on the other hand, only one interpretation is
17 supported by the undisputed facts.
18 　　　　　But what we are doing here is we are going around a
19 conversation that, you know, you already put an end to back in
20 November.  One of the points that we made in our earlier
21 pleading is that this is not only a convoluted and confusing
22 way to proceed, it's a very unfair way to proceed because a
23 full and complete understanding of the interrogation and what
24 happened involves an appreciation of events that took place and
25 conversations that occurred outside the range of the camera.

1 Mr. O'Mara wants to cut that evidence out and do some kind of,
2 you know, limited summary judgment motion where only part of
3 the presentation is placed in front of the Court.
4 By way of example, Mr. O'Mara says that there was no
5 coordination between Spizzirri and the police defendants.
6 Well, we have evidence outside the context of the video that
7 disproves that assertion. Mr. O'Mara wants this considered,
8 you know, without our having an opportunity to present that
9 other evidence to you by saying, you know, just look at the
10 video, and that just gets us into a discussion that's not only
11 fair -- unfair but can lead to error.
12 Another very central problem that Mr. O'Mara's motion
13 does not come to terms with is the reality that there is a
14 conspiracy allegation in this case. So we allege that
15 Ms. Spizzirri joined a conspiracy with the police defendants to
16 coerce a confession and to fabricate evidence. There is a
17 basis for that allegation. It's predicated, as I said, in part
18 on events occurring outside the range of the video.
19 If there is, indeed, a conspiracy, then isolating
20 Ms. Spizzirri's actions from the actions of the other
21 defendants is improper. So this, you know, idea that you can
22 segregate her out and consider her in isolation is inconsistent
23 with the facts that are alleged.
24 I fear I've gone on too long, but we object to this in
25 the most strenuous terms. We objected to it initially, and we

1  doubly object now because we're going over the same ground
2  twice and that shouldn't be necessary.
3        THE COURT:  All right.  Thank you.
4        You know, I'm just looking at the 12(b)(6), and I'm
5  looking at page 29.  The first sentence -- actually, the first
6  two sentences show why this is a problem.  It says:
7        "Looking at the foregoing circumstances in their
8  totality in light of the ERI evidence which refutes many
9  allegations in plaintiff's complaint, plaintiff's will was not
10 overborne.  Spizzirri did not participate in or cause a
11 coercive interrogation that rendered plaintiff's confession
12 involuntary."
13       The only way that I would know that is if I look at
14 the video and then interpret the interactions in the video.  If
15 there was a contract, then I'd just simply be looking at the
16 plain language of the contract.  That's why it's okay if a
17 plaintiff references a contract in a complaint.  I could look
18 at the contract and see what's the plain language of the
19 contract.  I don't have to get into the parties'
20 interpretations.  I don't have to look at what they mean.  I
21 just have to look at what the language says, and it either says
22 what it says and is consistent with the plaintiff's allegations
23 or it doesn't.
24       Here, though, I'm looking at and would be asked to
25 determine whether the defendant's conduct during this

1 interrogation was coercive.  So then I have to interpret what
2 the tone of her voice was.  Did it appear to be coercive to me?
3 Did it appear to be -- would it have been coercive to the
4 plaintiff?  Is it reasonable for the plaintiff to believe that
5 he was being coerced?  Is there information that she had that
6 she withheld which made it coercive which I wouldn't know from
7 just watching the video?  All of that is asking me essentially
8 to say:  Can the plaintiff prove the allegations in his
9 complaint through this video or not?
10 　　　　　There's so much more to this case than the video
11 itself, and a 12(b)(6) motion is not the place to be asking can
12 the plaintiff prove its allegations.  The standard is:  Do we
13 know what the allegations are?  Is it a short and plain
14 statement so you know what the allegations are, and are they
15 allegations that may or may not be proved later during
16 discovery but essentially aren't outlandish?  Is there some
17 reasonable basis to make these allegations?
18 　　　　　That's the point of a 12(b)(6) motion, and that was
19 the same issue that we had when it was a 12(c) motion and you
20 were looking for judgment on the pleadings.  Nothing has
21 changed other than that plaintiff at this point is not seeking
22 to file an amended complaint, but that didn't weigh heavily in
23 my decision-making process the last time.  It really is that
24 what you're asking me to do in reviewing the video is say based
25 on the video that there's no way the plaintiff can prove his

1  complaint, the allegations in his complaint.

2  It would be one thing if this was a video where it
3  showed presumptively that the defendant wasn't there and they
4  relied on the video, referenced the video in the complaint, and
5  the video showed beyond a doubt that she wasn't even there.
6  Then perhaps I could look at the video and make a ruling, but
7  here it is completely different. You are asking me to
8  interpret their interactions and determine whether it's
9  coercive or not.

