## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Marcel Brown, | |
| *Plaintiff,* | No. 19 CV 4082 |
| v. | Judge Lindsay C. Jenkins |
| City of Chicago, *et al.,* | |
| *Defendants.* | |

### ORDER

The matter before the Court is Defendants' motion to compel a Rule 35 mental examination of Plaintiff Marcel Brown by their expert. [Dkt. No. 222]. Brown opposes the motion, arguing that the mental examination is unnecessary, and that Defendants have failed to show good cause for the exam. [Dkt. No. 226.] For the reasons below, the Court is satisfied that Brown's mental condition is "in controversy" for purposes of Rule 35 as to his intentional infliction of emotional distress claim only and that there is "good cause" for ordering his mental examination. Fed. R. Civ. P. 35(a). The Court, therefore, grants Defendants' motion, but rejects Defendants' proposed "time, place, manner, conditions, and scope" of the examination. Fed. R. Civ. P. 35(a)(2)(B). Defendants are ordered to provide an amended "time" limitation and "scope of the examination," as set out below. *Id.*

Brown filed this case against the City of Chicago, County of Cook, Chicago Police Detectives Michael Mancuso, Garrick Turner, Rubin Weber, Steve Czablewski, William Burke, and Geri Lynn Yanow ("Defendant Officers"), and Cook County Assistant State's Attorney Michelle Spizzirri (collectively, "Defendants"), bringing claims under 42 U.S.C. § 1983 and state law. In 2011, Brown was prosecuted for and convicted of the 2008 murder of Paris Jackson. [Dkt. No. 136 at ¶ 1.] In his Second Amended Complaint, Brown alleges that the Defendant Officers and the Assistant State's Attorney "coerced false and inculpatory statements," and "fabricated evidence and withheld exculpatory evidence" that, if disclosed, would have prevented his conviction. [*Id.* at ¶ 2.] Specifically, Brown alleges that in 2008, when he was 18 years old, he was arrested and interrogated by Defendant Officers for approximately thirty-four hours. [*Id.* at ¶ 39.] The interrogation was video recorded. [*Id.*] Following his 2011 conviction for first-degree murder, Brown was sentenced to 35 years in prison. [*Id.* at ¶ 51, 54]. Brown was exonerated in 2018. [*Id.* at ¶¶ 56–58].

As part of discovery in this case, both parties have identified expert witnesses who specialize in the area of false confessions. Brown has retained Dr. Brian Cutler,

1

"a forensic psychologist with expertise in the areas of police interrogations and false confessions." [Dkt. No. 226 at 1]. According to Brown, Dr. Cutler has not conducted any psychological examination of him. [*Id.* at 2.] Rather, Dr. Cutler's opinions are based on the discovery materials, including the interrogation video and Brown's deposition. [*Id.*] Defendants have retained Dr. Michael Welner, "a forensic psychiatrist, to rebut the proffered opinions of Dr. Cutler." [Dkt. No. 222 at 1]. As part of Dr. Welner's proffered rebuttal, Defendants seek to have Dr. Welner examine Brown pursuant to Federal Rule of Civil Procedure 35. [*Id.* at 2.] Specifically, Dr. Welner seeks to counter Dr. Cutler's testimony that Brown "possessed certain characteristics that are known to render suspects more vulnerable to making a false confession." [*Id.* at 2.] The Court now considers Defendants' request.

Under Rule 35, the "court . . . may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). To warrant a Rule 35 mental examination, the movant must show "good cause" and specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it. Fed. R. Civ. P. 35(a)(2)(A)-(B). The Court must employ a "discriminating application" of the rule to "decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). As such, the movant must rely on more than "mere conclusory allegations of the pleadings" or "mere relevance to the case." *EEOC v. Costco Wholesale Corp.*, 2015 WL 9200560, at *13 (N.D. Ill. Dec. 15, 2015) (quoting *Schlagenhauf*, 379 U.S. at 118). The movant must present "an affirmative showing . . . that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.*

Defendants, as movants, argue that a mental examination is warranted because Brown's "psychological condition is pivotal to both liability and damages." [Dkt. No. 222 at 2.] Regarding liability, Defendants point to the Second Amended Complaint, which alleges that Brown's confession was the product of Brown's "limited intellectual abilities," his "inexperience with the criminal justice system," and his mental "vulnerabilities." [*Id.* at 3; Dkt. 136 at ¶¶ 42–43.] Defendants' view is that Brown seeks to substantiate these allegations through Dr. Cutler who "opines that several of Plaintiff's attributes helped create a high risk of false confession." [Dkt. No. 222 at 3.]

