**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARCEL BROWN,** | |
| Plaintiff, | |
| v. | **No. 19-cv-4082** |
| **CITY OF CHICAGO;** Chicago Police Detectives **MICHAEL MANCUSO, KEVIN McDONALD, GARRICK TURNER, RUBIN WEBER, STEVE CZABLEWSKI** and **WILLIAM BURKE; COUNTY OF COOK, ILLINOIS;** Assistant State's Attorney **MICHELLE SPIZZIRRI,** | **The Honorable Lindsay C. Jenkins** **Magistrate Judge Sunil R. Harjani** |
| Defendants. | |

**DEFENDANT OFFICERS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.    Plaintiff's Malicious Prosecution Claim Must Be Dismissed Because
His Prosecution Was Supported by Probable Cause....................................... 5

    A.  The Eyewitness Statements Provided to Defendants Establish Probable Cause. ...... 6

II.    Plaintiff's Civil Conspiracy Claim Fails Because There Is No Underlying Tort. ......... 10

III.    Plaintiff's Failure to Intervene Claim Fails Because § 1983 Does
Not Support Vicarious Liability........................................................................ 11

IV.    Defendants Czablewski and Burke Are Entitled to Judgment as a Matter of Law
Because They Were Not Personally Involved in the Alleged Wrongdoing. ................. 12

    A.  Plaintiff's Due Process Claim (Count I) Cannot Be Maintained Against Either
Czablewski or Burke........................................................................................ 12

        1.    *Plaintiff's Due Process Claim Against Czablewski Fails Because He Had
Virtually No Involvement in the Investigation* ....................................... 13

        2.    *Plaintiff's Due Process Claim Against Burke Fails*............................. 13

            i.  *There Is No Evidence to Support a Fabrication Claim Against Burke*...... 14

            ii.  *There Is No Evidence to Support a Concealment Claim Against Burke*.... 14

    B.  Plaintiff's Fifth Amendment Claim (Count II) Cannot Be Maintained Against
Czablewski or Burke Because Neither Participated in His Interrogation ............... 15

    C.  Plaintiff's Derivate Claims (Counts III and IV) Fail ............................................. 16

        i.  *Neither Czablewski nor Burke Conspired to Engage in or
Could Have Prevented Fabrication or Concealment of Evidence* ................... 16

        ii.  *Neither Czablewski nor Burke Conspired to Engage in or
Could Have Prevented the Alleged Coercion of Plaintiff's Confession*.......... 17

    D.  Plaintiff's Malicious Prosecution and Civil Conspiracy Claims
Against Czablewski and Burke Fail for Independent Reasons.............................. 18

CONCLUSION................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................11

*Bisharat v. Village of Niles*,
No. 10 C 00594, 2014 WL 2514510 (N.D. Ill. June 4, 2014) ...........................10, 11

*Bridewell v. Eberle*,
730 F.3d 672 (7th Cir. 2013) ...................................................................................8

*Brown v. City of Chicago*,
No. 18-C-7064, 2022 WL 4602714 (N.D. Ill. Sept. 30, 2022) .....................*passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................4

*Coleman v. City of Peoria*,
925 F.3d 336 (7th Cir. 2019) ...................................................................................6

*Franklin v. Harvey City Detective Rasheed Askew*,
No. 19-CV-04375, 2022 WL 17093358 (N.D. Ill. Nov. 21, 2022) ......................8, 9

*Hill v. City of Chicago*,
2009 WL 174994 (N.D. Ill. Jan 26, 2009) .........................................................12, 15

*Hyung Seok Koh v. Graf*,
307 F. Supp. 3d 827 (N.D. Ill. Mar. 30, 2018) ........................................................5

*Lipscomb v. Knapp*,
No. 07 C 5509, 2009 WL 3150745 (N.D. Ill. Sept. 30, 2009).........................18, 19

*Logan v. Caterpillar, Inc.*,
246 F.3d 912 (7th Cir. 2001) ...................................................................................5

*Maltby v. Winston*,
36 F.3d 548 (7th Cir. 1994) ...................................................................................12

*McClure v. Owens Corning Fiberglass Corp.*,
188 Ill. 2d 102 (Ill. 1999).......................................................................................18

*Mitchell v. Kallas*,
  895 F.3d 492 (7th Cir. 2018) ................................................................12

*Moore v. City of Chicago*,
  No. 02-CV-5130, 2007 WL 3037121 (N.D. Ill. 2007) ......................14, 15

*Moran v. Calumet City*,
  54 F.4th 483 (7th Cir. 2022) ...................................................................6

*Neita v. City of Chicago*,
  2019 WL 5682838 (N.D. Ill., 2019) .......................................................11

*Padula v Leimback*,
  656 F. 3d 595 (7th Cir. 2011) ..................................................................4

*People v. Richardson*,
  270 N.E.2d 568 (Ill. Ct. App. 1971) ......................................................10

*Smith v. Patterson*,
  430 F. App'x. 438 (6th Cir. July 14, 2011)................................................9

*Smith v. Patterson*,
  No. 07-14034, 2010 WL 419997 (E.D. Mich. Feb. 1, 2020)....................9

*Steeves v. McGrath*,
  No. 99 C 4567, 2001 WL 487767 (N.D. Ill. May 8, 2001) .......................5

