**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MARCEL BROWN,** | |
| Plaintiff, | |
| v. | No. 19-cv-4082 |
| **CITY OF CHICAGO;** Chicago Police Detectives **MICHAEL MANCUSO, KEVIN McDONALD, GARRICK TURNER, RUBIN WEBER, STEVE CZABLEWSKI** and **WILLIAM BURKE; COUNTY OF COOK, ILLINOIS;** Assistant State's Attorney **MICHELLE SPIZZIRRI,** | **The Honorable Lindsay C. Jenkins** **Magistrate Judge Sunil R. Harjani** |
| Defendants. | |

**DEFENDANT OFFICERS' REPLY IN SUPPORT OF**
**THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdullahi v. City of Madison,*
    423 F.3d 763 (7th Cir. 2005) ............................................................................................ 9

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ............................................................................. 9

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,*
    235 F.R.D. 435 (N.D. Ill. 2006) .................................................................................... 10

*Beaman v. Souk,*
    7 F. Supp. 3d 805 (C.D. Ill. 2014) .................................................................................. 8

*Bisharat v. Vill. of Niles,*
    No. 10 C 00594, 2014 WL 2514510 (N.D. Ill. June 4, 2014) ......................................... 8

*Brown v. City of Chicago,*
    633 F. Supp. 3d 1122 (N.D. Ill. 2022) ............................................................. 11, 13, 14

*Byrd v. Brishke,*
    466 F.2d 6 (7th Cir. 1972) ............................................................................................... 9

*Carvajal v. Dominguez,*
    542 F.3d 561 (7th Cir. 2008) .................................................................................... 13, 15

*Coleman v. City of Peoria,*
    925 F.3d 336 (7th Cir. 2019) ........................................................................................... 2

*DeShaney v. Winnebago Ctny. Dep't of Social Services,*
    489 U.S. 189 (1989) ........................................................................................................ 9

*Detection Sys. v. Orland Fire Prot. Dist.,*
    929 F.3d 865 (7th Cir. 2019) ........................................................................................... 7

*Evans v. City of Chicago,*
    522 F. Supp. 789 (N.D. Ill. 1980) ................................................................................... 7

*Gill v. City of Milwaukee,*
    850 F.3d 335 (7th Cir. 2017) ......................................................................................... 10

*Harris v. Kuba,*
    486 F.3d 1010 (7th Cir. 2007) ....................................................................................... 15

*Hyung Seok Koh v. Graf,*
    307 F. Supp. 3d 827 (N.D. Ill. Mar. 30, 2018) ........................................................... 4, 5

i

*Johnson v. Cambridge Indus., Inc.*,
 325 F.3d 892 (7th Cir. 2003) ................................................................................................... 11, 14

*Jones v. City of Chicago*,
 No. 08 C 3501, 2011 WL 1898243 (N.D. Ill. May 18, 2011) ............................................................ 6

*McGreevy v. Stroup*,
 413 F.3d 359 (3d Cir. 2005) ........................................................................................................... 7

*Modrowski v. Pigatto*,
 712 F.3d 1166 (7th Cir. 2013) ....................................................................................................... 7

*Monell v. NYC. Dep't Soc. Servs.*,
 436 U.S. 658(1978) ....................................................................................................................... 9

*Moore v. City of Chicago*,
 No. 02-CV-5130, 2007 WL 3037121 (N.D. Ill. 2007) .................................................................. 12

*Moran v. Calumet City*,
 54 F.4th 483 (7th Cir. 2022) ....................................................................................................... 13

*Mosley v. City of Chicago*,
 No. 06 C 6314, 2009 WL 3097211 (N.D. Ill. Sept. 22, 2009) ...................................................... 15

*Mwangangi v. Nielsen*,
 48 F.4th 816, 834 (7th Cir. 2022) ............................................................................................ 9, 10

*Patrick v. City of Chicago*,
 974 F.3d 824 (7th Cir. 2020) .................................................................................................. 11, 15

*Pryor v. City of Chicago*,
 No. 07 C 2479, 2010 WL 3724207 (N.D. Ill. Sept. 15, 2010) ...................................................... 11

*Sassak v. City of Park Ridge*,
 431 F. Supp. 2d 810 (N.D. Ill. 2006) ............................................................................................. 7

*Siegel v. Shell Oil Co.*,
 656 F. Supp. 2d 825 (N.D. Ill. 2009) ............................................................................................. 4

*Stewardson v. Biggs*,
 43 F.4th 732 (7th Cir. 2022) ....................................................................................................... 10

*Trumbull v. SCI Ill. Servs.*,
 575 F. App'x 683 (7th Cir. 2014) ................................................................................................... 4

*Vance v. Rumsfeld*,
 701 F.3d 193 (7th Cir. 2012) ......................................................................................................... 9

*Vaughn v. Chapman*,
 662 F. App'x 464 (7th Cir. 2016) ................................................................................................... 2

