IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCEL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-4082 |
| v. | ) | |
| | ) | The Hon. Lindsay C. Jenkins |
| CITY OF CHICAGO, *et al.* | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
TO EXCLUDE PROFFERED EXPERT TESTIMONY OF BRIAN CUTLER**

The police officer defendants have filed a motion (ECF No. 309) to exclude the proffered opinion testimony of Dr. Brian L. Cutler, a research social psychologist, whose areas of concentration include the study of false confessions. Defendants' motion overlooks controlling precedent and is unpersuasive on the merits. It should be denied.

**DR. CUTLER'S PROPOSED TESTIMONY**

Dr. Cutler is a well-credentialed social psychologist who has studied the phenomenon of false confessions and the police interrogation techniques that have been found to cause them. Defendants do not challenge Dr. Cutler's qualifications to testify in this area. Nor could they. As his CV reflects and his report summarizes, Dr. Cutler holds a PhD in social psychology. He has been a university professor for decades, teaching in the area of social psychology and criminology at the undergraduate and graduate level. He has an impressive list of publications, including peer-reviewed academic papers and book chapters on the subject of interrogations and false confessions. He is an editor of the prestigious journal *Law and Human Behavior.* He is the recipient of research grants to study coercion in videorecorded interviews and interrogations. Dr. Cutler frequently consults on contested confessions and has been qualified to testify in this area

on multiple occasions. *See* 12/9/22 Report of Brian Cutler ("Cutler Report"), Ex. A, at 1-2; Brian Cutler CV, Ex. B.

The Cutler Report explains that the study of false confessions "is informed by decades of foundational psychological research from behavioral, clinical, cognitive, developmental and social psychology." *Id.* at 3. Dr. Cutler describes some of the methodologies used by social scientists who study interrogation and false confessions, explaining that those methodologies include archival research, in which researchers catalogue and evaluate instances of proven false confessions and, from that study, identify situational and individual risk factors for making a false confession. *Id.* at 4, 5. Dr. Cutler makes clear throughout his Report that it is not the role of a false confession expert to weigh in on the truthfulness of a confession statement:

> The purpose of expert psychological testimony on false confessions is to educate the factfinder about false confessions in general and the individual and situational risk factors that give rise to them. The purpose is not to evaluate and opine on the veracity of a defendant's confession, for such evaluations are understood to be the purview of factfinders and not expert witnesses.

*Id.* at 5.

Dr. Cutler offers three overarching opinions. *First,* Dr. Cutler describes the phenomenon of false confessions, explaining that various research methodologies have shown that innocent people can and will confess to crimes they did not commit. Ex. A at 3-13. *Second,* Dr. Cutler reviews the findings of researchers regarding interrogation techniques and practices that have been shown to be associated with false confessions and the vulnerabilities of interrogation subjects that are known to increase the risk of false confession. *Id.* at 13-28. *Third,* Dr. Cutler systematically reviews the video of Plaintiff's interrogation and identifies specific instances in which interrogation techniques were employed that increase the risk of false confession over the course of Plaintiff's lengthy interrogation. *Id.* at 28-45. Dr. Cutler concludes that Plaintiff

2

possessed personal risk factors for false confession, that the conditions of his 34-hour interrogation were oppressive, and that the behavior of the authority figures who participated in his interrogation increased the risk of his confessing falsely. *See id.* at 45.

Defendants contend that Dr. Cutler's opinions should all be barred because they are not the product of reliable principles and methods and they will either be unhelpful to the jury or will invade the jury's province. Def. Mot. at 3-10. In the alternative, Defendants ask that Dr. Cutler be barred from testifying as to false confession risk factors not present in Plaintiff's interrogation, that he be barred from saying that Plaintiff' interrogation was "coercive," and that he be barred from commenting on what the term "the reliability or credibility" of Plaintiff's confession. *Id.* at 11-15. Controlling precedent, not cited in Defendants' Motion, requires that these arguments be rejected.