10  MR. O'MARA: Your Honor, if I may?
11  THE COURT: Go ahead.
12  MR. O'MARA: This is akin to the analogy you just laid
13  out where somebody is -- you know, where somebody alleges that
14  Michelle Spizzirri was in the room when she was not, in fact,
15  in the room. We're not asking for factual interpretations for
16  most of these allegations. They are -- the cases cited by
17  Mr. Bowman, in particular the Jackson v. Curry case, you know,
18  which internally cites to Scott v. Harris, talks about whether
19  or not the video contradicts essential details of the
20  plaintiff's account, and these don't require interpretation.

21  The first referenced case, Jackson v. Curry, first of
22  all, Mr. Bowman mischaracterized the Seventh Circuit as having
23  approved of the district court's decision not to review the
24  ERI, but that's not what happened. They found they didn't have
25  jurisdiction because it wasn't a final order.

1    But setting that aside, the reason that the district
2 court didn't review the video is because the key issue there
3 did require a fact-intensive inquiry, which was whether or not
4 the person being interviewed, the plaintiff, was intoxicated.
5 So that requires a judgment.  We have whole trials about
6 whether or not somebody is intoxicated.
7    That's not what we're seeking here.  The specific
8 allegations that are contradicted by the video are core kernel
9 facts that are cornerstones to their complaint.  You know, they
10 are alleging that Michelle Spizzirri threatened the plaintiff
11 with prison.  She did not.  The only time the word "prison"
12 came up is when the plaintiff brought it up.  You know, that
13 she mocked or belittled the plaintiff, that doesn't require
14 interpretation.  Did she ever mock or belittle him?  That she
15 provided him with false information, she did not.  That is not
16 contained in the video.
17    THE COURT:  Hold on.  Hold on, Mr. O'Mara.  When you
18 say things like "did she ever mock or belittle him," I don't
19 know if you have children, but my children sometimes say to me:
20 Why are you yelling at me?
21    Then I will look at them and say:  I wasn't yelling
22 you at all.  If you want me to, I can yell, but that wasn't
23 yelling.
24    MR. O'MARA:  Yes, I'm familiar with that scenario.
25    THE COURT:  Okay?  I know I wasn't yelling.  I'm fully

1 capable of yelling when I want to, and I wasn't yelling. But
2 to my daughter who is hearing a disapproving tone in my voice,
3 that to her is yelling.
4     MR. O'MARA: I agree with that. I agree with that. I
5 inartfully left out a part of their allegation, which is not
6 merely that Spizzirri mocked or belittled plaintiff but
7 specifically that she mocked or belittled plaintiff for wanting
8 to call his mother. That never happened. It never happened.
9 It is flatly contradicted.
10     The only time a conversation about a phone call came
11 up was, again, by the plaintiff, and ASA Spizzirri said: I'll
12 see about the detectives getting you a phone call.
13     That is the only mention of the word "phone" during
14 the entire time she's in the room. So it is not a
15 characterization of: Does this constitute mocking or
16 belittling? It depends. It's in the eyes of the beholder.
17     No, it's a specific allegation, mocking or belittling
18 him for wanting to call his mother, and it never happened.
19     The video, you know, Mr. Bowman brought up the issue
20 of the case law that discusses gamesmanship, the Tierney v.
21 Vahle case, and he mentions that and articulates a quote saying
22 that, you know, the reason such a rule, this incorporation
23 doctrine, exists is so that the plaintiff could -- you know,
24 otherwise, the plaintiff could evade dismissal by failing to
25 attach to its complaint any documents or records that proved

1 his claim or the allegations had no merit.

2 That's exactly what they've done. They had this video
3 and they had this transcript at the time they drafted their
4 first complaint and the second complaint and now the second
5 amended complaint. They used it in proceedings below at
6 post-conviction, and they opted not to give it to the Court
7 even though -- I should not say "even though" but because it
8 just flatly contradicts cornerstone allegations against
9 Ms. Spizzirri.

10 So these are very discrete and are not subject to
11 interpretation or interpretation is not required to determine
12 is it true. Did she, you know, mock him for wanting to call
13 his mother? Did she threaten him with prison? No and no.
14 It's not in the video. It's not in the transcript.

15 So the only way they can make those allegations is by
16 engaging in the very gamesmanship that Mr. Bowman is saying,
17 you know, the case law exists to avoid. They can't make these
18 allegations if they attached the video to their complaint.
19 They, again, expressly referred to the existence of this video
20 and referred back to it in terms of describing conduct that's
21 allegedly on the video, but it is not if the Court were to
22 review the video.