Brown responds by emphasizing the allegations of his Second Amended Complaint. [Dkt. No. 226 at 4–6.] Brown alleges that his confession was the result of his limited intellectual abilities and vulnerabilities—specifically, his youth, poor education, and inexperience with the criminal justice system. [Dkt. 136 at ¶¶ 42–43.] Brown notes that Dr. Cutler assessed Brown's "personal risk factors," particularly

Brown's age (18 years old in 2008), and his "fatigue, hunger, and discomfort" resulting from the thirty-four-hour interrogation and concluded that Brown "had no history of mental illness or developmental disabilities." [Dkt. 226, Ex. A at ¶¶ 4–5, 73–74.] In short, Brown says that an examination today will shed no light Dr. Cutler's opinion. [Dkt. No. 226 at 4–6.] The circumstances at play during the interrogation in 2008 (Brown's age, educational background, inexperience with the justice system, and the extent of his fatigue, hunger and discomfort during questioning) will remain unchanged, regardless of Dr. Welner's examination. [*Id*. at 4–6.]

Setting aside Brown's intentional infliction of emotional distress claim discussed below, the Court rejects Defendants' argument that the allegations discussed above put his mental condition in controversy and present good cause sufficient for a Rule 35 examination. Although pleadings alone are generally insufficient to demonstrate good cause, "there are situations where the pleadings alone are sufficient to meet these requirements." *Schlagenhauf*, 379 U.S. at 119. Here, Brown does not allege that his mental health is of critical importance to his claims. *See generally* [Dkt. No. 136.] He has not alleged any psychiatric injury, diagnoses, or disorder, nor does he seek to introduce psychological or medical records. [Dkt. No. 226.] Rather, Brown focuses his claims on the interrogation tactics allegedly used to secure his confession. Accordingly, the cases upon which Defendants rely are unhelpful and factually distinguishable. *See Walti v. Toys R Us*, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011) (ordering a Rule 35 examination when the plaintiff, who suffered from post-traumatic stress syndrome and intellectual capacity issues, did not contest that his mental condition was "in controversy" or good cause existed for the examination); *Fuller v. Wilkie*, 2020 WL 11269899, at *1 (N.D. Ill. Dec. 7, 2020) (granting a Rule 35 examination when "[n]o one disputes that Fuller's mental condition is in controversy," and good cause was established because plaintiff's "mental illnesses and their connection to her employment is central to the dispute (both liability and damages)"); *Does 1-5 v. City of Chi.*, 2019 WL 2076260, at *1 (N.D. Ill. May 10, 2019) (granting a Rule 35 examination where plaintiffs alleged that the claimed harassment seriously affected their psychological well-being and retained a psychologist who evaluated each plaintiff).

Defendants contend that the video-recorded confession is "not sufficient for Defendants' expert to rebut Plaintiff's evidence," because the goal of the interview was to investigate Brown's involvement in a murder, not assess his mental condition. [Dkt. No. 222 at 3.] On this score, Defendants point to Dr. Welner's affidavit, which describes the recording as "welcome and informative," but that "it may not fully account for various unspoken aspects of the interrogation, before, and after." [Dkt. No. 222, Ex. A at ¶ 8.] This bare-bones assertion simply does not justify the kind of lengthy, multi-day examination Defendants propose [*Id*. at ¶ 10.] For starters, Dr. Welner does not explain how an interview fifteen years after the interrogation occurred would be helpful to assessing Brown's mental condition, particularly where the complaint avoids placing mental health at issue and where Dr. Cutler has not

conducted any psychological examination of Brown. And Dr. Welner does not address the extent to which Brown's video-recorded deposition impacts the need for an examination, at which Defendants presumably questioned Brown about the "unspoken aspects" of the interrogation.