*Trout v. Frega*,
  926 F. Supp. 117 (N.D. Ill. 1996) ..........................................................11

*Turner v. City of Chicago*,
  No. 12-CV-9994, 2015 WL 7568373 (N.D. Ill. Nov. 25, 2015) ...............6

*United States v. Ramirez*,
  58 F. App'x 325 (9th Cir. 2003) ...............................................................9

*Wilson v. O'Brien*,
  No. 07-C-3994, 2011 WL 759939 (N.D. Ill. Feb. 25, 2011) ............16, 18

*Wolf-Lillie v. Sonquist*,
  699 F.2d 864 (7th Cir. 1983) .................................................................12

**Statutes**

720 ILCS 5.0/9-1-A-1 .................................................................................................................2, 3, 6

720 ILCS 5/9-1 .................................................................................................................................2, 3

**Other Authorities**

Fed. R. Civ. P. 56(c) ...................................................................................................................4

Defendants Michael Mancuso, Garrick Turner, Rubin Weber, Steve Czablewski, William Burke, and Geri Lynn Yanow as Special Representative for the Estate of Kevin McDonald ("Defendant Officers"), by and through their undersigned counsel, hereby submit the Memorandum of Law in Support of their Motion for Partial Summary Judgment as to Counts III (Failure to Intervene), VI (malicious prosecution), and VIII (conspiracy under Illinois law) of Plaintiff's Second Amended Civil Rights Complaint for all Defendant Officers and all Counts as to Defendants Czablewski and Burke.

## **<u>INTRODUCTION</u>**

Paris Jackson ("Mr. Jackson"), aged 19, was shot and killed on August 30, 2008. Mr. Jackson was discovered the following morning at Amundsen Park (the "Park"). (Defendant Officer's Local Rule 56.1 Statement ("SOMF") ¶¶ 18-19) The CPD investigation uncovered that the shooting was precipitated by an argument between two groups of friends at the Park. (*Id.* at ¶ 20). On the evening of August 30, dozens of people had gathered at the Park following a block party. (*Id.* at ¶ 5). Most of the people in the Park where high school students who knew each other from the neighborhood. (*Id.* at ¶ 6). Among these high schoolers were two groups of girls; one group included Taneshia Branch and the other group included Marisol Ocampo. (*Id.*). At some point, the two groups got into an argument, and, as a result, Taneshia Branch called her brother, Renard Branch Jr. ("R.J."), and demanded he come to the Park. (*Id.* at ¶¶ 7-8). When Taneshia called, R.J. was with his cousins, Plaintiff Marcel Brown and Terry Scott ("T.J."), at a nearby White Castle. (*Id.* at ¶¶ 8, 9). Plaintiff and T.J. also received calls from their female family members who were at the Park. (*Id.* at ¶ 9). Following the calls, Plaintiff, R.J. and T.J. got into Plaintiff's gold Malibu and began driving to the Park. (*Id.* at ¶¶ 10-11). R.J. was armed and brought the loaded gun with him to the Park. (*Id.* at ¶ 12).

Shortly after Taneshia Branch called her brother, Plaintiff, R.J., and T.J. arrived at the Park in the gold Malibu, which was driven by Plaintiff. (*Id.* at ¶ 13). Plaintiff and R.J. entered the Park together and R.J. confronted several individuals in Ocampo's friend group. (*Id.* at ¶ 14). People from both Taneshia Branch's and Marisol Ocampo's friend groups reported that, during this confrontation, R.J. pulled a gun out of his pocket and began firing into a crowd of people gathered behind a large fieldhouse in the Park. (*Id.* at ¶¶ 15, 22-25, 27-28, 34-39, 41). After shooting, R.J. fled the scene in the same gold Malibu driven by Plaintiff. (*Id.* at ¶ 16).

The next morning, the Chicago Police Department ("CPD") received a call that a body was found at the Park near the back wall of the large fieldhouse. (*Id.* at ¶ 18). The police were able to identify the deceased individual as Paris Jackson. (*Id.*). Mr. Jackson had been shot one time with a bullet traveling through an artery connected directly to his heart. (*Id.* at ¶ 19).

Following the discovery of Mr. Jackson's body, the CPD conducted a full investigation, in which over a dozen witnesses were interviewed. (*Id.* at ¶ 20). Following these interviews, many of the high school students in both Taneshia Branch's group and Marisol Ocampo's group gave sworn statements detailing the events described above to several Assistant State's Attorneys ("ASAs"). (*Id.* at ¶¶ 21-42). Additionally, ASA Michelle Spizzirri interviewed Plaintiff during his interrogation and Plaintiff admitted that while driving R.J. to the Park moments before the shooting, Plaintiff knew that R.J. possessed a gun and that he intended to use the gun to shoot individuals at the Park. (*Id.* at ¶ 43).