*Yang v. Hardin,*
  37 F.3d 282 (7th Cir. 1994) ............................................................................................. 9

*Young v. Chicago,*
  987 F.3d 641 (7th Cir. 2021) ........................................................................................... 2

**State Cases**

*Beaman v. Freesmeyer,*
  131 N.E.3d 488 (Ill. 2019) ............................................................................................. 16

*Coghlan v. Beck,*
  984 N.E.2d 132 (Ill. App. Ct. 2013) ................................................................................ 8

*Denton v. Allstate Insurance Co.,*
  504 N.E.2d 756 (Ill. App. Ct. 1986) .............................................................................. 16

*Johnson v. Target Stores, Inc.,*
  791 N.E.2d 1206 (Ill. App. Ct. 2003) .............................................................................. 3

*McClure v. Owens Corning Fiberglas Corp.,*
  720 N.E.2d 242 (Ill. 1999) .......................................................................................... 7, 8

*People v. Dennis,*
  692 N.E.2d 325 (Ill. 1998) ............................................................................................. 5

*People v. Fernandez,*
  6 N.E.3d 145 (Ill. 2014) ................................................................................................. 5

*People v. Perez,*
  725 N.E.2d 1258 (Ill. 2000) ........................................................................................... 5

*People v. Taylor,*
  712 N.E.2d 326 (Ill. 1999) ............................................................................................. 5

*Porter v. City of Chi.,*
  912 N.E.2d 1262 (Ill. App. Ct. 2009) .......................................................................... 2, 4

*Thomas v. Fuerst,*
  803 N.E.2d 619 (Ill. App. Ct. 2004) ................................................................................ 6

Defendants Michael Mancuso, Garrick Turner, Rubin Weber, Steve Czablewski, William Burke, and Geri Lynn Yanow, the Special Representative for the Estate of Kevin McDonald (collectively "Defendant Officers"), submit this Reply in Support of their Motion for Partial Summary Judgment.

## INTRODUCTION

Defendant Officers have put forward facts clearly demonstrating they had probable cause to pursue charges against Plaintiff in relation to the shooting of Paris Jackson and ample caselaw showing courts routinely reject Illinois malicious prosecution claims premised on similar evidence. Plaintiff responds with white noise—improper responses to Defendant Officers' proffered facts and immaterial additional facts—and incorrectly attempts to swap the standard for showing probable cause with the higher standard of proving criminal guilt.

Defendants Officers have shown that Plaintiff's civil conspiracy claim must fail without an underlying state law tort claim. Plaintiff erroneously argues that his federal claims can provide the requisite underlying claim—an approach that Plaintiff has not shown courts apply to civil conspiracy claims.

Defendant Officers further argue that Judge Easterbrook's recent opinion in *Mwangangi v. Nielsen* shows why the Court should reject Plaintiff's Section 1983 failure-to-intervene claim. Plaintiff responds by pointing to certain Seventh Circuit decisions that do not analyze the validity of a failure-to-intervene claim, and he incorrectly characterizes these decisions as binding precedent on the issue. They are not.

Regarding Defendant Officers' arguments that summary judgment should be granted in favor of Defendants Czablewski and Burke, Plaintiff concedes his claims against Czablewski fail. Plaintiff does not concede his claims against Burke, but Defendant Officers have proven that he is also entitled to summary judgment on all claims brought against him because he was not involved

in the misconduct giving rise to Plaintiff's claims in this lawsuit. Plaintiff's attempts to connect Burke to the alleged misconduct surrounding witness interviews of Eugene Stanciel and Rufus McGee misses the mark. Plaintiff has insufficient evidence demonstrating any wrongdoing by Burke and he is entitled to judgment as a matter of law.

## **ARGUMENT**

### I.    **PLAINTIFF'S MALICIOUS PROSECUTION CLAIM MUST FAIL BECAUSE THE UNDISPUTED FACTS SHOW PROBABLE CAUSE EXISTED TO PURSUE CRIMINAL PROCEEDINGS AGAINST PLAINTIFF.**

The existence of probable cause is fatal to Plaintiff's malicious prosecution claim. (Opp'n at 11); *see also Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019). Here the undisputed facts show that Defendant Officers had sufficient evidence to establish probable cause and institute criminal proceedings against Plaintiff for the murder of Paris Jackson. In arguing to the contrary, Plaintiff ignores relevant caselaw and urges the Court to apply an improper standard that would require Defendant Officers to present evidence sufficient to prove ultimate guilt. This is not what the law requires.