## ARGUMENT

I. **CONSTISTENT WITH SEVENTH CIRCUIT LAW, DR. CUTLER'S FALSE CONFESSION OPINIONS ARE ADMISSIBLE IN THIS CASE**

Relying exclusively on a few district court opinions from outside the Seventh Circuit, Defendants argue that Dr. Cutler's opinions are unreliable and unhelpful. Defendants fail to mention the Seventh Circuit's opinion in *United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996), which reversed a criminal conviction because the district court wrongfully excluded expert opinions proffered by a defense expert similar to Dr. Cutler's opinions. They make no mention of a more recent Seventh Circuit case reaffirming the admissibility of expert testimony regarding an interrogation subject's vulnerability to false confession. *See United States v. West*, 813 F.3d 619, 625 (7th Cir. 2015). They fail to mention the Seventh Circuit's approving citation to social scientific research on false confessions in *Harris v. Thompson*, 698 F.3d 609, 631 (7th Cir. 2012).

3

Defendants likewise ignore the numerous decisions from this district that follow *Hall* and allow testimony from false confessions experts like Dr. Cutler. *See, e.g.*, *Andersen v. City of Chicago*, 2020 WL 1848081, at *3 (N.D. Ill. Apr. 13, 2020) (admitting testimony of false confession researcher Prof. Saul Kassin); *Harris v. City of Chicago*, 2017 WL 2436316, at *9 (N.D. Ill. June 5, 2017) (approving Prof. Richard Leo's false confession research methodology as "sound, accepted and reliable" and permitting him to testify on matters related to the reliability of the plaintiff's confession); *Caine v. Burge*, 2013 WL 1966381, at *3 (N. D. Ill. May 10, 2013) (denying the defense motion to bar Prof. Leo); *Kluppelberg v. Burge*, 2016 WL 6821138 (N.D. Ill. Sept. 16, 2016) (denying in substantial part a motion to bar Prof. Richard Ofshe, regarded by many as the father of this area of study); *Scott v. City of Chicago*, 2010 WL 3034254 (N.D. Ill. Aug. 3, 2010) (same); *Taylor v. City of Chicago*, No. 14-cv-00737 (N.D. Ill. Dec. 21, 2021) (unpublished order approving Richard Leo's proposed testimony) (copy attached as Ex. C); *Washington v. Boudreau*, 2022 WL 4599708, at *12 (N.D. Ill. Sept. 30, 2022) ("In line with other courts in this District that have confronted similarly qualified experts, the Court finds [Dr. Melissa] Russano's false-confession testimony reliable.").

And Defendants neglect to mention multiple decisions from outside this district to the same effect. *See, e.g.*, *Hurt v. Vantlin*, 2019 WL 8267074, at *5 (S.D. Ind. Sept. 26, 2019) (admitting false confessions expert); *United States v. Hayat*, 2017 WL 6728639, at *10–11 (E.D. Cal. Dec. 27, 2017) (admitting Dr. Leo's testimony); *United States v. Whittle*, 2016 WL 4433685, at *2 (W.D. Kentucky Aug. 18, 2016) (admitting false confessions expert); *Livers v. Schenck*, 2013 WL 5676881, at *5 (D. Neb. Oct. 18, 2013) (allowing Dr. Leo).

These authorities defeat Defendants' arguments that Dr. Cutler's opinions are unreliable and unhelpful.

**A. Dr. Cutler's Opinions Are Generally Accepted and Are Sufficiently Reliable to Pass Muster Under *Daubert*.**

Dr. Cutler's Report explains that various social science research methodologies converge as to the findings that false confessions do exist (Dr. Cutler explains that false confessions can be classified as voluntary, compliant and internalized (Ex. A at 9)) and that archival research, laboratory research and other methodologies have identified individual and situational risk factors for making a false confession (*id.* at 11-24).

The archival study of false confessions—*i.e.,* drawing conclusions about the practices and methodologies that produce false confessions from the study of past interrogations known to have produced a false confession—is a frequent subject of testimony in contested confession cases. Such testimony is approved in this Circuit. *See United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996). In the *Hall* case on remand from the Seventh Circuit's decision, the district court allowed testimony by Richard Ofshe (the leading false confessions expert), observing that "the study of false confessions generally involves the systematic observation of real-world interrogations. This is a method generally accepted as reliable by the community of social psychologists in this field." *United States v. Hall*, 974 F. Supp. 1198, 1204 (C.D. Ill. 1997). In *Harris v. City of Chicago*, Judge St. Eve held that expert testimony informed by this methodology is admissible because it is "sound, accepted and reliable." 2017 WL 2436316, at *9; *see also Caine*, 2013 WL 1966381, at *3 ("the field of police interrogation practices, psychological coercion, and false confessions is sufficiently developed in its methods to constitute a reliable body of specialized knowledge under Rule 702").