23 So I understand the reluctance when it comes to the
24 broader issue of was there coercion, but the factual building
25 blocks that form the basis of the allegations in the complaint

Case: 1:19-cv-04082 Document #: 148 Filed: 01/30/22 Page 15 of 19 PageID #:2599

15

1  are contradicted by the video.  That is our position.
2       You know, in terms of the Court's articulation in the
3  order, the only exception is if the plaintiff references the
4  extrinsic records in the complaint and those records refute the
5  allegations in the complaint.  That's precisely the situation
6  here, and that's precisely what we've pled.
7       So I understand the Court's reluctance, and I really
8  do feel like it wasn't a ruling on the merits at the last
9  procedural juncture because of the -- because there were, you
10 know, contemporaneous motions and the plaintiff was seeking to
11 file an amended complaint.  Well, they've now filed that, and
12 we have the right to represent our client by responding with a
13 12(b)(6) articulating the exact exception that the Court laid
14 out.
15      So in our view this does not require any
16 interpretation.  You know, just make a bucket of popcorn and
17 pop the video in for the 68 minutes.  It speaks for itself.
18 She did not engage in any unconstitutional behavior or conduct.
19      MR. BOWMAN:  Your Honor, may I respond briefly --
20      THE COURT:  Go ahead.
21      MR. BOWMAN:  -- because there is a record being made
22 here?
23      THE COURT:  Go ahead.
24      MR. BOWMAN:  I just need to say that what is not
25 appreciated in the comments that were just made is that there

1 is a claim against all of the defendants who participated in
2 the interrogation for a conspiracy, a conspiracy to coerce a
3 confession and create fabricated evidence.

4 When conspiracies are properly alleged and when they
5 can be proven, the result is that each co-conspirator is liable
6 for the acts of every other participant in the conspiracy.
7 That's bedrock law, and that principle made us comfortable
8 making allegations regarding the course of the interrogation
9 that pertained generically to all of the co-conspirators, both
10 the police and Ms. Spizzirri.

11 So Mr. O'Mara's contentions that we are engaging in
12 gamesmanship and making false allegations in this complaint are
13 intemperate and unwarranted and reflect a misunderstanding of
14 the law that undergirds our position in this case. I realize
15 that that's a side point, but I didn't want those observations
16 to go un-responded to since we are making a record here. Thank
17 you for allowing me to respond, Your Honor.

18 THE COURT: All right. So, Mr. O'Mara, I understand
19 the point you're making. However, I still do not believe that
20 at this point it's appropriate for me to review the videotape
21 and decide whether your client is liable based on the
22 interactions between herself and the plaintiff on the
23 videotape. I just still have very significant concerns about
24 the appropriateness of that given the procedural posture.

25 MR. O'MARA: I understand.

1 THE COURT: So, you know, I can't stop you from filing
2 a 12(b)(6). If you want to file it, you certainly can, but I
3 think it would be more efficient essentially to focus on the
4 case and get it to a point of summary judgment and file a
5 summary judgment motion. But I'll leave that to -- I mean, if
6 you want to file it, you can certainly file it. I can't
7 prevent you from filing it, but I think you know where I'm
8 going.
9     MR. O'MARA: Yes, I do, although I'm uncertain about
10 one thing. If we were to file the 12(b)(6), am I to understand
11 that we would have to omit reference to the video or any
12 citations to the video or transcript and just make pure legal
13 arguments based on immunity, for example?
14     THE COURT: Correct.
15     MR. O'MARA: I think that would obviate the need for
16 us to exceed a page limit if we were to file it, but in the
17 event we do go over by a few pages, would the Court entertain
18 that if we strip out any mention of the video?
19     THE COURT: Sure.
20     MR. O'MARA: Thank you.
21     THE COURT: That's fine. So, you know, I'll leave it
22 to your discretion about what you want to do with that.
23     So let's see what we're doing here. So where are you
24 at this point -- and I'm just looking at my notes -- in
25 discovery?

1    MR. BOWMAN: Judge, I don't believe -- we have a
2 little bit of time left for additional discovery, I think
3 through the end of March or thereabouts, and I think that it's
4 entirely possible that we'll require some additional time
5 because of the fact that there are a number of witnesses in
6 this case who are, you know, frankly difficult to pin down and
7 that we may before discovery closes need to take measures to
8 compel compliance with subpoenas and the like. So we've done a
9 lot, but there are a number of lay witnesses whose testimony
10 we'll need to complete the picture.
11    THE COURT: Okay. All right. So now looking at what
12 it says, we've got fact discovery closing on April 1st. So,
13 yes, if you're having a hard time pulling people together, you
14 know, certainly if you need the Court's assistance do that
15 sooner rather than later.
16    MR. BOWMAN: Understood.
17    MR. O'MARA: Thank you, Your Honor.
18    THE COURT: All right. So then it looks like I will
19 be seeing you April 5th, if not before. All right. Thanks,
20 everybody.
21    MR. O'MARA: Thank you, Your Honor.
22    MR. BOWMAN: Thank you, Judge.
23    MS. HAYES: Thank you.
24   (Proceedings concluded.)
25

C E R T I F I C A T E

    I, Patrick J. Mullen, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable SARA L. ELLIS, one of the judges of said Court, at Chicago, Illinois, on January 11, 2022.

*/s/ Patrick J. Mullen*
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division