Defendants' second ground for seeking the examination relates to Brown's claim for intentional infliction of emotional distress, which includes an allegation of ongoing "severe emotional distress." [Dkt. No. 222 at 3; Dkt. No. 136 at ¶ 108 ("As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer severe emotional distress.")]. Brown responds that the examination is unnecessary because he has not sought to introduce specific psychiatric or psychological evidence of his emotional pain and suffering, nor has he disclosed an expert to opine on his damages. Rather, he characterizes his distress damages as limited to "garden variety emotional distress." [Dkt. No. 226 at 9-10.]

The Court concludes that Brown's state law intentional infliction of emotional distress claim puts his mental condition in controversy and presents good cause. As such, the Court grants Defendants' motion for a Rule 35 examination, limited to Brown's IIED claim. In coming to this conclusion, the Court sets out the various difficulties with Brown's position to explain its reasoning.

First, "what exactly constitutes garden-variety damages is not easy to pin down. The most straightforward definition is: 'the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized.'" *Taylor v. City of Chicago*, 2016 WL 5404603, at *2 (N.D. Ill. Sept. 28, 2016) (citing *Kunstler v. City of N.Y.*, 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006)). Yet, courts have been unable to specify exactly what emotions are included versus excluded in this formulation. *See Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011) (delineating "garden variety" emotional damages as those stemming from emotions including "humiliation, embarrassment, and other *similar emotions*").

Second, Brown has not cited to any clear Seventh Circuit caselaw or other authority in this district holding that "garden variety emotional distress" claims are exempt from Rule 35. His reliance on *Nolan v. International Bhd. of Teamsters Health & Welfare and Pension Funds, Local 705*, 199 F.R.D. 272 (N.D. Ill. 2001), is a start. [Dkt. No. 226 at 10.] But *Nolan* predates the Seventh Circuit's holding in *Doe v. Oberweis Dairy*, which implicitly disapproves of the garden-variety approach, albeit in the psychotherapist-patient privilege waiver context. 456 F.3d 704, 718 (7th Cir. 2006). So *Nolan* is of minimal help. Although some courts have held that allegations of mere "garden variety" emotional distress is an insufficient basis for a Rule 35 examination, since *Oberweis*, courts in this district have generally rejected that approach. *See e.g., Silberman v. Walsh*, 20 C 2566794, 2021 WL 2566794, at * 1 (N.D. Ill. June 23, 2021); *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 515–18 (N.D. Ill. 2018); *Taylor v. City of Chicago*, 2016 WL 5404603, at *2–3 (N.D. Ill. Sept. 28,

2016). While it is true that many courts analyzing this issue have done so in the waiver context, *Oberweis*' holding is straightforward: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." 456 F.3d at 718. Indeed, the Court held that a waiver "is no greater invasion of privacy by making existing records available to the defendant" than a Rule 35 examination. *Id.*

Lastly, there are practical issues with forging a Rule 35 examination based on Brown's "garden variety" approach. As other courts have discussed, it is "difficult to define precisely what falls within the basket of garden-variety emotional distress." *Taylor*, 2016 WL 5404603, at *4. The court cannot be certain how limited Brown's testimony at trial would need to be concerning his "severe emotional distress." [Dkt. No. 136 at ¶ 108]. At least one court has held that testimony that the defendant's conduct caused plaintiff to feel stressed and lose sleep were sufficiently severe to fall outside the category of garden-variety damages. *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 553 (S.D. Ohio 2014). And even self-imposed limitations present practical trial hurdles. *Taylor*, 2016 WL 5404603, at *4; *Santelli v. Elctro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (limiting plaintiff's testimony to "[b]are testimony of humiliation or disgust"). As such, the Court finds that good cause exists as to Brown's IIED claim.

For the reasons stated above, the Court grants Defendants' motion for a Rule 35 mental examination. [Dkt. No. 222.] However, the Court rejects Defendants examination proposal in its current form. By May 19, 2023, Defendants must file a supplement proposal that includes an amended affidavit from Dr. Welner with a more fulsome discussion of the "scope" of his examination as it relates to Brown's IIED claim, the "time" needed to conduct such an examination, and the specific topics about which Dr. Welner seeks to inquire, consistent with this Order. The supplement should indicate the parties' good faith attempts to resolve any differences that arise on the matter.

Enter: 19-cv-4082

Date: May 9, 2023

_____

Lindsay C. Jenkins
United States District Judge

5