Following the CPD's investigation, Plaintiff was charged with first degree murder on the theory of accountability in violation of 720 ILCS 5.0/9-1-A-1, and R.J. was charged with committing first degree murder in violation of 720 ILCS 5/9-1. (*Id.* at ¶ 44). Both R.J. and Plaintiff proceeded to trial where they were convicted. (*Id.* at ¶¶ 2, 58). During Plaintiff's trial, several of

the individuals who provided sworn statements to the ASAs testified against him, providing the same account of events they provided to the ASAs during the investigation. (*Id.* at ¶¶ 23, 29, 40).[1]

On June 19, 2018, Plaintiff's conviction was reversed and remanded. (*Id.* at ¶ 2). In connection with Plaintiff's reversed conviction, Plaintiff argued that his confession was coerced and inaccurate. (*Id.* at ¶ 57). Plaintiff also alleged that certain witnesses were coerced into providing false statements against him or that favorable witness statements were concealed by the CPD. (*Id.*). Importantly, most witnesses who gave statements implicating Plaintiff have not changed their account of the relevant events of August 30, 2008. (*Id.* at ¶¶ 31, 33, 40).

Defendant Officers are entitled to summary judgment on a subset of claims Plaintiff has brought against them:

First, Defendant Officers are entitled to summary judgment on Plaintiff's malicious prosecution claim because probable cause existed when Plaintiff was charged with first degree murder on the theory of accountability in violation of 720 ILCS 5.0/9-1-A-1. Even when Plaintiff's confession is set aside, the witness statements provided to Defendants are more than sufficient to establish probable cause supporting Plaintiff's prosecution.

Second, Defendant Officers are entitled to summary judgment on Plaintiff's civil conspiracy claim. Under Illinois law, a claim of civil conspiracy cannot be maintained unless an underlying tort exists. Here, Plaintiff's malicious prosecution claim fails, and his intentional infliction of emotion distress claim has been dismissed. Further, Plaintiff has failed to provide any evidence demonstrating an agreement among the Defendant Officers to participate in an unlawful act. Accordingly, Plaintiff cannot maintain an Illinois civil conspiracy claim, given the absence of an underlying tort.

---

[1] Several of the individuals who provided sworn statements also testified before the Grand Jury giving the same account of events. (SOMF ¶¶ 23, 27, 29, 31, 36, 38, 40, 42).

Third, Defendant Officers are entitled to summary judgment on Plaintiff's failure to intervene claim because Section 1983 does not support vicarious liability.

Fourth, Officers Steve Czablewski and William Burke are entitled to summary judgment on all claims brought against them because they were not personally involved in the misconduct Plaintiff claims in this lawsuit. It is undisputed that neither Czablewski nor Burke ever interacted with Plaintiff. Czablewski's involvement in this case was limited to interviewing two non-material witnesses, Kayla Kuykendoll and Shaniqua Grayer, who did not testify at trial. Burke's involvement in this case was also limited to witness interviews. Although Plaintiff has attempted to connect Burke to the alleged misconduct surrounding Stanciel's and McGee's interviews, Plaintiff has no evidence demonstrating any wrongdoing by Burke.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). To determine whether there is a genuine issue of material fact, courts construe the factual record in the light most favorable to the non-movant and draw all reasonable and justifiable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish a cognizable claim, summary judgment is not only proper, but mandated. *See Celotex*, 477 U.S. at 322; *Padula v Leimback*, 656 F. 3d 595, 600-501 (7th Cir. 2011).

4

## ARGUMENT

**I.     Plaintiff's Malicious Prosecution Claim Must Be Dismissed Because His Prosecution Was Supported by Probable Cause.**

Probable cause existed to prosecute Plaintiff for the charges brought against him, which defeats any claim for malicious prosecution. Under Illinois law, "[m]alicious prosecution requires proof of five elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Brown v. City of Chicago*, No. 18-C-7064, 2022 WL 4602714, at *31 (N.D. Ill. Sept. 30, 2022). The existence of probable cause is a complete defense to a malicious prosecution claim. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 921-22 (7th Cir. 2001). Determining whether probable cause existed is a mixed question of law and fact. *Steeves v. McGrath*, No. 99 C 4567, 2001 WL 487767, at *5 (N.D. Ill. May 8, 2001).

When facts sufficient to create probable cause are undisputed, probable cause is a question of law that can be resolved on summary judgment. *Id.* Probable cause exists when the facts and circumstances "would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." *Id.* "Probable cause is a low bar; [t]he inference of the suspect's guilt does not need to be more probable than competing alternatives; a fair probability of guilt is enough." *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 860-861 (N.D. Ill. Mar. 30, 2018). "This test is one of objective reasonableness, and in making this determination the court is to consider the actual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Steeves*, 2001 WL 487767, at *5 (internal quotation marks and citation omitted).

**A.      The Eyewitness Statements Provided to Defendants Establish Probable Cause.**

Plaintiff was charged with first degree murder on the theory of accountability in violation of 720 ILCS 5.0/9-1-A-1. (SOMF ¶ 44). He was indicted on that charge by a grand jury on September 26, 2008. (*Id.*). The undisputed evidence shows that probable cause existed for this charge. Indeed, there was ample probable cause to institute criminal proceedings against Plaintiff through eyewitness statements.

It is well-established that eyewitness identification, even if questionable, is enough to create probable cause. *Moran v. Calumet City*, 54 F.4th 483, 499-500 (7th Cir. 2022) (dismissing malicious prosecution claim of wrongfully convicted plaintiff where "two witnesses [] insisted that [plaintiff] was the shooter."); *Turner v. City of Chicago*, No. 12-CV-9994, 2015 WL 7568373, at *3-4  (N.D. Ill. Nov. 25, 2015) (explaining that "[a] complaint of the putative victim or single witness is generally sufficient to establish probable cause, unless the officer has a reason to question the witness' account," and dismissing malicious prosecution claim). Even statements including questionable identifications and inconsistencies are sufficient to create probable cause. *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019).