To be clear, the Court must assess whether probable cause existed here by looking at the body of evidence that Defendant Officers knew about at the time criminal proceedings were initiated against Plaintiff. *Porter v. City of Chi.*, 912 N.E.2d 1262, 1273 (Ill. App. Ct. 2009) ("Probable cause in this context has historically been determined by looking to what the defendants knew at the time of subscribing a criminal complaint."); *see also Vaughn v. Chapman,* 662 F. App'x 464, 467 (7th Cir. 2016) (applying Illinois law and stating same). Probable cause does not necessitate that officers have definitive evidence as to Plaintiff's state of mind. Rather, "[p]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred . . . This is not a high bar." *Young v. Chicago*, 987 F.3d 641, 644

2

(7th Cir. 2021) (internal quotation marks and citations omitted); *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. Ct. 2003) (probable cause is established if the facts "would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged"). In short, a "sound and honest suspicion" that, after being summoned to the Park, Plaintiff knowingly ferried his armed cousin, RJ, to resolve the dispute in the park with violence is all that is necessary to demonstrate probable cause and defeat Plaintiff's malicious prosecution claim. From this perspective, the undisputed facts established probable cause.

It is undisputed that during the course of the investigation into Paris Jackson's murder, Defendant Officers learned the following from interviewing a dozen eyewitnesses: (i) there were two groups in Amundsen Park ("the Park") on the night of August 30, 2008 that became embroiled in an argument; (ii) Paris Jackson was in the Park with a group of boys; (iii) around this time, RJ Branch ("RJ"), who was armed, was at a White Castle only a short distance away from the Park; (iv) RJ was with his cousin, Plaintiff; (v) RJ was summoned to the Park by his sister who was arguing with others in the Park; (vi) Plaintiff also received a call to come to the Park; (v) Plaintiff drove RJ to the Park in Plaintiff's gold Malibu sedan after receiving the calls to come to the Park; (vi) RJ brought the gun into the Park, and fired his gun in the direction of a group of boys in the Park, which included Mr. Jackson; (vii) after the shooting, Plaintiff drove RJ from the scene in Plaintiff's gold Malibu, and (viii) no witness interviewed at the time identified anyone other than RJ as firing a gun. (Defs.' Local Rule 56.1 Statement of Facts ("SOMF") at ¶¶ 7-16, 20-42.) Merely hours after the shooting, Mr. Jackson's body was found in the Park near where RJ was shooting in Mr. Jackson's direction. (*Id*. at ¶¶ 18.)

Plaintiff admits these facts, though he distracts the Court by adding irrelevant facts and

caveats that amount to impermissible argument. (*See* Pl.'s Resp. to Defs.' SOMF ("RDSOF") at ¶¶ 11, 18, 20-42.) The Court should disregard these portions of Plaintiff's responses because they are improper and ultimately immaterial. *Trumbull v. SCI Ill. Servs.*, 575 F. App'x 683, 684-85 (7th Cir. 2014) (affirming district court's decision to disregard plaintiff's response that improperly included argument and additional facts); *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 830 (N.D. Ill. 2009) ("The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments.").[1] Indeed, there is no evidence that the witnesses identified in Defendant Officers' Statement of Facts have disputed the accuracy of their recorded statements, and the witnesses who have been deposed in this matter have confirmed that the recorded statements are true. (*See* SOMF ¶¶ 31, 33, 40).

Relatedly, in his RDSOF, Plaintiff disputes that these eyewitness statements were obtained without coercion by pointing to the testimony of Eugene Stanciel ("Stanciel"), who claims that certain police officers coerced ***his*** statement. (*See* RDSOF at ¶ 21.) But Defendant Officers need ***not*** rely on Stanciel's 2008 statements to demonstrate probable cause existed here. Rather, Defendant Officers rely on a dozen other eyewitnesses; Plaintiff offers no evidence showing these eyewitness statements were coerced or fabricated. (*Id*. at ¶¶ 20-42.) Further, evidence of alleged coercion of Stanciel cannot vitiate the probable cause established by the untainted evidence of other eyewitnesses. *Hyung Seok Koh v. Graf*, 307 F. Supp. 3d 827, 848 (N.D. Ill. Mar. 30, 2018). Plaintiff tacitly admits as much, as he makes no argument suggesting that the alleged coercion

---

[1] For example, Plaintiff points out differences between certain witnesses' statements to Cook County Assistant State's Attorneys ("ASA statements") and later grand jury testimony. These differences are ultimately immaterial because they do not affect what Defendant Officers knew at the time that criminal proceedings were initiated against Plaintiff. *See Porter*, 912 N.E.2d 1262 at 1273. Likewise, Plaintiff highlights the age of certain witnesses or that certain witnesses did not recall details contained in their ASA statements when deposed in this case more than a decade later. Plaintiff fails to show that these additional facts can controvert the substance of the eyewitness testimony these witnesses provided in 2008.

somehow invalidates the evidence gathered from other eyewitnesses. (Opp'n at 11-15.) The eyewitness testimony from at least **twelve** witnesses described above is more than enough to show probable cause existed to initiate criminal proceedings against RJ and Plaintiff for the murder of Paris Jackson. (Defs.' Memo. at 8-10.)