Defendants argue that the study of false confessions fails the *Daubert* test because it is not quantitative. They claim that students of false confessions like Dr. Cutler "cannot, with any degree of certainty, predict how any of the risk factors [researchers have identified] will

5

specifically impact an individual, predict the likelihood that any of the identified risk factors will produce a false confession, or determine whether a confession is true or false." Def. Mot. at 6. They contend that there is no known "error rate," *i.e.,* no ability to specify in percentage terms the enhanced risk of false confession caused by any particular coercive technique and no ability to define the share of false confessions in the total universe of confessions. *Id.* at 8.

This argument is a non-starter. It ignores the intrinsic nature of observational social science research like what Dr. Cutler will present. As the district court in *Hall* explained after the Seventh Circuit's remand:

> The primary method for analyzing and comparing real-world experiences is systemic observation and analysis ... [S]ocial scientists testify from a practical standpoint about the human behavior they observe. … [S]ocial scientists write scholarly articles about their observations which are subjected to peer review by others in their profession. The process of sharing one's findings with peers and having it critiqued by them may eventually lead to a common body of knowledge worthy of being called a "science," albeit not a "hard" science like physics.

*Hall*, 974 F. Supp. at 1203. *Accord Anderson*, 2020 WL 1848081, at *3 ("That false confessions cannot be calculated with the scientific certainty available in hard sciences does not mean that the study is unreliable."); *Kluppelberg*, 2016 WL 6821138, at *4 ("Defendants' specific arguments—that since Ofshe did not include non-coerced confessions in his study he cannot opine on the rate of coerced confessions or that there is a causal link between certain police tactics and false confessions—merely identified limitations of Ofshe's methodology, not that it is unreliable."); *Harris*, 2017 WL 2436316, at *9 (rejecting arguments like those Defendants advance here and noting that "Defendants have not established that Dr. Leo's methodology is unreliable from the perspective of social science.").

As the cited cases make clear, Defendants will have the ability to cross examine Dr. Cutler about the quantitative limitations of false confessions research in the social sciences.

6

*Andersen*, 2020 WL 1848081, at *3 ("Defendants will be permitted to point out the limits of false-confessions research upon cross-examination and to argue that the same risk factors that may indicate a false confession could also apply to a true confession."). *Daubert* itself points out that "vigorous cross examination" along with the presentation of counter evidence is the traditional method for combatting an expert's opinion. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993). Defendants have, in short, identified an avenue for cross examination of Dr. Cutler, not a basis to bar his testimony.

*Hall* describes a process of peer review and refinement through which social science research is regulated and advanced. This is exactly what has occurred in the field of false confessions research, both before and after the Seventh Circuit and district court decisions in *Hall.* Dr. Cutler's Report explains that the "knowledge base on interrogations and false confessions is informed by decades of foundational psychological research." Ex. A at 3. Theorizing about false confessions dates to a seminal 1908 article by Hugo Munsterberg entitled "Untrue Confessions." *Id*. There is a literature on the topic of false confessions that is "substantial in volume and has grown exponentially since the early 1990s." *See id.* at 4 (citing some of the publications by leading scholars). Dr. Cutler's opinions regarding false confessions and their causes are meticulously supported by citations to the peer-reviewed findings of leading researchers in the field. *See generally id.* at 3-28.

False confessions research led to a 2009 Scientific Review Paper of the American Psychology-Law Society, only the second such paper to be authorized and approved by that Society in its then 42-year history, which advocated for the videotaping of police interrogations in light of research findings about the prevalence and causes of false confessions. *See* Saul M. Kassin, et al., *Police-Induced Confessions: Risk Factors and Recommendations,* 34 LAW HUM.