Following the events of August 30, 2008, several eyewitnesses provided independent statements regarding what they saw in the Park that evening. (SOMF ¶¶ 21-42). Each witness's account of events was memorialized in a handwritten statement by the ASA who conducted the interview, each witness reviewed their respective handwritten statement, each witness had the opportunity to make any revisions to the handwritten statement to ensure it was accurate and complete, and each witness signed the handwritten statement confirming the accuracy and completeness of the handwritten statement. (*Id.* at ¶ 21).

The eyewitnesses were predominately high school students who belonged to Taneshia Branch's or Marisol Ocampo's friend groups and included the following individuals: (1) Marisol

Ocampo; (2) Jasmine Jenkins; (3) Krystine Jenkins; (4) Tytiana Williams; (5) Krystal Jenkins; (6) Ebony Jenkins; (7) Shaquincia Williams (8) Brittany Williamson (9) Ashtin Warner; (10) Kema Davis;  (11) Tyrone Bailey; (12) Shaniqua Grayer; and (13) Kayla Kuykendoll. (*Id.* at ¶¶ 22-42). Plaintiff does not claim—and presents no evidence—that these witnesses' statements were tainted by misconduct. These eyewitness statements each implicated R.J. and/or Plaintiff in the murder of Mr. Jackson. (*Id.*). Over and over the witnesses said that R.J. arrived in the gold Malibu and left in the Malibu. (*Id*. at ¶¶ 22, 24, 28, 35, 37, 39, 41). It is undisputed that the gold Malibu belonged to Plaintiff's mother, that Plaintiff was its primary driver, and that Plaintiff was driving the gold Malibu on the evening of August 30, 2008. (SOMF ¶ 11).

For example, Marisol Ocampo's statement swore that "she saw RJ fire around five shots at Paris [Jackson's] group and then run back to the Malibu." (*Id*. at ¶ 39). Krystine Jenkins' statement relayed that:

> [A]fter she saw "RJ" point the gun at Eugene [Stanciel] she turned and ran toward the baseball field. Krystine states right after she turned and ran she started hearing gunshots. Krystine states she heard about 5 or 6 gunshots. Krystine states when she turned and ran she heard the gunshots from the area where "RJ" was standing pointing the gun. Krystine states that "RJ" was the only person she saw in the park with a gun. Krystine states that she turned around after reaching the ballfield and saw the gold colored Malibu car driving away in the opposite direction.

(*Id.* at ¶ 22).

Among these independent witnesses who provided handwritten statements, seven eyewitnesses said that on the evening of August 30, they saw R.J. exit Plaintiff's gold Malibu at the Park moments before the shooting, and eight eyewitnesses confirmed that they saw Plaintiff either driving the vehicle or present at the Park. (*Id*. at ¶¶ 22, 24-25, 28, 35, 37, 39, 41). Seven eyewitnesses told the ASAs that on August 30, they saw R.J. at the Park with a gun. (*Id.*). Further, eight eyewitnesses explained that after R.J. pulled out the gun, they heard bullets being fired. (*Id.*).

Six eyewitnesses indicated that they saw R.J. fire the gun,[2] and two eyewitnesses told the ASAs that they specifically saw R.J. fire the gun toward Mr. Jackson. (*Id.* at ¶¶ 24-25, 35, 37, 39, 41). Finally, two eyewitnesses stated that they saw R.J. flee the scene in Plaintiff's gold Malibu. (*Id.* at ¶¶ 24, 41).

In totality, these statements informed the Defendant Officers that: (1) R.J., Plaintiff, and Mr. Jackson were at the Park at the same time on August 30 when the shooting occurred; (2) Plaintiff drove R.J. to the Park in his gold Malibu moments before the shooting; (3) R.J. possessed a gun at the Park; (4) R.J. fired his gun in the direction of Mr. Jackson; and (5) R.J. fled the scene in Plaintiff's gold Malibu. (*Id.* at ¶¶ 22-42). Defendants also knew that Mr. Jackson's body was found the next morning in the general area of the shooting scene. (*Id.* at ¶ 18). Based on these eyewitness statements and their investigation, Defendants had evidence that R.J. shot a weapon toward Mr. Jackson just hours before his body was found in the same location. (*Id.* at ¶¶ 18, 22-42). This established probable cause for the Defendants to believe that R.J. murdered Mr. Jackson. *Bridewell v. Eberle*, 730 F.3d 672, 675 (7th Cir. 2013) (finding probable cause to believe that defendant shot or aided the killer where police found a dead body and were told by a witness that the victim had been pursued by defendant and gunshots were heard).