Plaintiff argues Defendant Officers must show more because this undisputed evidence does not adequately demonstrate that Plaintiff shared RJ's intent to kill or participated in a common criminal design. (Opp'n at 13-15.) For Plaintiff, the undisputed evidence supports a conclusion that he innocently drove RJ to the Park without any idea his cousin had a gun and then fled from the Park following the shooting to escape a "dangerous situation for his own safety." (*Id*.)

But Plaintiff conflates probable cause to believe an individual engaged in the criminal conduct and the prosecution's burden to prove Plaintiff guilty beyond a reasonable doubt at trial. Plaintiff cites four cases that analyze whether evidence was sufficient to ultimately **convict** a defendant on an accountability theory. (*Id*. at 12-18 (citing *People v. Fernandez*, 6 N.E.3d 145 (Ill. 2014); *People v. Perez*, 725 N.E.2d 1258 (Ill. 2000), *People v. Taylor*, 712 N.E.2d 326 (Ill. 1999), and *People v. Dennis*, 692 N.E.2d 325 (Ill. 1998) (affirming conviction)).) But these cases and Plaintiff's self-serving account of his intentions and interpretation of the evidence does not vitiate probable cause because "probable cause is a low bar." *Hyung*, 307 F. Supp. 3d at 861 ("The inference of the suspect's guilt does not need to be more probable than competing alternatives; a **fair probability of guilt** is enough.") (emphasis added). Unlike the cases cited by Defendant Officers, none of Plaintiff's cases analyze malicious prosecution claims or whether police had probable cause to initiate the criminal proceedings at issue. Those cases are inapposite.

Finally, Plaintiff fails to meaningfully distinguish the cases Defendant Officers rely on, which actually examine the standard governing probable cause in the malicious prosecution

context and apply that standard to facts similar to those in this case. (Defs.' Memo. at 8-10.) These cases compel summary judgment on Plaintiff's malicious prosecution claim.

## II. PLAINTIFF'S STATE LAW CONSPIRACY CLAIM MUST FAIL BECAUSE PLAINTIFF CANNOT PROVE ANY UNDERLYING STATE LAW TORT NOR AN AGREEMENT AMONG DEFENDANTS.

The Court should grant summary judgment on Plaintiff's state law civil conspiracy claim (Count VIII) because Plaintiff cannot prove any underlying state law tort and, alternatively, because Plaintiff cannot point to competent evidence that shows Defendant Officers formed an agreement to participate in any unlawful act.

Plaintiff concedes, as he must, that his civil conspiracy claim fails if he cannot prove an independent tort committed as part of the alleged conspiracy. *Thomas v. Fuerst*, 803 N.E.2d 619, 626 (Ill. App. Ct. 2004); *Jones v. City of Chicago*, No. 08 C 3501, 2011 WL 1898243, at *6 (N.D. Ill. May 18, 2011) (granting summary judgment on civil conspiracy claim because predicate malicious prosecution claim failed). As explained above, Plaintiff's malicious prosecution claim fails, and Plaintiff's intentional infliction of emotional distress claim has been dismissed. (ECF No. 238.) Accordingly, there is no state law tort claim underlying Plaintiff's civil conspiracy claim.

Plaintiff argues that his Section 1983 claims can provide the foundation for his civil conspiracy claim, but Plaintiff is wrong. The position Plaintiff takes now at summary judgment is belied by his own pleadings. In alleging his state law conspiracy claim, Plaintiff explicitly mentions state law claims of malicious prosecution and intentional infliction of emotional distress but makes no mention of his Section 1983 claims, (2d Am. Compl., ECF No. 136, at ¶¶ 111-112), and Plaintiff alleges a separate count under Section 1983 for conspiracy to deprive his constitutional rights (Count IV). (*Id*. at ¶¶ 87-93.)

More glaring, Plaintiff cites no cases in which a court holds a federal claim can support a

civil conspiracy claim under Illinois law (or any state law for that matter).[2] That is because "the viability of the state law conspiracy claim depends on the existence of independent **state law** claims," not federal claims. *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 822 (N.D. Ill. 2006) (emphasis added) (noting agreement on principle); *see also McGreevy v. Stroup*, 413 F.3d 359, 370-71 (3d Cir. 2005) (affirming grant of summary judgment on state law civil conspiracy claim where plaintiff's state law tort claims failed while permitting federal claims premised on same allegations to proceed). Plaintiff cannot support his civil conspiracy claim with any state law tort claim, so summary judgment on Count VIII is appropriate.

Alternatively, summary judgment is also appropriate because Plaintiff fails to put forth competent evidence that shows Defendant Officers formed an agreement to participate in any unlawful act. *See McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 133 (Ill. 1999) (explaining standards and that showing an "agreement is 'a necessary and important' element of this cause of action"). Perhaps seeing a gap in proof, Plaintiff argues that Defendant Officers forfeit this argument by not citing specific facts in their memorandum. (Opp'n at 16.) Plaintiff misstates Defendant Officers' burden at summary judgment. Defendant Officers need not point to specific record materials when pointing out an absence of proof on a particular element of Plaintiff's claim because Plaintiff ultimately bears the burden to prove this element at trial. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169-70 (7th Cir. 2013) (relying on *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and Advisory Committee Notes on 2010 Amendments to Fed. R. Civ. P. 56).