7

BEHAV. 3 (2010) (Ex. D). A subsequent paper by Dr. Kassin surveyed a diverse group of 87 false confessions researchers and found general agreement as to the risk factors for false confession, suggesting that this area of study is well-established as an area of expertise within the social sciences. *See generally* Saul M. Kassin, et al., *On the General Acceptance of Confessions Research: Opinions of the Scientific Community*, 73 AM. PSYCHOLOGIST 63 (2018), Ex. E (the high rate of agreement among 87 surveyed experts on the psychology of false confessions as to 30 propositions, indicates that those propositions "are sufficiently reliable to present in court").[1] As the Seventh Circuit observed in *Hall*, the process of peer review and intellectual rigor has fostered the development of "a common body of knowledge worthy of being called a 'science.'" *Hall*, 974 F. Supp. at 1203.

Finally, Defendants challenge Dr. Cutler because he does not claim the ability to opine as to whether Plaintiff's confession is true or false. They cite out-of-circuit district court decisions that barred false confessions experts based on their inability to say whether the confession in issue was true. *See United States v. Rodriguez-Soriano,* 2017 WL 6375970, at *2 (E.D. Va. Dec. 11, 2017) ("Dr. Cutler acknowledged that he would be unable to offer an opinion as to whether … [the] confession was false"); *United States v. Deuman,* 892 F. Supp. 2d 881, 886-87 (W.D. Mich. 2023) ("there is no reliable means at this point in time of predicting or determining with any degree of certainty … whether a particular confession or incriminating statement is true").

This reasoning is misguided and out of step with judicial views in this circuit. Dr. Cutler was not present in Amundson Park on the night before police found the body of Paris Jackson

---

[1] Defendants cite and rely heavily on a District of Colorado decision that claims that scientific agreement is somehow an indication of "group think" or what that court calls "an echo-chamber effect." *Austin v. Brown,* 2024 WL 1602968, *23 (D. Colo. Feb. 22, 2024). This reasoning, attacking the intellectual independence of the 87 surveyed researchers without basis in fact, is not reconcilable with the controlling authority in this circuit.

and, of course, Dr. Cutler does not have access to the interior of Plaintiff's mind. It would be entirely improper for Dr. Cutler to purport to opine on whether Plaintiff's tentative confession was "truthful." Any such opinion would violate the principle that "an expert cannot testify as to credibility issues." *Goodwin v. MTD Prods.*, 232 F.3d 600, 609 (7th Cir. 2000). Far from undermining the reliability of Dr. Cutler's report and findings, though, Dr. Cutler's unwillingness to state whether Plaintiff's confession was false underscores the reliability of Dr. Cutler's opinions. *Cf. Hall*, 974 F. Supp. at 1205 (opining that Dr. Ofshe's "restraint" in declining to weigh on the ultimate truthfulness or falsity of the confession in issue "increases the reliability of Dr. Ofshe's testimony").

In short, Dr. Cutler's opinions are grounded in decades of peer-reviewed research and this court should therefore hold, adhering to the many decisions within this Circuit, that the opinions are sufficiently reliable to be presented to the jury.

### B. Dr. Cutler's Opinions Will Be Helpful to the Jury.

Defendants argue that, because Dr. Cutler cannot testify as to whether Plaintiff's confession was false, his opinions concerning the phenomenon and causes of false confessions would be unhelpful to the jury. *See* Def. Mot. at 8 (Dr. Cutler's "testimony and opinions are incredibly limited and fall within topics already understood by the jury"). This argument as well is foreclosed by *Hall* and cases within this district that follow *Hall.*

In the *Hall* case, the government made an argument identical to the one Defendants advance here. The Seventh Circuit rejected the idea that false confession research is within the knowledge of jurors and held that the district court's decision to bar Richard Ofshe "overlooked the utility of valid social science." *Hall*, 93 F.3d at 1345. The court went on to explain:

> Even though the jury may have had beliefs about the subject, the question is whether those beliefs were correct. Properly conducted social science research

9

> often shows that commonly held beliefs are in error. Dr. Ofshe's testimony, assuming its scientific validity, would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried.