The above facts also created probable cause for Defendants to believe that Plaintiff was involved in the murder, as these same eyewitnesses stated that Plaintiff was seen driving the shooter to the Park moments before the shooting and driving the shooter away from the Park immediately after the shooting. *Franklin v. Harvey City Detective Rasheed Askew*, No. 19-CV-04375, 2022 WL 17093358, at *5 (N.D. Ill. Nov. 21, 2022) ("With [the] additional identification

---

[2] Ashtin Warner's statement provided that "she got scared when 'R-J' pulled out a gun, so Ashtin started walking away with some of her girlfriends but she was looking back to see what was going to happen and when she looked back she saw 'R-J' point the gun in the direction of [Eugene Stanciel], Deshawn, Paris [Jackson], and everyone else standing near them and start firing the gun." (*Id.* at ¶ 37).

of Martinez as the driver of the van and Marlon as the shooter, there is no question that the state had probable cause to charge Martinez with attempted murder."); *see also United States v. Ramirez*, 58 F. App'x 325, 326 (9th Cir. 2003) (probable cause existed where "the driver of the bank robbery getaway vehicle [] had been reliably identified by two eyewitnesses" and that "the vehicle had distinctive features that lent further credibility to the eyewitnesses' identification of the vehicle as the getaway car."); *Smith v. Patterson*, 430 F. App'x. 438, 441 (6th Cir. July 14, 2011) (probable cause existed where "Collins and Pannell were not merely seen at the Coppertree Apartments shortly after the shooting; they were in a car with the suspected shooter, leaving the scene."); *Smith v. Patterson*, No. 07-14034, 2010 WL 419997, at *5 (E.D. Mich. Feb. 1, 2020) ("[P]robable cause existed for [the] arrest, based upon eyewitness identification (even without the allegedly coerced confession)…Probable cause also existed for the arrest of Smith, given that he was driving the alleged 'getaway' car.").

In *Franklin*, the court relied on the fact that the victims "provided a detailed explanation about the circumstances of the shooting, the identity of the shooters, and a description of the van in which the shooters were driving" and that two witnesses "identified [plaintiff] as the driver of the car that shot at the passengers in the Mitsubishi from a photo lineup" to conclude that probable cause existed to detain and prosecute the getaway driver with attempted murder. *Franklin*, 2022 WL 17093358, at *5. The eyewitness evidence in this case is significantly stronger than it was in *Franklin*, as two eyewitnesses saw R.J. flee the scene in Plaintiff's vehicle and four eyewitnesses affirmatively identified that Plaintiff drove R.J. to the Park moments before the shooting or drove him away from the Park immediately after the shooting. (SOMF at ¶¶ 24, 41).

As explained above, Plaintiff was charged with first degree murder under a theory of accountability. (SOMF ¶ 44). Under such a theory, Plaintiff could be convicted for first degree

murder for being R.J.'s getaway driver. *See People v. Richardson,* 270 N.E.2d 568, 570 (Ill. Ct. App. 1971). Further, proof that Plaintiff agreed to drive R.J. to and from the Park despite knowing that R.J. planned to fire his gun was not needed. *Id.* Indeed, Plaintiff could have been convicted of first-degree murder if "proof of acts in further of a common design or purpose to commit a crime… [could] be drawn from the circumstances surrounding the commission of the act by the group." *Id.* Here, Defendant Officers were presented with overwhelming evidence that, after Plaintiff and R.J. learned of an argument involving their family members, Plaintiff drove R.J. to the Park where, shortly after their arrival, R.J. fired his gun into a crowd of people and fled the scene with Plaintiff. (*See* SOMF ¶¶ 22-42). This evidence supports an accountability theory for first-degree murder, and unquestionably establishes probable cause for the charges brought against Plaintiff. Accordingly, summary judgment should be entered in favor of Defendant Officers on Plaintiff's malicious prosecution claim.

## II.     Plaintiff's Civil Conspiracy Claim Fails Because There Is No Underlying Tort.

To succeed on his Illinois state conspiracy claim, Plaintiff must set forth evidence proving that "two or more people agreed to participate in an unlawful act, and that one of the parties performed a tortious act in furtherance of the agreement that caused an injury." *Brown*, 2022 WL 4602714, at *35. "Under Illinois law, a conspiracy is not an independent tort; where a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for conspiracy also fails" *Bisharat v. Village of Niles*, No. 10 C 00594, 2014 WL 2514510, at *10 (N.D. Ill. June 4, 2014). Plaintiff has voluntarily dismissed his intentional infliction of emotional distress claim, and as explained above, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim. Accordingly, there are no remaining state tort claims against Defendant Officers, and they are entitled to summary judgment on Plaintiff's state law conspiracy claim. *See id.* ("[T]here are no remaining viable state tort claims against the Village of Niles

10

defendants. They are therefore entitled to summary judgment on [the Illinois state law conspiracy claim].”). Even if a state tort claim remained, Plaintiff has failed to provide any evidence demonstrating an agreement among the officers to participate in an unlawful act, *see id.*; therefore, summary judgment is warranted even if the Court does not rule in Defendant Officer's favor as to Plaintiff's malicious prosecution claim.