Plaintiff also argues that he raises circumstantial evidence that would support a jury finding

---

[2] The best support Plaintiff can muster for his argument is *Evans v. City of Chicago*, 522 F. Supp. 789, 792 (N.D. Ill. 1980), but the district court in *Evans* **assumed** the Illinois statute at issue applied to the plaintiffs' judgments; it did not hold that Illinois law views a Section 1983 claim as a tort. 522 F. Supp. at 792; *see also Detection Sys. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 (7th Cir. 2019) ("Unexamined assumptions of prior cases do not control the disposition of a contested issue.").

an agreement among the Defendant Officers to violate Plaintiff's rights. (Opp'n at 16.) But the evidence Plaintiff relies on is insufficient under Illinois law. Plaintiff must prove an agreement existed among the Defendant Officers by clear and convincing evidence. *McClure*, 720 N.E.2d 242, 258. Even assuming the "facts" Plaintiff raises are undisputed,[3] they cannot establish the requisite agreement among Defendant Officers. At bottom, Plaintiff's facts amount to knit-picking the investigation of the murder of Paris Jackson (e.g., failing to test DNA samples or to *re*-interview certain witnesses), and highlighting alleged mistakes or oversights during a police investigation is insufficient to prove an agreement to conspire. *Beaman v. Souk*, 7 F. Supp. 3d 805, 828 (C.D. Ill. 2014) (finding "[j]oint pursuit of an investigation based on a belief a suspect is guilty is not an unlawful conspiracy" and noting there was no authority "indicating that flaws in an investigation are evidence of a conspiracy"); *Bisharat v. Vill. of Niles*, No. 10 C 00594, 2014 WL 2514510, at *6, 9 (N.D. Ill. June 4, 2014) (granting summary judgment on civil conspiracy claim where plaintiff could not show that defendant officers' actions were unlikely to have been undertaken without an agreement); *Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. Ct. 2015) (finding alleged facts that parties shared information and worked together was insufficient to establish civil conspiracy); *see also McClure*, 188 Ill. 2d at 133-141 (finding that when facts relied upon for conspiracy are also consistent with non-conspiracy, plaintiff fails to meet clear and convincing standard of proof). Accordingly, Count VIII fails.

III.  **UNLIKE CASES CITED BY PLAINTIFF, *MWANGANGI* ACTUALLY ANALYZES FAILURE-TO-INTERVENE THEORY UNDER SECTION 1983 AND SHOWS WHY SUMMARY JUDGMENT ON COUNT III IS WARRANTED.**

While decisions in the Seventh Circuit have permitted Section 1983 claims premised on a

---

[3] Plaintiff cites Plaintiff's Statement of Additional Facts ("PSOF") for support. (Opp'n at 16 (citing PSOF ¶¶ 18-37).) Like the RDSOF, significant portions of the PSOF amount to impermissible argument that violates LR 56.1 and should be disregarded. *See Siegle v. Shell Oil Co.*, 656 F. Supp. 2d at 830. Defendant Officers also dispute certain facts cited by Plaintiff. (*See* RPSOF at ¶¶ 18-37.)

failure-to-intervene theory, none of these cases have actually addressed the legal validity of a failure-to-intervene theory. In contrast, Judge Easterbrook's concurring opinion in *Mwangangi v. Nielsen* substantively analyzes why a failure-to-intervene claim fails as a matter of law: no statute or constitutional rule requires a police officer to affirmatively stop another police officer from committing a wrongful act, so holding an officer liable for "failing to intervene" is actually holding an officer vicariously liable for the acts of another government employee. 48 F.4th 816, 834 (7th Cir. 2022). And of course, Section 1983 does not permit vicarious liability. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 129 S. Ct. 1937 (2009) and *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

In opposing Defendant Officers' Motion, Plaintiff makes no effort to address the substance of Judge Easterbrook's opinion in *Mwangangi*; rather, Plaintiff cites four cases permitting a failure-to-intervene claim. (Opp'n at 17.) Plaintiff should not be allowed to escape summary judgment so easily. As Judge Easterbrook points out, two of the cases Plaintiff cites—*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) and *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005)—predate the Supreme Court's opinion in *Iqbal* and the Seventh Circuit's *en banc* decision in *Vance v. Rumsfeld*, 701 F.3d 193 (7th Cir. 2012), both of which clarify that a Section 1983 claim premised on a defendant's failure to affirmatively ensure government employees act properly would impermissibly impose vicarious liability.[4] *Mwangangi*, 48 F.4th at 834. The two other

---

[4] Notably, *Abdullahi* relies entirely on *Yang*, which relies primarily on the Seventh Circuit's decision in *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) for the rationale underlying a failure-to-intervene claim. *Yang*, 37 F.3d at 285. Importantly, *Byrd* does not identify any **constitutional provision** imposing a duty on an officer to intervene. *See* 466 F.2d 6. Moreover, *Byrd* predates cases like *DeShaney v. Winnebago Cnty. Dep't of Social Services*, 489 U.S. 189, 109 S. Ct. 998 (1989) (holding Constitution does not impose affirmative duty on state actor to prevent plaintiff from being harmed by third party) and *Monell*, which make clear that Section 1983 cannot be used to impose vicarious liability. In other words, not only do *Yang* and *Abdullahi* fail to offer a constitutional basis for a failure-to-intervene claim, they also fail to square cases like *DeShaney* and *Monell*.