*Id.*

Judges in this district have adhered to this analysis many times. *See, e.g., Andersen*, 2020 WL 184808,1 at *4 (false confessions expert permitted to testify that "false confessions happen and explain the risk factors that can lead to a false confession;" the testimony "will assist the jury"); *Harris*, 2017 WL 2436316, at *16 (testimony of a false confessions expert "will be helpful to explain why false confessions happen and how to recognize false confessions, thus allowing the jury to use this framework to apply to the facts of this case"); *Caine*, 2013 WL 1966381, at *2 ("Although jurors' common sense may suggest to them that someone would never falsely confess to committing murder, Dr. Leo's testimony will educate jurors that false confessions sometimes do occur. As a result, the Court believes it will be helpful for the jury to hear expert testimony on this issue.").

Like the experts in the above-cited cases, Dr. Cutler will be able to inform the jury about commonalities between the interrogation of Plaintiff and interrogations of persons known to have confessed falsely. He will identify for the jury's benefit specific tactics that Defendants employed during Plaintiff's interrogation that were found to have pressured innocent persons to confess in known false confessions cases. This testimony will not "invade the jury's province" (Def. Mot. at 10) any more than it would be "unhelpful;" instead Dr. Cutler's testimony will provide the jury with a useful "framework" to make their own evaluation of evidence in this case. *Harris*, 2017 WL 2436316, at *16.

Defendants will be free to cross-examine Dr. Cutler and thereby show the jury the limits on what false confessions research can say about Plaintiff's specific interrogation: *i.e.,* that,

10

while certain situational and personal risk factors exist for making a false confession and while some of those factors are presented in Plaintiff's case, no competent scientist could opine on whether specific factors in Plaintiff's interrogation caused him to confess falsely. Thus, the jury's province will be left intact; they alone will decide whether Plaintiff's Fifth Amendment rights were violated such that he confessed involuntarily to a crime he did not commit. But, in reaching that decision, the jury will have the benefit of research not within the ken of most lay persons that helpfully frames and bears on the issue. This is a classic and proper role of expert testimony.

## II. ALL OF DR. CUTLER'S OPINIONS ARE ADMISSIBLE AND SHOULD BE ALLOWED.

Defendants contend in the alternative that, even if Dr. Cutler is permitted to testify to the findings of false confessions research and the application of that research to Plaintiff's interrogation, Dr. Cutler's testimony should be limited in three specific respects: (1) he should be barred from referring to situational and personal risk factors for false confession that were not present in Plaintiff's interrogation; (2) he should be barred from saying that Plaintiff's interrogation was "coercive;" and (3) he should be barred from saying that Defendant-interrogators "contaminated" Plaintiff's confession. All three arguments should be rejected.

### A. Dr. Cutler Should Be Permitted to Educate the Jury As To the Situational and Personal Risk Factors for False Confession, Without Limitation.

As Dr. Cutler's Report explains, researchers have identified personal risk factors for false confession (*e.g.,* youth, intellectual disability, mental illness). They have identified situational risk factors for false confession (*e.g.,* prolonged interrogation in isolation, threats, physical violence, use of minimization techniques, offers of leniency). Some personal and situational risk factors exist in Plaintiff's interrogation. Others do not. For example, Plaintiff is not mentally ill and he was not subjected to physical violence. Defendants want Dr. Cutler to be barred from

11

mentioning any risk factors for false confession that were not present during Plaintiff's interrogation.

This request is meritless. As the many authorities cited in the preceding section establish, one proper purpose of false confession expert testimony is to educate the jury about the phenomenon of false confessions and how they occur. *E.g., Hall*, 93 F.3d 1345 (testimony by a false confessions expert would "let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried"). Dr. Cutler's role is not to be Plaintiff's advocate. Rather, the purpose of his testimony is to educate the jury about false confessions and how to decide whether the documented instances of false confession "fit the facts" of Plaintiff's interrogation. Dr. Cutler cannot perform that function if he is barred from mentioning any aspects of the research that do not specifically apply to Plaintiff's interrogation. Defendants cite no authority for limiting false confession testimony in the manner they suggest. The argument is foreclosed by *Hall* and the many other cases that define the proper scope of expert false confessions testimony.

Beyond that, this argument is self-defeating. Presumably, Defendants would want to cross examine Dr. Cutler by pointing to known risk factors for false confession that were not present in Plaintiff's interrogation. Any such cross examination would open the door to precisely the testimony that they are seeking to exclude.

Dr. Cutler should be allowed to educate the jury as to the risk factors for false confession as detailed in his report and without limitation.