### III. Plaintiff's Failure to Intervene Claim Fails Because § 1983 Does Not Support Vicarious Liability.

Plaintiff's Count III seeks to hold each Defendant Officer liable for their purported failure to intervene to prevent the alleged misconduct that violated Plaintiff's constitutional rights. Plaintiff, however, has failed to identify what constitutional amendment the failure to intervene claim itself is based upon. *See Neita v. City of Chicago*, 2019 WL 5682838, at \*4 (N.D. Ill., 2019) (A § 1983 claim must be rooted in a constitutional violation). In *Mwangangi v. Nielsen*, Judge Easterbrook, in his concurring opinion, examined the lack of an underlying constitutional basis for a failure to intervene claim asking, “What statute or constitutional rule requires one employee of the government to stop another from making a mistake?” 48 F. 4th 816, 834 (7th Cir. 2022). Although there are decisions where reviewing courts have ruled law enforcement officers must intervene in the unlawful conduct of their colleagues, the cases do not examine where this duty comes from, especially in light of the *Iqbal* decision. *Id.*

Judge Easterbrook then explained that § 1983 itself does not impose such a requirement. *Id.* at 834-35. Indeed, it is well-established that § 1983 only supports individual liability claims arising from direct personal involvement and cannot be vicarious or based on a theory of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009); *Trout v. Frega*, 926 F. Supp. 117, 120 (N.D. Ill. 1996). Ultimately, Judge Easterbrook commented that if “all [that the officers sued for failure to intervene] did was stand by while [defendant officer] Root made an arrest, then

11

what Mwangangi seeks is vicarious liability," which is an insufficient basis for a § 1983 claim. 48 F. 4th at 834-35. For the same reasons, Plaintiff's failure to intervene claim is not cognizable. Plaintiff will argue that other courts have ruled that failure to intervene claims are permitted; however, he should not be allowed to rely on a body of case law that, at its core, has provided no basis to create or allow such a claim. Accordingly, Defendant Officers are entitled to summary judgment on Plaintiff's failure to intervene claim.

## IV. Defendants Czablewski and Burke Are Entitled to Judgment as a Matter of Law Because They Were Not Personally Involved in the Alleged Wrongdoing.

The undisputed evidence establishes that Defendants Steve Czablewski and William Burke were not responsible for any actionable wrongdoing. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."); *Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) (same). In this case, Czablewski and Burke had limited involvement in the investigation and did not cause or participate in any of the alleged constitutional deprivations; therefore, Plaintiff's claims against them fail as a matter of law.

### A. Plaintiff's Due Process Claim (Count I) Cannot Be Maintained Against Either Czablewski or Burke.

Plaintiff's Count I is a § 1983 due process claim, which requires him to advance evidence demonstrating that Czablewski or Burke either: (1) knowingly fabricated false evidence that was used against Plaintiff during his trial and was material to his conviction; or (2) deliberately withheld exculpatory evidence that resulted in prejudice to Plaintiff. *Brown*, 2022 WL 4602714, at *21; *Hill v. City of Chicago*, 2009 WL 174994, at *3 (N.D. Ill. Jan 26, 2009). Plaintiff has no evidence that Czablewski or Burke engaged in any such conduct.

1. *Plaintiff's Due Process Claim Against Czablewski Fails Because He Had Virtually No Involvement in the Investigation*

The record evidence, including Czablewski's deposition testimony, confirms that Czablewski had virtually no involvement in the investigation of Mr. Jackson's murder or Plaintiff's prosecution. (SOMF ¶ 45). Czablewski testified that he was unaware of the investigation until he became involved on September 2, 2008, when he was instructed to help the other detectives manage the witnesses at the police station. (*Id.*). The evidence shows that Czablewski's involvement was limited to sitting in on ASA Lisa Longo's interviews of Kayla Kuykendoll and Shaniqua Grayer. (*Id.* at ¶¶ 24, 32, 46). Czablewski also testified that his involvement in both the investigation of Mr. Jackson's murder and Plaintiff's prosecution ended that same day— September 2, 2008. (*Id.*).

There is no evidence that Czablewski coerced Kayla Kuykendoll or Shaniqua Grayer into making a particular statement or that he otherwise altered or manipulated the statements they provided. Indeed, Kuykendoll, when deposed, testified that she was not coerced and that the statement she gave to the ASA in 2008 is accurate. (*Id.* at ¶ 47).[3] Additionally, a fabrication claim requires that the fabricated evidence be used against plaintiff at his criminal trial. *Brown*, 2022 WL 4602714, at *24. But neither Kayla Kuykendoll nor Shaniqua Grayer testified at Plaintiff's trial. (*Id.* at ¶ 48). For these reasons, summary judgment should be entered in Czablewski's favor as to Count I.

2. *Plaintiff's Due Process Claim Against Burke Fails*

Plaintiff contends that Burke fabricated false evidence and withheld exculpatory evidence. Plaintiff's due process claim against Burke fails under both theories.

---

[3] Defendant Officers attempted to depose Shaniqua Grayer in connection with this matter, but she could not be located. Regardless, there is no evidence that she was coerced by Czablewski or that the statement she provided to the ASA was inaccurate.

### i. There Is No Evidence to Support a Fabrication Claim Against Burke

Burke interviewed several witnesses in connection with the investigation of Mr. Jackson's murder. (*Id.* at ¶ 51). Burke testified that he was not in charge of deciding which witnesses were interviewed; instead, he was directed by the assigned detectives to interview certain witnesses. (*Id.* at ¶ 52). Burke interviewed Brandon Powell, Marita Myles, Ebony Jenkins, Eugene Stanciel, Isiah Davis, Shaniqua Grayer, Shaquicia Williams, Ashtin Warner, Kayla Kuykendoll and Kema Davis. (*Id.*). Plaintiff alleges that Defendant Officers fabricated Eugene Stanciel's statement only. Further, Brandon Powell, Marita Myles, Ebony Jenkins, Isiah Davis, Shaniqua Grayer, Shaquicia Williams, Ashtin Warner, Kayla Kuykendoll or Kema Davis never testified at Plaintiff's criminal trial, so their statements could not form the basis for a fabrication claim. (*Id.* at ¶ 53); *see also Brown*, 2022 WL 4602714, at *24.