9

decisions cited by Plaintiff—*Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) and *Stewardson v. Biggs*, 43 F.4th 732, 734-37 (7th Cir. 2022)—do not explain "why [the failure-to-intervene] theory is consistent with *Iqbal*, *Vance*, and similar decisions" but rather simply assume it is, citing cases like *Yang*. *Mwangangi*, 48 F.4th at 834-835.

Because the cases Plaintiff cites do not actually examine or explain the validity of a failure-to-intervene claim, they should not be viewed as binding precedent. Doing so "is how circuit law comes to diverge from decisions of the Supreme Court and from [Seventh Circuit] *en banc* decisions." *Id.* at 835; *see also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 445 n.17 (N.D. Ill. 2006) (citing cases for "principle that no weight is to be attached to an unexamined holding"). Even if Judge Easterbrook's opinion in *Mwangangi* is not binding, it is certainly persuasive authority from the Seventh Circuit and demonstrates why Count III must fail as a matter of law.

## IV. DEFENDANTS CZABLEWSKI AND BURKE ARE ENTITLED TO SUMMARY JUDGMENT.

### A. Plaintiff Concedes the Court Should Grant Summary Judgment In Favor of Defendant Czablewski.

Defendant Officers must note that, in an effort to simplify summary judgment for the Court, Defendant Officers first conferred with Plaintiff and asked him to voluntarily dismiss Czablewski as a Defendant. Plaintiff refused and thereby insisted Defendant Officers brief what was already clear to Plaintiff – Plaintiff's claims against Czablewski are not viable.

### B. The Court Should Grant Summary Judgment in Favor of Defendant Burke.

Similar to Czablewski, Burke's role in the investigation was minimal and all of Plaintiff's claims against Burke fail as a matter of law.[5]

---

[5] Plaintiff has withdrawn his claim against Defendant Burke under the Fifth Amendment (Count II). (Opp'n 10 n.3).

**1.**     **Plaintiff's Due Process Claim (Count I) Cannot Be Maintained Against Burke.**

*i.*     *There Is No Evidence to Support a Fabrication Claim Against Burke.*

Plaintiff contends that Burke fabricated Eugene Stanciel's statement but offers no evidence to substantiate that he did so and, in any event, cannot demonstrate that Stanciel's allegedly fabricated statement by Burke was used against him. A fabrication claim has four elements: (1) defendant knowingly fabricated evidence against the plaintiff; (2) the evidence was used at his criminal trial; (3) the evidence was material; and (4) plaintiff was damaged as a result. *Patrick v. City of Chicago*, 974 F.3d 824, 834–35 (7th Cir. 2020); *see also Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1156 (N.D. Ill. 2022). With respect to Stanciel's statement given during the investigation, Plaintiff cannot satisfy any of the four elements to support a fabrication claim against Burke: (1) there is insufficient evidence to support Plaintiff's theory that Burke knowingly fabricated Stanciel's statement; (2) Stanciel's purportedly fabricated statement was never used at Plaintiff's criminal trial and instead Stanciel testified at Plaintiff's trial; (3) Stanciel's statement was not material because it was not used at Plaintiff's trial; and (4) Plaintiff was not damaged by Stanciel's statement because it was never used against him.

First, Plaintiff simply does not have sufficient evidence to satisfy this element because Burke was never identified as the individual who allegedly fabricated Stanciel's statement. Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). Plaintiff had every opportunity at Stanciel's deposition to elicit testimony identifying Burke as one of the detectives who allegedly fabricated his statement. For example, Plaintiff could have shown Stanciel a photo of Burke and asked if he was one of the detectives. Plaintiff was unable to, or chose not to, seek evidence from Stanciel that may have identified Burke as an alleged bad actor. This dooms Plaintiff's fabrication claim. *See Pryor v.*

11

*City of Chicago,* No. 07 C 2479, 2010 WL 3724207, at \*6 (N.D. Ill. Sept. 15, 2010) (granting summary judgment on fabrication claim because, after over two years of depositions and the use of other discovery methods, the plaintiff had "not produced sufficient evidence that the named Defendants are the individuals who actually caused his alleged constitutional injury.").