### B. Dr. Cutler Should Be Permitted to Tell the Jury that Plaintiff Was Subjected to a Coercive Interrogation.

Defendants seek to bar Dr. Cutler from testifying that Plaintiff was subjected to a "coercive" interrogation. This argument must also be rejected.

Dr. Cutler makes clear in his report that he uses the terms "coerce" and "coercion" in the way that psychologists use the term. His report sets forth the psychological definition of coercion:

> Coercion in police interrogation consists of the use of persuasive techniques that limit the suspect's autonomy by manipulating the perceived costs and benefits of possible courses of action and/or depleting the suspect's motivation or ability to resist acceding to the investigator's demands.

Ex. A at 11. This is different than the use of the same term in law. As Dr. Cutler acknowledged in his deposition, an interrogation may well be coercive in the psychological sense but still be deemed "voluntary" and not in violation of the Fifth Amendment. *See* Cutler March 1, 2023 Dep. Excerpt (Ex. F) at 129. Thus, it cannot be said that Dr. Cutler's description of Plaintiff's interrogation as "highly coercive" (*see* Ex. A at 2) invades the province of the jury. Dr. Cutler will make clear that he uses the term in a different, non-legal sense and will readily admit that he is not qualified to opine as to the legal determination the jury will be charged with making. The Court can also instruct the jury as to the distinction.

If the Court nonetheless believes that it would be confusing for Dr. Cutler to use the term "coercive" in his testimony, Dr. Cutler can simply refer to the definition quoted above, telling the jury that Defendants used persuasive techniques that limited Plaintiff's autonomy by manipulating the perceived costs and benefits of possible courses of action and/or depleting Plaintiff's motivation or ability to resist acceding to Defendants' demands—but not describing this process as "coercive." That approach would allow Dr. Cutler to fully describe his opinions, while not risking the confusion that might be engendered by the use of a term that also has a legal meaning.

      **C.**      **Dr. Cutler Should Be Permitted to Tell the Jury that Plaintiff's Confession Was Influenced by a "High Level of Contamination."**

Dr. Cutler's report includes a section in which he describes the process of "contamination" that influenced Plaintiff's confession. *See* Ex. A at 40-44. Contamination occurs when interrogators provide the interrogation suspect with information that the suspect then uses in his confession statement. The result is that it becomes impossible to judge whether the information in the confession originated from the suspect or from the questioning leading up to the confession. That happened in Plaintiff's interrogation, as Dr. Cutler's report describes: the specifics of Plaintiff's tentative "confession" mimicked suggestions about the facts that Defendants had earlier offered Plaintiff during the interrogation.

Defendants argue that Dr. Cutler should not be permitted to explain the problem of contamination to the jury, *i.e.,* telling them that contamination limits the ability of researchers to identify inculpatory information that can uniquely be attributed to the subject. Defendants argue that testimony about contamination "concerns the reliability or credibility of [Plaintff's] confession and, therefore, should not be permitted." Def. Mot. at 14.

This argument is mistaken. Dr. Cutler's testimony does not go to whether Plaintiff's confession is or is not "credible." Rather, Dr. Cutler's point, as his Report makes clear, is that contamination *limits the ability to assess* whether Plaintiff's confession should be regarded as truthful. If interrogators contaminate the subject with information they have (or believe) about the crime and the subject later regurgitates that information in a confession, it cannot be determined whether the subject's use of the information in his confession is an indication of guilt. It may or may not be. In other words, Dr. Cutler's testimony about contamination will make the point that there is a difficulty assessing the reliability of the confession, not that the

14

confession is or is not reliable. Defendants offer no legitimate basis for barring this testimony.

## CONCLUSION

For the foregoing reasons, Defendants' motion to bar Dr. Cutler's opinions should be denied in its entirety.

                                                Respectfully submitted,

                                                **MARCEL BROWN**

                                                By: /s/ Locke E. Bowman
                                                     One of his attorneys

Locke E. Bowman
LOEVY + LOEVY
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
773 710 0158

Vanessa del Valle
Jonathan Manes
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
312 503 1336

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 28, 2024, he served the foregoing document upon all counsel who have filed appearances in this action via the Court's CM/ECF which automatically sent copies to all such counsel.

/s/ Locke E. Bowman