With respect to Stanciel, Plaintiff alleges that Burke engaged in misconduct by coercing him into giving a false statement. However, there is no evidence connecting Burke to this alleged misconduct. Stanciel, to help overturn Plaintiff's conviction, prepared an affidavit that states he was "coerced by Officers Michael Mancuso, William Whalen, and Reno Baiocchi," not by Burke. (*Id.* at ¶ 59). Further, at his deposition in this case, Stanciel did not provide any testimony claiming that he had any interaction with Burke. (*Id.* at ¶ 61). Stanciel's inability to identify Burke dooms Plaintiff's claim. *Moore v. City of Chicago*, No. 02-CV-5130, 2007 WL 3037121, at *9 (N.D. Ill. 2007) (granting summary judgment to individual officer where plaintiff failed to identify officer during her deposition). Accordingly, summary judgment is warranted as to the fabrication claim against Burke.

### ii. There Is No Evidence to Support a Concealment Claim Against Burke

Plaintiff alleges that *an officer*, not specifically Burke, concealed exculpatory evidence by

withholding a statement given by Rufus McGee ("McGee") indicating that R.J. did not kill Mr. Jackson. There is no evidence connecting Burke to this alleged misconduct. Plaintiff has failed to provide evidence demonstrating that Burke interviewed McGee. Further, Burke testified that, had he been told by a witness that R.J. did not kill Mr. Jackson, he would have included it in his notes. (*Id.* at ¶ 56). Burke's testimony has gone unrefuted.

McGee has also never identified Burke as the officer who interviewed him. McGee, like Stanciel, prepared an affidavit for Plaintiff's post-conviction proceedings alleging misconduct by the CPD. (*Id.* at ¶ 63). McGee's affidavit does not identify any offending officer. (*Id.*). During McGee's deposition in this case, he again failed to identify an offending officer. (*Id.* at ¶ 64). Instead, McGee simply indicated that he was interviewed by two people: "[o]ne white guy and one black guy." (*Id.*). Many of the Defendant Officers are white men, including Officer Burke; therefore, this does not constitute an affirmative identification of Burke as the offender. As is the case with Plaintiff's fabrication claim, McGee's failure to identify Burke dooms Plaintiff's concealment claim. *Moore*, 2007 WL 3037121, at *9. Accordingly, Burke is entitled to summary judgment on Plaintiff's fabrication claim.

### B. Plaintiff's Fifth Amendment Claim (Count II) Cannot Be Maintained Against Czablewski or Burke Because Neither Participated in His Interrogation

Plaintiff's Count II is a § 1983 claim based on a coerced confession in violation of the Fifth Amendment. To succeed on this claim, Plaintiff must show that Czablewski or Burke participated in Plaintiff's interrogation. *Hill v. City of Chicago*, No. 06-C-6772, 2009 WL 174994, at *5 (N.D. Ill. Jan 26, 2009) (granting summary judgment on coerced confession claims where it was undisputed that officers "had no contact or interaction with [plaintiff] during his arrest and interrogation," thus "these Defendants had no personal involvement in the alleged Fifth Amendment deprivation"). No evidence exists that Czablewski or Burke had involvement in

15

Plaintiff's interrogation.

Plaintiff's interrogation was recorded, and the recording confirms that Czablewski and Burke were not present and did not question Plaintiff. (SOMF ¶¶ 49, 55). Czablewski testified that his involvement in the case ended on September 2, 2008, which was before Plaintiff's interrogation. (*Id.* at ¶¶ 43, 46, 49). Czablewski also testified that he never spoke with Plaintiff. (*Id.* at ¶ 49). Similarly, Burke testified that he was in no way involved in Plaintiff's interrogation. (*Id.* at ¶ 56). Furthermore, Plaintiff did not testify that Czablewski or Burke participated in his interrogation. (*Id.* at ¶¶ 49, 56). Accordingly, both Czablewski and Burke are entitled to summary judgment on Plaintiff's Count II.

### C. Plaintiff's Derivate Claims (Counts III and IV) Fail

Count III failure to intervene and Count IV conspiracy are derivative of Plaintiff's other § 1983 claims. Even assuming a failure to intervene claim were viable, to succeed on this claim, Plaintiff must show that Czablewski or Burke: "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Wilson v. O'Brien*, No. 07-C-3994, 2011 WL 759939, at *8 (N.D. Ill. Feb. 25, 2011). Similarly, to prevail on his federal conspiracy claim, Plaintiff must show that Czablewski or Burke (1) reached an agreement to deprive him of his constitutional rights; and (2) committed overt acts in furtherance of the deprivation of his rights. *Id.* at *7-8. Plaintiff cannot advance the requisite evidence to succeed on either Count.