In his Response, Plaintiff also attempts to distinguish the *Moore* case cited in Defendants' Memorandum. (Opp'n at 20 (citing *Moore v. City of Chicago*, No. 02-CV-5130, 2007 WL 3037121, at \*3 (N.D. Ill. 2007)).) *Moore* was a denial of medical care case, filed by a prisoner who was in lockup, where the court granted summary judgment to an individual officer because plaintiff had failed to identify the officer during her deposition. Plaintiff argues that although the defendant officer in *Moore* was granted summary judgment because the plaintiff failed to identify her, this was only because "there was no other evidence tying the defendant officer to the alleged misconduct." (*Id.*) This is an inaccurate summary of *Moore*. Contrary to Plaintiff's summary, there was ample evidence tying the officer to the alleged misconduct including the following: (1) the officer was assigned to the plaintiff's lockup upon her arrival; (2) the plaintiff told the lockup attendant that she had a history of seizures; (3) the officer conducted 14 cell checks while the plaintiff was in lockup; and (4) the officer admitted that she had direct contact with plaintiff and periodically checked on her throughout her shift. 2007 WL 3037121, at \*3 (N.D. Ill. 2007). This was not enough evidence for the plaintiff to survive summary judgment because the plaintiff could not identify the officer as the individual who denied her care. Plaintiff's fabrication claim against Burke similarly fails because, even though Burke was present during portions of Stanciel's interview, Plaintiff lacks the requisite evidence identifying Burke as the individual who "knowingly fabricated" Stanciel's statement.

Second, even if the Court construes the facts as creating a genuine issue as to whether or

not Burke knowingly fabricated Stanciel's statement, Plaintiff's fabrication claim still fails because Plaintiff cannot meet the remaining three elements. In his Response, Plaintiff states that "Stanciel's incriminating statement . . . was relied on by prosecutors at the grand jury and at trial." (Opp'n at 24.) Plaintiff fails to support this assertion with evidence from the record because it is simply not true. To the contrary, Stanciel's handwritten statement given to ASA Longo during the investigation was never relied on by prosecutors at Plaintiff's criminal trial. (RPSOF ¶ 28). Burke did not testify at the criminal trial at all let alone testify in relation to any statement Stanciel gave. (SOF ¶ 51). Further, Stanciel was called and testified for the prosecution, but his handwritten statement was never introduced into evidence and was not used to refresh Stanciel's recollection. (RPSOF ¶ 28). Thus, Plaintiff cannot establish the last three elements of his fabrication claim because Stanciel's handwritten statement was not used during Plaintiff's criminal trial, was not material, and did not damage Plaintiff as a result. *See Brown*, 633 F. Supp. 3d at 1160 (granting summary judgment on fabrication claim that was based on witnesses' statements that were given to the defendants, but which were not used against plaintiff in his criminal trial). Accordingly, summary judgment is warranted as to the fabrication claim against Burke.

## ii. *There Is No Evidence to Support a Concealment Claim Against Burke.*

To prevail on a *Brady* claim against Burke, Plaintiff must demonstrate that (1) there exists non-disclosed evidence that was favorable, (2) the non-disclosed evidence was concealed by Burke; and (3) the concealed evidence resulted in prejudice, meaning that if it had been disclosed, there is a reasonable probability the proceeding would have resolved differently. *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022); *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008). Plaintiff alleges that *an officer*, not specifically Burke, withheld a statement allegedly given by Rufus McGee ("McGee") affirmatively stating that R.J. did not shoot

13

Mr. Jackson. (2d Am. Compl. ¶ 32). In his Response, Plaintiff now argues that it was Burke who conducted the interview of McGee and concealed this alleged exculpatory statement. (Opp'n 23). But Plaintiff's evidence is predicated entirely upon the fact that Burke conducted the interview of Isaiah Davis ("Davis") and the Case Supplementary Report ("Supp. Report") states that McGee gave essentially the same account as Davis (i.e. he did not see who was shooting and did not see the victim shot). (*Id.*) However, as Plaintiff admits, the Supp. Report was prepared several months after McGee and Davis were interviewed, (*id.*), and Burke did not prepare the Supp. Report. (RPSOF ¶ 27.) The author of the Supp. Report, who made the comparison of McGee's and Davis' interviews, could have based that comparison on a myriad of sources of information. It is pure speculation for Plaintiff to assume that Burke interviewed McGee based on the fact that, several months later, another Defendant Officer compared McGee's interview to Davis' interview. Contrary to Plaintiff's argument, McGee did not testify that Burke interviewed him. (SOF ¶ 64.)

As with Plaintiff's fabrication claim against Burke, summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson*, 325 F.3d at 901. Plaintiff had every opportunity at McGee's deposition to elicit testimony identifying Burke as the detective who interviewed him. Plaintiff was unable to, or chose not to, seek evidence identifying Burke as the alleged bad actor and Plaintiff's *Brady* claim therefore fails. *See Brown*, 633 F. Supp. 3d at 1164-65 (granting summary judgment on *Brady* claim for failure to identify the defendant as the individual responsible for allegedly suppressing evidence).