#### i. Neither Czablewski nor Burke Conspired to Engaged in or Could Have Prevented Fabrication or Concealment of Evidence

At the core of Counts III and IV are allegations that Defendant Officers coerced or fabricated statements from Eugene Stanciel, T.J., and Rufus McGee. Critically, Plaintiff has advanced no evidence that Czablewski or Burke were aware of any coercion, fabrication, or concealment associated with the interviews of these witnesses. Eugene Stanciel, T.J., and Rufus

McGee have not, in their affidavits or during their depositions, identified or described Czablewski or Burke as an offending officer or someone who failed to intervene in the coercion or participated in a conspiracy. (SOMF ¶¶ 59-66).

Czablewski could not have prevented or conspired to commit any constitutional violation associated with the above referenced witnesses because he was not involved in the investigation of Mr. Jackson's murder when they were interviewed. (*Id.* at ¶¶ 45-46). Indeed, Eugene Stanciel and Rufus McGee were interviewed before Czablewski became involved in the case, and T.J. was not interviewed until after Czablewski's involvement ended. (*Id.* at ¶¶ 45-46, 50).

With respect to Burke, although he was involved in the investigation when McGee and T.J. were interviewed, there is no record evidence demonstrating that Burke was involved in those interviews. (*Id.* at ¶¶ 56, 63-66). Burke did participate, at times, in the interview of Stanciel; however, that fact alone does not mean that he could have prevented or conspired to commit the alleged coercion of Stanciel. Burke testified that he did not engage in and was not aware of any improper conduct. (*Id.* at ¶ 54). Stanciel's own affidavit and deposition testimony is consistent with Burke's lack of involvement, testifying that he was interviewed by multiple officers throughout the day and that they were "in and out" of the interview room. (*Id.* at ¶ 62). Plaintiff has failed to advance any evidence against Burke beyond that. Accordingly, Plaintiff has failed to meet his evidentiary burden to connect both Czablewski and Burke to the alleged deprivation of his due process rights.

ii.    *Neither Czablewski nor Burke Conspired to Engaged in or Could Have Prevented the Alleged Coercion of Plaintiff's Confession*

Plaintiff cannot demonstrate that Czablewski or Burke conspired to violate or could have prevented the violation of his Fifth Amendment rights. As explained above, neither Czablewski nor Burke participated in Plaintiff's interrogation. As such, they could not have conspired to

commit or prevented any alleged coercion. *Wilson*, 2011 WL 759939, at *8 (granting summary judgment on 1983 failure to intervene claim where plaintiff provided no evidence that the officers were present in the interview room during the interrogation). Accordingly, Czablewski and Burke are entitled to summary judgment on Counts III and IV.

### D. Plaintiff's Malicious Prosecution and Civil Conspiracy Claims Against Czablewski and Burke Fail for Independent Reasons

As explained above, Defendant Officers are entitled to summary judgment on Plaintiff's malicious prosecution and civil conspiracy claims. Even if the Court determines that probable cause did not exist for Plaintiff's arrest and eventual prosecution, such that Plaintiff's malicious prosecution and civil conspiracy claims can survive summary judgment, Czablewski and Burke are still entitled to summary judgment on those claims on independent grounds.

A necessary element of a malicious prosecution claim is "the commencement or continuance of an original criminal or civil judicial proceeding by the defendant" *Brown*, 2022 WL 4602714, at *31. An officer "commences or continues" the proceeding if he or she "played a significant role in causing the prosecution of the plaintiff." *Lipscomb v. Knapp*, No. 07 C 5509, 2009 WL 3150745, at *11 (N.D. Ill. Sept. 30, 2009). An officer must do more than participate in the investigation; there must be evidence that the officer "committed some act of misconduct along the lines of giving perjured testimony, or falsifying information or evidence, or withholding exculpatory evidence." *Id.* at *11-12. When a malicious prosecution claim is coupled with a civil conspiracy claim, a plaintiff must show that the officer "knowingly and voluntarily" participated in the misconduct. *See McClure v. Owens Corning Fiberglass Corp.*, 188 Ill. 2d 102 (Ill. 1999) ("Civil conspiracy is an intentional tort and requires proof that a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.").

The record evidence shows that Czablewski and Burke's involvement in Plaintiff's prosecution was limited to interviewing witnesses, most of whom never testified against Plaintiff. (SOMF ¶¶ 45, 48, 51-53). This level of involvement is insufficient to maintain a malicious prosecution claim. *Lipscomb*, 2009 WL 3150745, at *11-12. As explained above, Plaintiff has failed to advance any evidence demonstrating that Czablewski or Burke engaged in or were aware of any actual misconduct. Accordingly, Czablewski and Burke are entitled to summary judgment on Plaintiff's malicious prosecution claim, as well as his derivative civil conspiracy claim.

## CONCLUSION

For the foregoing reasons, the Defendant Officers respectfully request that the Court grant this Motion, enter judgment in favor of the Defendant Officers on Counts III, VI, and VIII and in favor of Defendants Steve Czablewski and William Burke on all Counts, and grant all other relief that is just and proper.

Dated: June 23, 2023        Respectfully submitted,

**DEFENDANT OFFICERS**

By:   */s/ Kyle L. Flynn*
        One of Their Attorneys

John F. Gibbons
Kyle L. Flynn
Thomas Quinn Ford
Tyler L. Salway
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
gibbonsj@gtlaw.com
flynnk@gtlaw.com
fordq@gtlaw.com
salwayt@gtlaw.com