Even if Plaintiff could show that Burke interviewed McGee, Plaintiff has insufficient evidence that McGee's statement was suppressed. As Plaintiff admits in his Response, the Supp. Report indicates that the police spoke to McGee, and he gave an eyewitness account of what occurred at the Park. (RPSOF ¶ 27.) Evidence is suppressed when the prosecution fails to disclose

it in time for the defendant to make use of it and it was not otherwise available to the defendant through the exercise of reasonable diligence. *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008). It is a criminal defendant's "responsibility to probe the witnesses and investigate their versions of the relevant events." *Id.* Reasonable diligence requires questioning available fact witnesses regarding their established role in the case. *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 915 (N.D. Ill. 2015). Prior to his prosecution, Plaintiff was aware that the police interviewed McGee. However, Plaintiff did not cite any evidence, and no evidence exists, that his counsel attempted to interview McGee. *See Harris v. Kuba*, 486 F.3d 1010, 1015–16 (7th Cir. 2007) (holding that *Brady* claim failed with respect to eyewitness identification because the evidence was "available to [the plaintiff] and his counsel with minimal research or discovery through the exercise of reasonable diligence"); *Mosley v. City of Chicago*, No. 06 C 6314, 2009 WL 3097211, at *7 (N.D. Ill. Sept. 22, 2009), aff'd, 614 F.3d 391 (7th Cir. 2010) (holding there was no suppression because the plaintiff's "defense attorney could have readily discovered anything [the eyewitness] might have said at the lineup by interviewing him . . . Nobody prevented her from talking to [the eyewitness] before the trial, although she chose not to."); *Carvajal*, 542 F.3d at 567 (holding no *Brady* violation where the witnesses were available to the defense prior to trial); *Patrick*, 103 F. Supp. 3d at 915 (stating *Brady* claim fails where it was possible for defense counsel to interview witness). The interview of McGee was not suppressed, and Burke is entitled to summary judgment on Plaintiff's *Brady* claim.

### 2. Plaintiff's Derivate Claims (Counts III and IV) Fail.

Count III failure to intervene and Count IV conspiracy are derivative of Plaintiff's other § 1983 claims. In support of these claims surviving against Burke, Plaintiff relies only on Burke's alleged misconduct related to Stanciel and McGee. As explained above, Plaintiff cannot advance the requisite evidence to succeed on either Count.

**3.** **Even Assuming There Exists a Genuine Issue of Material Fact as to Probable Cause, Plaintiff's Malicious Prosecution and Civil Conspiracy Claims Against Burke Fail for Independent Reasons.**

Even if the Court determines that a genuine issue of material fact as to probable cause precludes summary judgment for all Defendants as to Plaintiff's malicious prosecution and derivative civil conspiracy claims, Burke is still entitled to summary judgment on those claims on independent grounds. To attach liability to Burke for malicious prosecution, Plaintiff must demonstrate that he played a significant role in causing the commencement or continuance of the criminal proceeding against Plaintiff. *Beaman v. Freesmeyer* ("*Beaman II*"), 31 N.E.3d 488, 498-500 (Ill. 2019). Specifically, Burke "either must have initiated [the] criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1986).

It is undisputed that Burke was not the lead detective on this case and did not testify in any of the pretrial proceedings or at trial. (SOF ¶¶ 51-52; RPSOF ¶ 18). There is no evidence that he discussed any charges with any prosecutors, and he never interacted with Plaintiff during any of Plaintiff's questioning. (See SOF ¶ 55). Plaintiff relies solely on Burke's alleged fabrication of Stanciel's statement (which was not introduced at trial) and the supposed McGee exculpatory statement (that Plaintiff has no evidence Burke was even privy to). As explained above, Plaintiff has failed to advance sufficient evidence demonstrating that Burke engaged in or was aware of any actual misconduct. Accordingly, Burke is entitled to summary judgment on Plaintiff's malicious prosecution claim, as well as his derivative civil conspiracy claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Officers request that the Court grant this Motion, enter judgment in favor of the Defendant Officers on Counts III, VI, and VIII and in favor of Defendants Czablewski and Burke on all Counts, and grant all other relief that is just and proper.

Dated: August 29, 2023                Respectfully submitted,

                                      **DEFENDANT OFFICERS**


                                      By:   */s/ Kyle L. Flynn*
                                              One of Their Attorneys

                                      John F. Gibbons
                                      Kyle L. Flynn
                                      Thomas Quinn Ford
                                      Tyler L. Salway
                                      Greenberg Traurig, LLP
                                      77 West Wacker Drive, Suite 3100
                                      Chicago, IL 60601
                                      gibbonsj@gtlaw.com
                                      flynnk@gtlaw.com
                                      fordq@gtlaw.com
                                      salwayt@gtlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that the foregoing document was served on all counsel via CM/ECF on August 29, 2023.

*/s/ Kyle L. Flynn*