**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**MARCEL BROWN,**

               Plaintiff,

     v.

**CITY OF CHICAGO;** Chicago Police
Detectives **MICHAEL MANCUSO,
GERI YANOW,** Personal Representative of the
Estate of **KEVIN McDONALD,
GARRICK TURNER, RUBIN WEBER,** and
**WILLIAM BURKE,**

            Defendants.

**No. 19-cv-4082**

**The Honorable Lindsay C. Jenkins**

<u>**DEFENDANT OFFICERS' CORRECTED OMNIBUS MOTION *IN LIMINE*[1]**</u>

---

[1] The only correction to this version of Defendant Officers' Omnibus Motion *in Limine* is the addition of a Table of Contents and Table of Authorities.

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

LEGAL STANDARD..................................................................................................... 1

DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO BAR TESTIMONY OR EVIDENCE
RELATING TO STEPHEN "WHAM" CARY ........................................................... 2

    BACKGROUND ......................................................................................................... 3

    ARGUMENT .............................................................................................................. 5

        I.    Evidence Relating to Cary is Irrelevant Because it Cannot Help Prove Any Element
of Plaintiff's Claims............................................................................................ 5

            A.    Allegations that police deceived Cary and failed to inform Plaintiff of Cary's
presence cannot amount to a constitutional violation. ..................................... 6

            B.    Cary's alleged interaction with police cannot help prove any other element of
Plaintiff's claims. ............................................................................................ 9

        II.    Even if Deemed Relevant, Evidence Relating to Cary Should be Barred Because it is
Unfairly Prejudicial, Will Confuse the Jury, Distract from the Real Issues, and Will
Waste Trial Time. ............................................................................................ 11

DEFENDANTS' MOTION IN LIMINE NO. 2 TO BAR REFERENCE  TO OTHER
LAWSUITS, COMPLAINT REGISTER ("CR") FILES, OR OTHER DISCIPLINARY
HISTORY EVENTS .................................................................................................. 14

    ARGUMENT ............................................................................................................ 14

DEFENDANTS' MOTION IN LIMINE NO. 3 TO BAR TESTIMONY OR EVIDENCE
RELATING TO VIOLATIONS OF THE CHICAGO POLICE DEPARTMENT'S
INTERNAL RULES, REGULATIONS, ORDERS, POLICIES, AND PROCEDURES ....... 18

    ARGUMENT ............................................................................................................ 19

DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO BAR EVIDENCE OR ARGUMENT
RELATING TO THE THOROUGHNESS OF DEFENDANT OFFICERS'
INVESTIGATION OF THE HOMICIDE OF PARIS JACKSON ......................................... 21

    ARGUMENT ............................................................................................................ 22

DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO BAR HANDWRITTEN LETTER
PURPORTEDLY WRITTEN BY PARIS JACKSON ............................................................. 24

    ARGUMENT ............................................................................................................ 24

I.  The Letter Is Irrelevant. ....................................................................................... 25

II.  The Letter Is Inadmissible Hearsay. .................................................................... 26

III.  The Letter is Unfairly Prejudicial and Has No Probative Value. ......................... 27

DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO BAR OEMC CALL AND DOCUMENT
REGARDING PURPORTED CALLS MADE TO OEMC ON AUGUST 30, 2008 ............. 27

    BACKGROUND ................................................................................................. 28

    ARGUMENT ....................................................................................................... 29

    I.  The August 31, 2008 OEMC Call and the Purported "Event History Table" Are
    Hearsay, and Plaintiff Cannot Authenticate or Lay A Proper Foundation For The "Event
    History Table" Document. ............................................................................... 29

    II.  Both Pieces of Evidence Are Irrelevant. ................................................. 31

    III.  Both Pieces of Evidence Should Be Barred Under Rule 403. .............................. 33

DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO BAR TESTIMONY OR EVIDENCE
RELATING TO A GENERAL "CODE OF SILENCE" OR "BLUE WALL" ......................... 33

    ARGUMENT ....................................................................................................... 34

DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO BAR EVIDENCE OR ARGUMENT
RELATING TO "STREET FILES" ......................................................................... 36

DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO BAR ARGUMENT THAT PLAINTIFF IS
ENTITLED TO RECOVER FOR TIME SPENT IN PRETRIAL DETAINMENT AND TO
BAR ARGUMENT THAT PLAINTIFF WAS WRONGFULLY INCARCERATED FOR
MORE THAN 7.5 YEARS ...................................................................................... 37

    ARGUMENT ....................................................................................................... 38

DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO BAR ARGUMENT OR EVIDENCE
SUGGESTING THAT DEFENDANT OFFICERS LACKED PROBABLE CAUSE ........... 40

    ARGUMENT ....................................................................................................... 41

DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO BAR TESTIMONY OR EVIDENCE
RELATING TO MARISOL O'CAMPO'S PRIOR DRUG USE OR EMPLOYMENT
HISTORY ........................................................................................................... 42

    ARGUMENT ....................................................................................................... 42

    I.  O'Campo's Prior Drug Use ....................................................................... 42

II.    O'Campo's Employment History .............................................................. 45

DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO BAR MENTION OF OR
QUESTIONING ABOUT CERTAIN TOPICS RELATED TO WILLIAM MARSH'S
BACKGROUND ................................................................................................... 46

   ARGUMENT ..................................................................................................... 46

    I.    Prior Lawsuits, Civil Claims, or Incidents Involving Mr. Marsh ......................... 46

    II.    General Allegations of LASD Misconduct ............................................. 48

    III.    Personal Opinions of Michael Bumcrot ................................................. 48

    IV.    United Arab Emirates ........................................................................... 49

DEFENDANTS' MOTION *IN LIMINE* NO. 13 TO BAR STATEMENTS MADE BY
JUDGE GAINER AND TO BAR EVIDENCE RELATING TO THE DETAILS OF
PLAINTIFF'S POSTCONVICTION PROCEEDINGS, INCLUDING HOW OR WHY
PLAINTIFF'S POSTCONVICTION RELIEF WAS GRANTED ........................................... 50

   ARGUMENT ..................................................................................................... 51

    I.    Judge Gainer's Statements ..................................................................... 51

    II.    Plaintiff's Postconviction Proceedings ................................................... 55

     A.    Evidence relating to Plaintiff's Postconviction proceedings Is irrelevant because it
cannot help prove any element of Plaintiff's claims .......................................... 56

      a.    Evidence concerning Plaintiff's postconviction proceeding, which concerns a
violation of rights under the Illinois Constitution, has no bearing on whether
Plaintiff's rights under the U.S. Constitution were violated .......................... 56

      b.    Evidence concerning Plaintiff's postconviction proceeding cannot help prove
any other element of Plaintiff's claims. ....................................................... 59

     B.    Even if deemed relevant, evidence relating to Plaintiff's postconviction
proceedings should be barred because it is unfairly prejudicial, will confuse the jury,
distract from the real issues, and will waste trial time .......................................... 61

DEFENDANTS' MOTION *IN LIMINE* NO. 14 TO BAR UNDISCLOSED THEORIES OF
LIABILITY ........................................................................................................... 64

   ARGUMENT ..................................................................................................... 64

DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO BAR REFERENCE TO PLAINTIFF'S
CERTIFICATE OF INNOCENCE ............................................................................. 67

ARGUMENT ........................................................................................... 67

    I.      The COI Has No Relevance to Plaintiff's Remaining Claims............................. 68

    II.     The COI is Inadmissible Hearsay. ......................................................... 69

    III.    Introduction of the COI Into Evidence Also Poses a Risk of Unfair Prejudice that Greatly Outweighs Any Possible Probative Value. .......................................... 73

    IV.    Introduction of the COI Would Lead to a Mini-Trial. ......................................... 76

DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO BAR PLAINTIFF'S EXPERT MATTHEW JONES FROM OFFERING UNDISCLOSED OPINIONS REGARDING THE PARIS JACKSON HOMICIDE INVESTIGATION .............................................. 77

    ARGUMENT ........................................................................................... 78

DEFENDANTS' MOTION *IN LIMINE* NO. 17 TO BAR EVIDENCE OR ARGUMENT REGARDING THE PASSAGE OF TIME BETWEEN THE PARIS JACKSON MURDER AND CRIMINAL TRIAL AND CONVICTION.......................................................... 80

    ARGUMENT ........................................................................................... 80

CONCLUSION......................................................................................... 81

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Abu-Shawish v. United States*,
   898 F.3d 726 (7th Cir. 2018) .......................................................................................68

*Aguilar v. Dixon*,
   No. 93 C 1936, 1995 WL 319621 (N.D. Ill. 1995)....................................................17

*Akbar v City of Chicago*,
   06 C 3685, 2009 WL 3335364 (N.D. Ill. Oct. 14, 2009).........................................17

*Aldridge v. Forest River, Inc.*,
   635 F.3d 870 (7th Cir. 2011) ................................................................................64, 65

*Andersen v. City of Chicago*,
   No. 16-cv-1963, Dkt. 703 (N.D. Ill. Nov. 17, 2020) ...............................................36

*Armstrong v. Squadrito*,
   152 F.3d 564 (7th Cir. 1998) ...............................................................................9, 59

*Arturo DeLeon-Reyes v. Reynaldo Guevara, et al.*,
   Case No. 18-cv-1028 (N.D. Ill.) ................................................................................74

*Ayoubi v. Smith*,
   2018 WL 11222660 (N.D. Ill. May 2, 2018) ...........................................................20

*Bahena v. Kennedy*,
   2021 WL 8153974 (N.D. Ill. Oct. 25, 2021).............................................................20

*Bartos v. Pennsylvania, Dep't of Env't Prot.*,
   No. 1:08-CV-00366, 2012 WL 1246782 (M.D. Pa. Apr. 13, 2012)..................12, 63

*Bethany Pharm. Co. v. QVC, Inc.*,
   241 F.3d 854 (7th Cir. 2001) .....................................................................................65

*Bewley v. Turpin*,
   2022 WL 2317426 (S.D. Ind. June 27, 2022) ..........................................................72

*Brinson v. Eagle Express Lines, Inc.*,
   No. 18 CV 3733, 2023 WL 6312400 (N.D. Ill. Sep. 28, 2023)..................................6

*Brown v. City of Chicago*,
   2023 WL 2640317 (N.D. Ill. 2023) ..............................................................19, 20, 21

*Bruce v. City of Chicago*,
   2011 WL 3471074 (N.D. Ill. July 29, 2011)..............................................................19

*Burbach Aquatics, Inc. v. City of Elgin, Ill.*,
  2011 WL 148394 (N.D. Ill. 2011) ........................................................71

*C.f. Wrice v. Byrne*,
  488 F. Supp. 3d 646 (N.D. Ill. 2020) ..................................................40

*In re C2R Global Mfg., Inc.*,
  2021 WL 1346047 (Bankr. D. Wis. Mar. 30, 2021) .............................66

*Caldwell v. City of Chicago*,
  No. 08 C 3067, 2010 WL 380696 (N.D. Ill. Jan. 28, 2010) ...........35, 48

*Camm v. Faith*,
  937 F.3d 1096 (7th Cir. 2019) .............................................................39

*Cazares v. Frugoli*,
  No. 13 CV 5626, 2017 WL 4150719 (N.D. Ill. Sept. 19, 2017)...........47

*Chavez v. City of Albuquerque*,
  402 F.3d 1039 (10th Cir. 2005) ...........................................................16

*Client Funding Sols. Corp. v. Crim*,
  943 F. Supp. 2d 849 (N.D. Ill. 2013) ..................................................65

*Collins v. Univ. Park*,
  2018 WL 11193174 (N.D. Ill. Sept. 25, 2018) ....................................45

*Colyer v. City of Chi.*,
  2014 WL 8796112 (N.D. Ill. 2014) (Chang, J.)..............................25, 32

*Cooney v. Casady*,
  735 F.3d 514 (7th Cir. 2013) ...................................................10, 60, 61

*Crest Hill Land Dev., LLC v. City of Joliet*,
  396 F.3d 801 (7th Cir. 2005) ...............................................................64

*David v. Vill. of Oak Lawn*,
  954 F. Supp. 1241 (N.D. Ill. 1996) .................................................25, 32

*Davis v. Owens*,
  973 F.2d 574 (7th Cir. 1992) ...............................................................22

*Delgado v. Mak*,
  No. 06 C 3757, 2008 WL 4367458 (N.D. Ill. 2008)............................16

*Dollard v. Whisenand*,
  946 F.3d 342 (7th Cir. 2019) ...............................................................35

*Dunkley v. Illinois Dep't of Human Servs.*,
  2022 WL 4132462 (N.D. Ill. Sept. 12, 2022) ........................................................41

*Empire Bucket, Inc. v. Contractors Cargo Co.*,
  739 F.3d 1068 (7th Cir. 2014) .................................................................................1

*Fairley v. Andrews*,
  423 F. Supp. 2d 800 (N.D. Ill. 2006) .....................................................................71

*Falk v. Clarke*,
  No. 88 C 7293, 1990 WL 43581 (N.D. Ill. Apr. 3, 1990)......................................18

*Fields v. City of Chicago*,
  2014 WL 12778835 (N.D. Ill. Apr. 29, 2014) .......................................................69

*Fields v. City of Chicago*,
  No. 12 C 1306, 2018 WL 1652093 (N.D. Ill. Apr. 5, 2018)...................................81

*First Def. Legal Aid v. City of Chi.*,
  319 F.3d 967 (7th Cir. 2003) .............................................................................6, 56

*Fisher v. Krajewski*,
  873 F.2d 1057 (7th Cir. 1989) ....................................................................52, 54, 71

*Fox-Martin v. Cnty. of Cook*,
  No. 09 C 1690, 2010 WL 4136174 (N.D. Ill. Oct. 18, 2010)................................48

*Gadison v. McGuire*,
  09 C 0001, 2010 WL 346143 (N.D. Ill. Jan. 22, 2010) .........................................18

*General Citrus Int'l v. Remien*,
  2009 WL 2486164 (N.D. Ill. Aug. 10, 2009) ........................................................41

*Glanz v. Illinois*,
  No. 15 C 6337, 2018 WL 11195497 (N.D. Ill. Mar. 15, 2018) .............................81

*Gomez v. City of Chi.*,
  No. 13-C-05303, 2015 WL 1361138 (N.D. Ill. June 29, 2015)..............................35

*Gomez v. City of Chicago*,
  2015 WL 13651138 (N.D. Ill. June 29, 2015) .......................................................20

*Gonzalez v. City of Elgin*,
  2010 WL 3271272 (N.D. Ill. 2010) .......................................................................18

*Gray v. City of Chicago*,
  2023 WL 7092992 (N.D. Ill. May 8, 2023) ......................................................74, 75

*Green v. Cty. of L.A.*,
No. 2:12-cv-06007-CAS(CWx), 2014 U.S. Dist. LEXIS 85939
(C.D. Cal. June 19, 2014) ..................................................................................48

*Greycas, Inc. v. Proud*,
826 F.2d 1560 (7th Cir. 1987) .........................................................................70

*Heflin v. City of Chicago*,
No. 95 C 1900, 1996 WL 28238 (N.D. Ill. 1996)..............................................17

*Henriquez v. City of Los Angeles*,
2012 WL 13226590 (C.D. Cal. July 12, 2012).................................................53

*Hill v. City of Chicago*,
No. 06 C 6772, 2011 WL 3205304 (N.D. Ill. July 28, 2011) ...........................35

*Hill v. United States*,
No. 00 C 4828, 2001 WL 185474 (N.D. Ill. Feb. 26, 2001).................................7

*Hillard v. City of Chicago*,
2010 WL 1664941 (N.D. Ill. Apr. 23, 2010) (Conlon, J.) ...............................69

*Holder v. Interlake S.S. Co.*,
No. 16-cv-343-wmc, 2018 WL 1725694 (W.D. Wis. Apr. 10, 2018)...........12, 63

*Holmes v. City of Chicago*,
No. 09-CV-2481, 2016 WL 6442117 (N.D. Ill. Nov. 1, 2016) ....................12, 63

*Holt v. Lewsader*,
No. 18-cv-2169, 2021 WL 4094996 (C.D. Ill., Apr. 18, 2021)........................35

*Huddleston v. U.S.*,
485 U.S. 681 (1988)..........................................................................................15

*Hyatt v. Branker*,
569 F.3d 162 (4th Cir. 2009) ........................................................................8, 57

*Jonasson v. Lutheran Child & Family Servs.*,
115 F.3d 436 (7th Cir. 1997) .............................................................................1

*Jones v. City of Chicago*,
856 F.2d 985 (7th Cir. 1988) ............................................................................37

*Jones v. City of Chicago*,
No. 14-CV-4023, 2017 WL 413613 (N.D. Ill. Jan. 31, 2017)..........................26

*Jones v. Hamelman*,
869 F.2d 1023 (7th Cir. 1989) .....................................................................17, 37

*Jones v. Walters*,
No. 12-cv-5283, 2016 WL 1756908 (N.D. Ill. Apr. 29, 2016)..............................................35

*Jordan v. Binns*,
712 F.3d 1123 (7th Cir. 2013) ......................................................................................29, 31

*Kalra v. Adler Pollock & Sheehan, P.C.*,
2023 WL 363043 (D. Conn. Jan. 23, 2023)..........................................................................41

*Karum Holdings LLC v. Lowe's Companies, Inc.*,
895 F.3d 944 (7th Cir. 2018) ...............................................................................................79

*Estate of Keys v. City of Harvey*,
No. 92 C 2177, 1996 WL 34422 (N.D. Ill. 1996)................................................................17

*Lawrence v. Williams*,
No. 14 C 2777, 2016 WL 930629 (N.D. Ill. Mar. 11, 2016) ..................................................7

*Lewis v. City of Chicago*,
914 F.3d 472 (7th Cir. 2019) ...............................................................................................39

*Life Spine, Inc. v. Aegis Spine, Inc.*,
2023 WL 7919579 (N.D. Ill. 2023) ......................................................................................41

*Luce v. United States*,
469 U.S. 38, 105 S. Ct. 460 (1984).........................................................................................1

*Lyles v. Gambino*,
2019 WL 5654227 (N.D. Ill. Oct. 31, 2019)........................................................................43

*Manuel v. City of Chi.*,
335 F.3d 592 (7th Cir. 2003) ..........................................................................................13, 62

*Manuel v. City of Joliet*,
580 U.S. 357 (2017)...............................................................................................................39

*Martinez v. City of Chicago*,
No. 14-cv-369, 2016 WL 3538823 (N.D. Ill. June 29, 2016)...............................................35

*Mason v. City of Chicago*,
631 F. Supp. 2d 1052 (N.D. Ill. 2009) ...........................................................................43, 44

*Mathis v. Phillips Chevrolet, Inc.*,
269 F.3d 771 (7th Cir. 2001) ...............................................................................................16

*Matney v. Armontrout*,
956 F.2d 824 (8th Cir. 1992) ...............................................................................8, 9, 58, 59

*McWilliams v. City of Chicago*,
451 F. Supp. 3d 867 (N.D. Ill. 2020),
*aff'd*, No. 20-1770, 2022 WL 135428 (7th Cir. Jan. 14, 2022) ............................................. 40

*Mendez v. Kreissler*,
No. 09 C 2276, 2011 WL 5869788 (C.D. Ill. 2011) ................................................................ 16

*Middleton v. Murphy*,
91-C-0751-C, 1992 WL 601890 (W.D. Wis. Jan. 27, 1992) .................................................... 7

*Moore v. City of Chicago*,
No. 02 C 5130, 2008 WL 4549137 (N.D. Ill. 2008) ................................................................ 17

*Moran v. Burbine*,
475 U.S. 412, 106 S. Ct. 1135 (1986) ............................................................................ *passim*

*Moran v. Calumet City*,
54 F.4th 483 (7th Cir. 2022) ..................................................................... 9, 10, 59, 61

*Musser v. Gentiva Health Services*,
356 F.3d 751 (7th Cir. 2004) ................................................................................................ 79

*Nathson Fields v. City of Chicago*,
No. 10 C 1168, 2017 WL 3987356 (N.D. Ill. Sept. 11, 2017) ................................................ 77

*Next Payment Sols., Inc. v. Clearesult Consulting, Inc.*,
2023 WL 7196125 (N.D. Ill. Apr. 17, 2023) ................................................................. 64, 65

*Nipper v. Snipes*,
7 F.3d 415 (4th Cir. 1993) ..................................................................................................... 69

*Nugent v. Hayes*,
88 F. Supp. 2d 862 (N.D. Ill. 2000) ...................................................................................... 22

*Patrick v. City of Chicago*,
974 F.3d 824 (2020) ...................................................................................................... *passim*

*Patrick v. City of Chicago*,
No. 18-2759 (7th Cir. Oct. 15, 2020) .................................................................................... 70

*United States ex rel. Patzer v. Sikorsky Aircraft Corp.*,
2024 WL 1671447 (E.D. Wis. Apr. 18, 2024) ................................................................. 65, 66

*People v. Fields*,
959 N.E.2d 1162 (Ill. App. Ct. 2011) .................................................................................... 70

*People v. McCauley*,
645 N.E.2d 923 (Ill. 1994) .................................................................................................... 57

*People v. Washington*,
  2023 IL 127952 ................................................................................................70

*Perkins v. LeCureux*,
  58 F.3d 214 (6th Cir. 1995) ......................................................................52, 53

*Pryor v. Corrigan*,
  No. 17-CV-1968, 2023 WL 1100436 (N.D. Ill. Jan. 30, 2023) ...........................81

*Rivers v. Diaz*,
  2008 WL 89838 (M.D. Fla. Jan. 7, 2008) ..........................................................71

*Schertz v. Waupaca Cnty.*,
  875 F.2d 578 (7th Cir. 1989) .............................................................................22

*Schultz v. Thomas*,
  832 F.2d 108 (7th Cir. 1987) ............................................................52, 53, 54, 71

*Scott v. Wendy's Properties, LLC*,
  No. 20 CV 6829, 2024 WL 1768630 (N.D. Ill. Apr. 24, 2024) ...........................31

*Slagel v. Shell Oil Refinery*,
  811 F. Supp. 378 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) ............25, 32

*Slaven v. City of Chi.*,
  No. 95 C 7310, 1999 WL 1024563 (N.D. Ill. Nov. 1, 1999) ...............................47

*Stassen v. Vill. of Arlington Heights*,
  No. 00 C 1956, 2002 WL 485664 (N.D. Ill. Apr. 1, 2002) .............................11, 62

*Stewardson v. Cass Cnty.*,
  No. 3:18-cv-958 DRL, 2023 WL 2596730 (N.D. Ind. Mar. 22, 2023) ................36

*Stolarczyk v. Senator International Freight Forwarding, LLC*,
  376 F. Supp. 2d 834 (N.D. Ill. 2005) ................................................................72

*Swick v. Liautaud*,
  662 N.E.2d 1238 (Ill. 1996) ..............................................................................68

*Taylor v. City of Chicago*,
  09 C 5092, 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) ......................................70

*Thompson v. City of Chi.*,
  472 F.3d 444 (7th Cir. 2006) .......................................................12, 19, 20, 62

*Tinker v. Beasley*,
  429 F.3d 1324 (11th Cir. 2005) ..................................................................9, 58, 59

*Trustmark Ins. Co. v. Gen. Cologne Life Reinsurance of Am.*,
No. 00 C 1926, 2003 WL 21688229 (N.D. Ill. July 11, 2003) .................................................6

*U.S. v. Gomez*,
763 F.3d 845 (7th Cir. 2014) (*en banc*) ...........................................................................15

*U.S. v. Miller*,
688 F.3d 322 (7th Cir. 2012) ............................................................................................73

*U.S. v. Shriver*,
842 F.2d 968 (7th Cir. 1988) ............................................................................................15

*U.S. v. Zapata*,
871 F.2d 616 (7th Cir. 1989) ............................................................................................15

*United States v. Boros*,
668 F.3d 901 (7th Cir. 2012) .......................................................................................13, 63

*United States v. Brown*,
No. 18-CR-237, 2019 WL 1522064 (E.D. Wis. Apr. 8, 2019) ...........................................30

*United States v. Dish Network, L.L.C.*
(C.D. Ill. Dec. 7, 2015) ....................................................................................................42

*United States v. Fifer*,
No. 14-30006, 2015 WL 7004995 (C.D. Ill. Nov. 9, 2015),
*aff'd*, 863 F.3d 759 (7th Cir. 2017) ....................................................................................6

*United States v. Galati*,
230 F.3d 254 (7th Cir. 2000) ............................................................................................43

*United States v. Hamzeh*,
986 F.3d 1048 (7th Cir. 2021) ......................................................................................6, 56

*United States v. Hankey*,
203 F.3d 1160 (9th Cir. 2000) .............................................................................8, 9, 58, 59

*United States v. Jones*,
29 F.3d 1549 (11th Cir. 1994) ..........................................................................................69

*United States v. Lawson*,
810 F.3d 1032 (7th Cir. 2016) ..........................................................................................23

*United States v. Mojica*,
185 F.3d 780 (7th Cir. 1999) .......................................................................................43, 44

*United States v. Robinson*,
956 F.2d 1388 (7th Cir. 1992) .....................................................................................43, 44

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) ...........................................................................52, 55

*Vainder v. Powell*,
    No. 03 C 1509, 2004 WL 1660618 (N.D. Ill. July 26, 2004) ..................................7, 12, 57, 62

*Vance v. Chandler*,
    231 Ill. App. 3d 747, 597 N.E.2d 233 (Ill. Ct. App. 1992)..............................10, 60

*Waid v. Merrill Area Public Schools*,
    130 F.3d 1268 (7th Cir. 1997) ...........................................................................41

*Walker v. White*,
    No. 16 C 7024 (N.D. Ill.)....................................................................................71, 76

*Watson v. Fulton*,
    No. 1:15-cv-11559, 2022 WL 21296130 (N.D. Ill. Feb. 23, 2022)........................36

*Whitfield v. Int'l Truck & Engine Corp.*,
    755 F.3d 438 (7th Cir. 2014) .............................................................................1

*Williams v. City of Aurora*,
    2024 WL 1195515 (N.D. Ill. Mar. 20, 2024).......................................................41

*Williams v. Seniff*,
    342 F.3d 774 (7th Cir. 2003) .............................................................................11, 61

*Wilmington v. J.I. Case Co.*,
    793 F.2d 909 (8th Cir. 1986) .............................................................................53

*Zaken v. Kelly*,
    370 Fed.Appx. 982, 2010 WL 1253056 (11th Cir. 2010)....................................16

*Zucchella v. OlympUSA, et, Inc.*,
    2023 WL 9379193 (C.D. Cal. Dec. 6, 2023) ......................................................45

Defendants Michael Mancuso, Garrick Turner, Rubin Weber, William Burke, Geri Lynn Yanow, as special representative for Kevin McDonald ("Defendants" of "Defendant Officers"), by and through their undersigned counsel, move *in limine* to bar certain evidence from being introduced at trial.

## INTRODUCTION

In accordance with this Court's Standing Order regarding Pretrial Order requirements, the parties met and conferred to attempt to reach resolution on Motions *in Limine* for which there was no dispute. The Parties have agreed on some evidentiary issues and will prepare a stipulation memorializing their agreement to be entered at the final pretrial conference, per the Court's Standing Order.

With respect to each Motion *in Limine* presented below, Defendant Officers have met and conferred with Plaintiff, and Defendants believe that Plaintiff intends to offer the evidence or argument that Defendant Officers seek to bar.

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460 (1984). A motion *in limine* is an "important tool" which "sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Judges have wide discretion to make evidentiary rulings and manage the efficiency of trial." *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014); *see also Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 (7th Cir. 2014).

1

## DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO BAR
## TESTIMONY OR EVIDENCE RELATING TO STEPHEN "WHAM" CARY

Plaintiff Marcel Brown will attempt to introduce evidence at trial suggesting that unidentified members of the Chicago Police Department prevented an attorney, Stephen "Wham" Cary, from speaking with Plaintiff while he was being interviewed regarding the murder of Paris Jackson. Plaintiff should be barred from doing so. This alleged conduct—even if true—cannot amount to a violation of Plaintiff's constitutional rights. Also, Plaintiff has failed to gather evidence showing that Defendant Officers personally participated in or had any knowledge of Cary's alleged interaction with unidentified officers. As such, any evidence relating to Cary cannot prove any element of Plaintiff's claims and is therefore irrelevant and inadmissible. Fed. R. Evid. 401; Fed. R. Evid. 402.

Alternatively, even assuming the evidence was somehow relevant (it is not), any minimal probative value would be far outweighed by its unfair prejudicial effects. Fed. R. Evid. 403. For instance, permitting evidence relating to Cary creates the risk that the jury will wrongly attribute alleged conduct of unidentified officers to the Defendant Officers and will wrongly conflate rights under the U.S. Constitution (which will be at issue at trial) with rights under the Illinois constitution (which are not at issue). Also, permitting evidence relating to the alleged encounter with Cary would require hearing from as many as nine third-party witnesses, given the varying accounts of what happened, and would require testimony from Defendant Officers denying knowledge of Cary's alleged police interactions. At bottom, Cary's alleged encounter with police is a sideshow to what is actually at issue, and allowing this evidence will undoubtedly inflict unfair prejudice, waste time, and prolong the trial.

2

## **BACKGROUND**

In his Complaint, Plaintiff alleges that, while he was being interviewed at the police station in connection with the murder of Paris Jackson, "Defendant Officers refused to inform Plaintiff that a lawyer [Cary] was present seeking to meet with him and falsely told Mr. Cary and Plaintiff's family that Plaintiff did not want to meet with Mr. Cary." (2d Am. Compl., Dkt. 136, at ¶ 41.)

After years of discovery, Plaintiff has failed to gather any evidence proving that any Defendant Officer knew of Cary's alleged attempt to meet with Plaintiff or that Cary was supposedly denied access to Plaintiff. Rather, the record reflects the following:

During the afternoon of September 3, 2008, Plaintiff was taken to the Chicago police station located at 5555 West Grand Avenue ("Area 5") to be questioned about the murder of Paris Jackson. Some hours later, Cary arrived at Area 5 with Plaintiff's cousin, Renard Branch, Jr. ("RJ"). Police were looking for RJ after gathering evidence that RJ had fatally shot Paris Jackson, and Cary informed police officers that he was there to surrender RJ in connection with the Paris Jackson homicide investigation. (S. Cary Depo. Tr., attached as Ex. 1, at 69:17-71:11; D. Scott Depo. Tr., attached as Ex. 2, at 243:9-244:1; M. Mancuso Depo. Tr., attached as Ex. 3, at 411:23-412:19.) Police officers, including Defendant Officer Garrick Turner ("Turner"), Mirandized RJ and took him into custody. (Ex. 2 at 327:24-328:4; G. Turner Depo. Tr., attached as Ex. 4, at 139:12-140:11.)

Several members of Plaintiff's family accompanied Cary and RJ to Area 5.[2] The accounts of Cary and family members vary, but some of these witnesses have provided deposition testimony

---

[2] The following family members were present at Area 5 with Cary: RJ, Renard Branch, Sr., Terry Scott ("TJ"), Debra Scott (Plaintiff's mother), Sarah Scott (RJ's mother), Felicia Frazier (TJ's mother), Cierra Jackson, and Taneshia Branch Bell.

in this case that, during the process of RJ turning himself in, family members asked Cary to represent Plaintiff. (Ex. 1 at 70:13-24; Ex. 2 at 248:5-248:21, 255:21-256:11.)

According to Cary, after RJ was surrendered, Cary talked to uniformed officers and requested to see Plaintiff. (Ex. 1 at 70:13-72:4, 87:19-89:9, 97:12-100:10). The uniformed officers—who have never been identified—allegedly told Cary that Plaintiff did not want to speak with him but permitted Cary to go the second floor of Area 5. (*Id.*) Cary testified that, on the second floor, he spoke to a different officer and again requested to see Plaintiff. (*Id.*) Cary alleges that he was told again that Plaintiff did not want to speak with him, and Cary eventually left the police station. (*Id.*) When later testifying about these events, Cary could not identify or even describe the officers he spoke with and has also testified he did not remember any of Defendant Officers. (*Id.* at 88:5-89:3, 99:11-24, 103:11-105:7.)

Plaintiff's family members testified at their depositions in this case that they followed Cary to the second floor of Area 5, though Cary does not recall this occurring. (Ex. 1 at 102:1-7; Ex. 2 at 258:21-260:14; S. Scott Depo. Tr., attached as Ex. 5, at 196:18-197:14; C. Jackson Depo. Tr., attached as Ex. 6, at 248:1-249:16) The family members said unidentified officers on the second floor refused to let Cary meet with Plaintiff and eventually told the group to leave. (Ex. 2 at 260:1-262:11; Ex. 5 at 198:24-14; Ex. 6 at 256:14-22.) Like Cary, no family member identified any Defendant Officer as refusing to let Cary see Plaintiff or even being present during this encounter. (Ex. 2 at 261:16-264:7; Ex. 5 at 24:18-24; Ex. 6 at 250:20-23, 256:14-257:8; F. Frazier Depo. Tr., attached as Ex. 7, at 86:9-88:16.) In the course of this case, Plaintiff has not identified the officers on the second floor of Area 5 who allegedly interacted with Cary and Plaintiff's family members.

For his part, Plaintiff testified at his deposition in this case that he did not learn Cary was at Area 5 to allegedly represent him during his police interview until many years after his

conviction. (M. Brown Depo. Tr., attached as Ex. 8, at 567:3-568:22, 570:4-572:1.) Plaintiff included Cary's alleged experience at Area 5 as a basis to challenge his conviction. In June 2018, following an evidentiary hearing, the Circuit Court of Cook County entered an order vacating Plaintiff's conviction.

The only Defendant Officer who had any interaction with Cary on September 3, 2008 was Officer Turner, who testified that he encountered Cary briefly when RJ surrendered himself. (Ex. 4 at 139:12-140:11, 142:11-143:2). Critically, Turner testified that he recalls Cary stating he was only there to represent RJ; Cary never asked Turner, or any other officer in Turner's presence, if Cary could meet with Plaintiff. (*Id*. at 148:3-149:23). All other Defendant Officers testified that they never saw Cary at Area 5 and had no knowledge that Cary was allegedly denied access to Plaintiff. (Ex. 3 at 411:3-415:15; R. Weber Depo. Tr., attached as Ex. 9, at 202:1-16, 211:3-212:15; W. Burke Depo. Tr., attached as Ex. 10, at 22:4-19, 40:19-41:15; S. Czablewski Depo. Tr., attached as Ex. 11, at 72:6-73:3.)

## ARGUMENT

Evidence or testimony relating to Cary must be barred for two, independent reasons. First, the evidence cannot help prove any of Plaintiff's claims or Defendant Officers' defenses and is thus irrelevant. Second, because this evidence will unfairly prejudice Defendant Officers, mislead the jury, confuse what is actually at issue, and waste precious trial time, it should be barred under Rule 403.

**I.      Evidence Relating to Cary is Irrelevant Because it Cannot Help Prove Any Element of Plaintiff's Claims.**

Evidence is not admissible at trial unless it is relevant. Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action" Fed. R. Evid. 401. In determining whether evidence bears

on a fact of consequence, courts frequently look at what a party must prove to prevail on a claim or defense. *United States v. Hamzeh*, 986 F.3d 1048, 1052 (7th Cir. 2021) ("[W]hat must be proven at trial in this case is germane to the relevance inquiry."); *e.g.*, *United States v. Fifer*, No. 14-30006, 2015 WL 7004995, at *3-5 (C.D. Ill. Nov. 9, 2015) (granting motion to bar evidence showing "loving relationship" between defendant and minor victim because fact of "loving relationship" had no bearing on any element the government had to prove), *aff'd*, 863 F.3d 759 (7th Cir. 2017) (agreeing evidence was irrelevant to proving violation of criminal statute); *Trustmark Ins. Co. v. Gen. Cologne Life Reinsurance of Am.*, No. 00 C 1926, 2003 WL 21688229, at *3 (N.D. Ill. July 11, 2003) (finding evidence is relevant if it bears on element of plaintiff's claim); *Brinson v. Eagle Express Lines, Inc.*, No. 18 CV 3733, 2023 WL 6312400, at *2 n.4 (N.D. Ill. Sep. 28, 2023) (noting same). Cary's alleged experience at Area 5 is irrelevant because it cannot help prove: (i) a constitutional violation; or (ii) any other element of Plaintiff's claims.

### A. Allegations that police deceived Cary and failed to inform Plaintiff of Cary's presence cannot amount to a constitutional violation.

Plaintiff's claims all rely on the premise that Defendant Officers violated Plaintiff's constitutional rights under the Fifth Amendment or Fourteenth Amendment.[3] The evidence relating to Cary cannot prove either violation. "A suspect in police custody does not have a constitutional right to be notified that his attorney is at the stationhouse." *First Def. Legal Aid v. City of Chi.*, 319 F.3d 967, 968 (7th Cir. 2003); *Moran v. Burbine*, 475 U.S. 412, 422-34, 106 S.

---

[3] Count I (violation of due process) alleges a violation of the Fourteenth Amendment. Count II (coerced confession) alleges violations of the Fifth and Fourteenth Amendments. Count III alleges a failure to intervene to prevent these violations. Count IV alleges a conspiracy to commit these violations. Count VIII is a state law civil conspiracy claim which is premised on constitutional violations. (*See* Dkt. 294 at 23-25 (permitting Plaintiff's theory that Section 1983 provides the "unlawful conduct" that anchors his Illinois conspiracy claim).) Count IX (indemnification) and Count X (*respondeat superior*) seeks to extend Defendant Officers' liability to the City, which again, depends on Plaintiff's ability to show Defendant Officers violated Plaintiff's constitutional rights.

Ct. 1135 (1986) (holding Fifth Amendment does not "require that police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights"). In other words, when a suspect knowingly waives his *Miranda* rights and does not request an attorney, police are under no constitutional obligation to notify the suspect that an attorney is attempting to reach them. *Moran*, 475 U.S. at 424-34. (finding police's refusal to inform murder suspect that attorney was attempting to reach him does not violate suspect's rights under the Fifth Amendment); *Vainder v. Powell*, No. 03 C 1509, 2004 WL 1660618, at *9 (N.D. Ill. July 26, 2004) (concluding police do not violate a suspect's constitutional rights "by failing to inform him that counsel is present and asking to see him"); *Hill v. United States*, No. 00 C 4828, 2001 WL 185474, at *5 (N.D. Ill. Feb. 26, 2001) (applying *Moran* and finding law enforcement did not violate Fifth Amendment right by failing to inform suspect that attorney was trying to contact him); *Middleton v. Murphy*, 91-C-0751-C, 1992 WL 601890, at *4-5 (W.D. Wis. Jan. 27, 1992) (same); *cf. Lawrence v. Williams*, No. 14 C 2777, 2016 WL 930629, at *6 (N.D. Ill. Mar. 11, 2016) (thwarting attorney from seeing suspect did not impact validity of suspect's waiver of rights).

> *Moran* and its progeny make clear that police mistreatment of a suspect's attorney should have no bearing on whether the police violated a suspect's Fifth Amendment rights, particularly where the suspect had no knowledge an attorney was trying to make contact. *Moran* also squarely rejected the argument that police deceiving an attorney amounted to a violation of a suspect's Fourteenth Amendment due process rights. 475 U.S. at 432-434. While *Moran* suggests (in dicta) that "egregious" police deception **could** violate a suspect's Fourteenth Amendment rights if it "shocks the sensibilities of civilized society," *id.*, the Supreme Court has not yet found any police misconduct that meets this high bar, nor has it provided standards to help determine what

constitutes sufficiently egregious behavior. *Hyatt v. Branker*, 569 F.3d 162, 170-71 (4th Cir. 2009) (noting lack of standards and rejecting argument that failing to tell suspect about lawyer's presence at sheriff's office could amount to "police deception" constituting due process violation).

Despite a lack of explicit standards, *Moran* clearly demonstrates that this case does not present the sort of egregious police deception that can violate the Fourteenth Amendment. In *Moran*, a suspect was arrested for burglary, and police learned the suspect may have committed an unrelated murder. *Id*. at 416 While the suspect was being held, his sister contacted the public defender's office to represent him on the burglary charge, and an assistant public defender office in turn called the police department and notified them that she wanted to be present for any questioning or police lineups. *Id*. at 417. Police told the assistant public defender that the suspect would not be questioned until the following day; police did not say anything about the murder or that another police department was en route to question the suspect about the murder. *Id*. The suspect later confessed to the murder during questioning. *Id*. at 418. Ultimately, the Court concluded that police "conveying false information to an attorney" did ***not*** violate the Fourteenth Amendment. *Id*. at 432.

Applying *Moran*, courts have found other instances of police deception—like lying about a suspect's location, lying about how long a suspect would be held in custody, or even telling a suspect her lawyer had abandoned her—could not amount to a due process violation. *E.g.*, *United States v. Hankey*, 203 F.3d 1160, 1173-75 (9th Cir. 2000) (affirming decision to bar evidence that police misled attorney into thinking suspect's "release was imminent" and rejecting argument that evidence was relevant to issue of voluntariness of confession); *Matney v. Armontrout*, 956 F.2d 824, 825-26 (8th Cir. 1992) (finding police repeatedly and falsely telling attorney that suspect was not at police station did not "rise to the level of culpability" required for a due process violation);

8

*Tinker v. Beasley*, 429 F.3d 1324, 1328-29 (11th Cir. 2005) (discussing *Moran* and finding officers falsely telling suspect that attorney "had abandoned her" and then questioning her multiple times over three days did not constitute due process claim). Clearly, this case presents no more egregious conduct than *Moran*, *Hankey*, *Matney*, or *Tinker*. Plaintiff's allegations, even if true, do not constitute a Fourteenth Amendment violation.[4]

### B. Cary's alleged interaction with police cannot help prove any other element of Plaintiff's claims.

In addition to being irrelevant to whether Plaintiff's constitutional rights were violated, the alleged police treatment of Cary cannot help prove any other element of Plaintiff's claims. Plaintiff implicitly concedes as much in his pleadings. In his Complaint, Plaintiff alludes to Cary when alleging his *Monell* claim, which has been bifurcated from trial, and his state law malicious prosecution claim, which was dismissed on summary judgment. (Dkt. 136 at ¶¶ 97, 103.) In fact, the malicious prosecution claim was Plaintiff's only claim that required showing the underlying criminal proceeding was terminated in his favor. *See Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022) (providing elements of claim). Now that his malicious prosecution claim is gone, Plaintiff can prevail on his claims without presenting any evidence that his conviction was vacated (let alone the entire story of ***how*** it was vacated).

Defendant Officers anticipate that Plaintiff may argue evidence relating to Cary is somehow relevant to his conspiracy claims. Such an argument must fail because Plaintiff cannot connect any of the Defendant Officers to the alleged mistreatment of Cary. There is no evidence in the record showing that the Defendant Officers participated in turning Cary away, knew that it happened, or knew that Cary ever claimed to represent Plaintiff. Even taking Cary's testimony as

---

[4] Whether conduct is "shocking" enough to violate the Fourteenth Amendment is a question of law, so this question is appropriately determined by the Court and not a jury. *See Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998).

true, no one has been able to identify the police officers who allegedly told Cary that Plaintiff did not want to speak with him. Given the record, evidence of how unidentified officers treated Cary cannot be imputed to Defendant Officers or otherwise support Plaintiff's conspiracy claims.

To prevail on his conspiracy claims, Plaintiff must prove that the conspirators formed an agreement or reached an understanding to deprive Plaintiff of his federal constitutional rights. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (noting § 1983 conspiracy claim requires plaintiff prove conspirators "reached an understanding to deprive the plaintiff of his constitutional rights"); *Vance v. Chandler*, 231 Ill. App. 3d 747, 750, 597 N.E.2d 233 (Ill. Ct. App. 1992) (noting "agreement between two or more persons" is necessary element to state law civil conspiracy claim).[5]

As explained above, there is no evidence in the record that shows—or permits a reasonable inference—that any of the Defendant Officers formed an agreement or understanding with the officers who allegedly interacted with Cary. So even assuming the Defendant Officers engaged in a conspiracy, there is no evidence to support the conclusion that the unidentified officers who encountered Cary were part of the conspiracy. Such a conclusion would be pure speculation, which is impermissible. *Moran*, 54 F.4th at 500 (finding that state law civil conspiracy claim failed because plaintiff offered insufficient evidence of "any agreement or scheme" among the alleged conspirators); *Cooney v. Casady*, 735 F.3d 514, 518-20 (7th Cir. 2013) (rejecting plaintiff's

---

[5] To prevail on his state law civil conspiracy claim, Plaintiff must prove: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Vance*, 231 Ill. App. 3d at 750. The only "unlawful act" Plaintiff has identified is Defendants Officers' alleged violation of Plaintiff's U.S. constitutional rights. In other words, Count VIII is a state law civil conspiracy claim which is premised on U.S. constitutional violations. (*See* Dkt. 276 at 15-16 (arguing that, if his malicious prosecution claim failed, his Section 1983 claims could provide the act supporting civil conspiracy claim); *see also* Dkt. 294 at 23-25 (accepting Plaintiff's theory that Section 1983 provides the "unlawful act" to anchor the state law civil conspiracy claim)).

argument that evidence showing "knowledge and opportunity" to conspire could be sufficient to prove an agreement for § 1983 conspiracy claim and noting that "[o]nly speculation and conjecture could result in a finding that defendants conspired"); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (noting that circumstantial evidence like "numerous phone calls" between alleged conspirators proves only that they communicated, not that they engaged in conspiracy).

Because there is no evidence showing that Defendant Officers and the unidentified officers formed an agreement or understanding of any kind, evidence of the unidentified officers' conduct is irrelevant to Plaintiff's conspiracy claims.

## II. Even if Deemed Relevant, Evidence Relating to Cary Should be Barred Because it is Unfairly Prejudicial, Will Confuse the Jury, Distract from the Real Issues, and Will Waste Trial Time.

Rule 403 provides that relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, or wasting time. Fed. R. Evid. 403. Permitting Plaintiff to introduce evidence of Cary's alleged interaction with unidentified officers presents all of these dangers.

First and foremost, allowing Plaintiff to present this evidence would unfairly prejudice Defendant Officers and could mislead the jury. As explained above, the police officers who allegedly mistreated Cary have never been identified and, thus, have never had a chance to respond to and refute Cary's allegations. *Stassen v. Vill. of Arlington Heights*, No. 00 C 1956, 2002 WL 485664, at *4 (N.D. Ill. Apr. 1, 2002) (barring evidence of statement from unidentified officer and noting it was proper to do so under Rule 403 because it would be impossible for defendants to refute "without calling virtually the entire police force to testify"). Again, there is no evidence showing that Defendant Officers participated in or had knowledge of what happened to Cary at Area 5. Yet, at trial, if a jury believes Cary's story, Defendant Officers will be the only individuals there for the jury to blame. In other words, allowing this evidence would almost certainly create

the risk of misleading the jury to improperly attribute the unidentified officers' conduct to Defendant Officers. *See, e.g.*, *Holmes v. City of Chicago*, No. 09-CV-2481, 2016 WL 6442117, at *14–15 (N.D. Ill. Nov. 1, 2016) (barring evidence of past complaints against defendant officer's team members in part because of "significant Rule 403 problems" including risk that jury would improperly attribute non-defendant team members' practices to the individual defendant); *see also Holder v. Interlake S.S. Co.*, No. 16-cv-343-wmc, 2018 WL 1725694, at *9-10 (W.D. Wis. Apr. 10, 2018) (barring evidence of OSHA violations against one party in part because of risk that the evidence would mislead a jury to use the OSHA violations to support a claim of negligence against another party); *Bartos v. Pennsylvania, Dep't of Env't Prot.*, No. 1:08-CV-00366, 2012 WL 1246782, at *5 (M.D. Pa. Apr. 13, 2012) (barring evidence that non-defendant state employees lied during deposition out of "antipathy" for plaintiff because "serious risk that the jury would improperly attribute the conduct" to the defendants).

Permitting evidence relating to Cary would also likely confuse what is actually at issue at trial. Throughout this litigation, Plaintiff has argued that the alleged handling of Cary violated the Illinois constitution. (*See, e.g.*, Dkt. 136 at ¶ 41 (citing *People v. McCauley*, 645 N.E.2d 923 (Ill. 1994).) But whether unidentified officers violated the Illinois constitution will be an issue of no consequence at this trial because the alleged violation has no bearing on whether Plaintiff prevails on his claims. *See Vainder*, 2004 WL 1660618 at *9 (noting that an allegation that police failed to inform plaintiff of counsel's presence may violate the Illinois constitution—which does not provide for a cause of action for damages—but could ***not*** give rise to a § 1983 claim); *cf. Thompson v. City of Chi.*, 472 F.3d 444, 457 (7th Cir. 2006) (barring under Rule 403 evidence of CPD general orders because evidence was irrelevant to § 1983 claims, had limited relevance to state law wrongful death claim, and would likely create confusion that CPD general orders established duty

12

of care). In a trial that revolves around proving violations of rights under the U.S. Constitution, evidence relating to a violation of the Illinois constitution is almost certain to cause confusion, especially given the parties will engage in a "mini-trial" about actually happened. *Manuel v. City of Chi.*, 335 F.3d 592, 597 (7th Cir. 2003). Indeed, Plaintiff is almost certain to argue to the jury that turning Cary away contributed to the "coerciveness" of the police interview, but this would improperly warp how a jury assesses Plaintiff's claim because, again, the inquiry of whether Plaintiff's confession was voluntary looks only at what Plaintiff knew and was experiencing – not what may have been happening in the background unbeknownst to him. *See Moran* 475 U.S. at 422-24. Furthermore, the conduct of unknown officers cannot be imputed to Defendant Officers.

Finally, allowing Plaintiff to delve into Cary's story will certainly waste precious trial time. This case covers events that took place over a decade and involves scores of witnesses. If the evidence related to Cary is not barred, this could lead to lengthy testimony from at least nine third-party witnesses, including Cary, RJ, Renard Branch, Sr., TJ, Debra Scott, Sarah Scott, Felicia Frazier, Cierra Jackson, and Taneshia Branch Bell. In addition, each of the Defendant Officers must certainly testify regarding their lack of involvement in any wrongdoing related to Cary. For the reasons explained above, Cary's story ultimately amounts to a detour with no legal import for Plaintiff's claims or Defendant Officers' defenses. At best, Cary's alleged experience at Area 5 provides background information as to why Plaintiff's conviction was vacated. Such background information provides minimal probative value, and "[e]vidence providing minimal probative value is admissible only if it bears a remote risk of prejudice." *United States v. Boros*, 668 F.3d 901, 909-10 (7th Cir. 2012) (barring background evidence under Rule 403). There is certainly more than a remote risk of prejudice here. The evidence should be barred.

### DEFENDANTS' MOTION IN LIMINE NO. 2 TO BAR REFERENCE TO OTHER LAWSUITS, COMPLAINT REGISTER ("CR") FILES, OR OTHER DISCIPLINARY HISTORY EVENTS

Robust discovery in this case included the exchange of years of disciplinary records, training records, and summaries of citizen complaint register ("CR") records. Despite the liberal discovery allowed under Fed. R. Civ. P. 26, these issues have little, if any, relevance to the issues that will be presented at trial.

Plaintiff has not identified which of Defendant Officers' CRs, disciplinary records, and/or lawsuits that he plans to introduce at trial. Regardless of which documents Plaintiff will seek to introduce at trial, Plaintiff has never identified any complainant or witness that will testify as to any of Defendant Officers' CR files, disciplinary records, and/or lawsuits.

Any of Defendant Officers' CRs, disciplinary history events, and/or lawsuits that have been disclosed during discovery have no probative value to the issues at trial Fed. R. Evid. 401, 402. Thus, evidence of other instances of misconduct alleged against Defendant Officers—whether in the form of civilian complaints or other lawsuits—is not pertinent to any of the claims in this case. In addition, any arguable relevance presented by this evidence is substantially outweighed by the danger of unfair prejudice. If such evidence were admitted, it would constitute impermissible propensity evidence and imply that Defendant Officers should be held liable in this case merely because one or more of them has been accused on other occasions. An additional problem with the other act evidence is that it would needlessly prolong the case and require mini trials, as the Defendant Officers would need to disprove each of the other allegations.

### ARGUMENT

The threshold issue before evidence can be permitted under Fed. R. Evid. 404(b) is whether the evidence is probative of a material issue other than character. It is well-established that propensity evidence is inadmissible under Fed. R. Evid. 404(b) to prove that a party acted

consistently with his alleged bad character on the occasion in question. *See Huddleston v. U.S.*, 485 U.S. 681, 685 (1988); *see also U.S. v. Shriver*, 842 F.2d 968, 974 (7th Cir. 1988). In *U.S. v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (*en banc*) the Seventh Circuit announced a "shift in paradigm" for district judges interpreting other-act evidence associated with Federal Rule of Evidence 404(b). *Id*. at 853. Eschewing the four-part test that had formed the analysis of such cases since *U.S. v. Zapata*, 871 F.2d 616 (7th Cir. 1989), the Seventh Circuit announced a more rules-based approach that initially asks whether the other-act evidence is relevant under Rules 401 and 402. If the judge decides that the proffered other-act evidence is relevant under these two Rules, next, he must analyze whether, in the absence of a propensity inference, the proffered other-act evidence is relevant to a non-propensity purpose identified in Rule 404(b). If the other-act evidence is relevant to a non-propensity purpose identified in Rule 404(b), the judge must then consider whether such relevance is outweighed by the myriad of issues enunciated in Rule 403, most notably unfair prejudice. Post-*Gomez*, district courts perform a more stringent gatekeeping function than before. Meanwhile, the proponent of the 404(b) evidence bears a heightened burden that requires him to identify with specificity how the proffered evidence is relevant for a non-propensity purpose. Plaintiff bears the burden of demonstrating a non-propensity purpose warrants admission of the proffered evidence. However, even if a party seeking admission succeeds in meeting the standards for admissibility under *Gomez*, Fed. R. Evid. 403 may still demand its exclusion, if the probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Here, Plaintiff cannot meet his burden showing of how the evidence is anything other than propensity evidence. Such specific showing is necessary, for "in the absence of any such showing,

plaintiff's 'motive' argument, standing alone, would swallow the rule and provide an end-run around the four-part analysis under rule 404(b)." *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458 at *5 (N.D. Ill. 2008); *see also Chavez v. City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005) (in case concerning police officer defendant's use of canine, arguments that prior incidents of dog bites were relevant to show motive or modus operandi were not persuasive; there was no claim that the officer accidentally or mistakenly used a police dog, and proof of modus operandi is only relevant "where there is an issue regarding the defendant's identity.")

Further, mere similarity between allegations in the instant case and any allegations in the CRs and/or lawsuits is not enough to overcome the elements set forth under 404(b). *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 776 (7th Cir. 2001) (Seventh Circuit affirmed decision by district court to bar admission of plaintiff's past lawsuits regardless of the argument that it went to plaintiff's methods or modus operandi, as any relevance was outweighed by the prejudice the evidence would cause the plaintiff."); *Zaken v. Kelly*, 370 Fed.Appx. 982, 2010 WL 1253056 (11th Cir. 2010) (affirmed decision of district court to bar evidence of defendant's past use of force against others as plaintiff failed to show how the prior acts would be relevant other than to show defendant's bad character or propensity). The same dangers considered by the various courts above are applicable here. Any probative value of civilian complaints or lawsuits is substantially outweighed by the danger of unfair prejudice and confusion under Fed. R. Evid. 403; s*ee Mendez v. Kreissler*, No. 09 C 2276, 2011 WL 5869788, at * 3 (C.D. Ill. 2011) (ruling that prior lawsuits and citizen complaints filed against defendant failed to satisfy the standard set forth by the Seventh Circuit under Rule 404(b) and that notwithstanding the satisfying of such standard, the danger of unfair prejudice outweighed any probative value).[6]

---

[6] To the extent Plaintiff seeks to introduce evidence of Defendants Officers' CRs that were not sustained, these must be barred because they consist of only allegations against Defendant Officers. There is not

In addition to being outweighed by the danger of unfair prejudice, admitting evidence of civilian complaints and lawsuits would serve to confuse and mislead the jury, creating mini trials concerning the complaints, allegations, witnesses, credibility, findings, reliability, and circumstances concerning these other incidents. This would result in a distracting, time-consuming process with its end result serving only to confuse the jury and unfairly prejudice Defendant Officers. Seventh Circuit case law supports excluding such evidence from introduction at trial due to the danger of unfair prejudice.

In *Estate of Keys v. City of Harvey*, No. 92 C 2177, 1996 WL 34422 (N.D. Ill. 1996), the City of Harvey moved to bar evidence of other acts, including disciplinary records. The court held that such evidence was nothing more than prior bad acts, used in an attempt to prove actions in conformity. *Id.* The court rejected the arguments that the evidence met a Rule 404 exception or was evidence of habit. In addition to finding such evidence clearly impermissible under Rule 404, the court also found that the evidence would have also been excluded as unfairly prejudicial under Rule 403. *Id.* at *2; *see Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137 at 5 (N.D. Ill. 2008) (unrelated internal complaints were inadmissible character evidence); *Heflin v. City of Chicago*, No. 95 C 1900, 1996 WL 28238 (N.D. Ill. 1996) (unrelated complaints against police barred under Rules 401, 403); *Jones v. Hamelman*, 869 F.2d 1023, 1027 (7th Cir. 1989) (Seventh Circuit held in § 1983 action against correction officers that evidence of prior bad acts were not probative of officers modus operandi, impermissible under 404(b), and notwithstanding any probative value, the evidence was still unfairly prejudicial); *Aguilar v. Dixon*, No. 93 C 1936, 1995 WL 319621 (N.D. Ill. 1995); *see also Akbar v City of Chicago*, 06 C 3685, 2009 WL 3335364

---

sufficient evidence to support a jury finding that these Defendant Officers actually committed these violations. With respect to these CRs, the allegations were not sustained and Plaintiff has not disclosed any witnesses pursuant to Rule 26 to support these allegations. As such, Plaintiff could never satisfy the third prong of Fed. R. Evid. 404(b).

(N.D. Ill. Oct. 14, 2009) (holding complaint registers against Chicago Police officers inadmissible); *Gadison v. McGuire*, 09 C 0001, 2010 WL 346143 (N.D. Ill. Jan. 22, 2010) (granting the defendants motion *in limine* regarding prior complaints against officers); *Falk v. Clarke*, No. 88 C 7293, 1990 WL 43581 (N.D. Ill. Apr. 3, 1990) (barring use of prior allegation against officer because it was propensity evidence and would incur undue prejudice); *see also Gonzalez v. City of Elgin*, 2010 WL 3271272 (N.D. Ill. 2010) (prior lawsuits against officers barred). Unrelated past discipline cannot be used "to prove the character of a person in order to show action in conformity therewith," and tangentially related investigations and lawsuits do not fall into any exception under Rule 404(b).

Plaintiff cannot satisfy the requirements set forth above, nor can Plaintiff make an affirmative showing that past civilian complaints are probative for a reason other than to merely show propensity or acting in conformity therewith. Moreover, any marginal probative value this other act evidence has is substantially outweighed by the danger of unfair prejudice. Thus, Defendant Officers' Motion should be granted. Fed. R. Evid. 403.

## DEFENDANTS' MOTION IN LIMINE NO. 3 TO BAR TESTIMONY OR EVIDENCE RELATING TO VIOLATIONS OF THE CHICAGO POLICE DEPARTMENT'S INTERNAL RULES, REGULATIONS, ORDERS, POLICIES, AND PROCEDURES

Plaintiff Marcel Brown ("Plaintiff" or "Brown") may attempt to introduce evidence at trial suggesting that members of the Chicago Police Department ("CPD"), including Defendant Officers, violated the CPD's internal rules, regulations, orders, or procedures. Even if the alleged conduct were true, the violation of such rules, regulations, orders, or procedures does not, by itself, amount to a violation of Plaintiff's constitutional rights. As such, evidence that a CPD rule, regulation, order, or procedure was violated does not prove any element of Plaintiff's claims and is therefore irrelevant and inadmissible. Fed. R. Evid. 401; Fed. R. Evid. 402.

Alternatively, even assuming the evidence was somehow relevant, any minimal probative value would be far outweighed by its unfair prejudicial effects. Fed. R. Evid. 403. For instance, permitting evidence that any Defendant Officer violated an internal CPD rule, regulation, order, or procedure will improperly conflate such a violation to be a violation of Plaintiff's constitutional rights. Whether Defendant Officers violated an internal CPD rule, regulation, order, or procedure is a distraction from what is actually at issue, and allowing this evidence will undoubtedly inflict unfair prejudice, waste time, and prolong the trial.

## ARGUMENT

It is well established that the violation of internal police rules, regulations, orders, policies, and procedures is immaterial to whether a constitutional violation occurred under Section 1983 and therefore evidence of these alleged violations is inadmissible. *See Thompson v. City of Chicago,* 472 F.3d 444, 454-55 (7th Cir. 2006) (holding that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established") (emphasis added); *see also Bruce v. City of Chicago*, 2011 WL 3471074, *2-3 (N.D. Ill. July 29, 2011) ("As to the constitutional violation, the Seventh Circuit categorically stated that 'the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established.'") (internal quotation marks and citation omitted). In addition, such evidence has a high likelihood of confusing the issues and thereby unfairly prejudicing defendants. *Brown v. City of Chicago*, 2023 WL 2640317, at *8 (N.D. Ill. 2023) (barring evidence concerning CPD rules and regulations because "introducing departmental policies could increase the risk of prejudice and confusion, for the jury would be asked to consider the policies for the sake of assessing intent on Mr. Brown's state law claims but not as evidence of a constitutional violation for his evidence-fabrication and coercion claims."). As such, this type of unfairly

19

prejudicial evidence cannot be cured with a mere jury instruction. *Thompson,* 472 F.3d at 457 ("Any limiting instruction explaining to the jury that, although the General Orders do not create a duty on the part of an officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding—and that they could not be considered in conjunction with the plaintiffs' § 1983 claims—would have led to unnecessary and detrimental jury confusion."). Applying these principles, courts in this district have routinely barred evidence concerning a defendant officer's violation of a police department's internal rule, policy, or procedure. *See, e.g.*, *Bahena v. Kennedy*, 2021 WL 8153974, at *9 (N.D. Ill. Oct. 25, 2021) (Granting motion "to bar evidence, testimony, or argument that any officer violated Chicago Police Department general orders, special orders, rules and regulations" where "Defendants correctly argue that violations under local laws and regulations have no bearing on constitutional claims brought under 42 U.S.C. § 1983."); *Ayoubi v. Smith*, 2018 WL 11222660, at *3 (N.D. Ill. May 2, 2018) ("The Court agrees with Defendants that a violation of internal Cook County Sheriff's procedures or other municipal law is not relevant to determining whether Defendants violated the U.S. Constitution, and such evidence is likely to unduly prejudice Defendants by leading the jury to infer otherwise."); *Gomez v. City of Chicago*, 2015 WL 13651138, at *10 (N.D. Ill. June 29, 2015) (explaining that CPD "general policies and procedures are generally inadmissible . . . because they tend to cause the jury to conflate violations of the policies with violations of the Constitution."). This Court should apply these principles, and bar all evidence concerning violations of the CPD's internal rules, regulations, orders, or procedures.

Plaintiff will likely argue that *Thompson* does not establish a per se rule against the admission of policies and that such violations could *theoretically* be used as evidence of something other than a constitutional violation. Such an argument was recently addressed in *Brown v. City of*

*Chicago*, where the court barred introduction of CPD policies under Rule 403. 2023 WL 2640317, at *8 ("[I]ntroducing departmental policies could increase the risk of prejudice and confusion, for the jury would be asked to consider the policies for assessing intent on Mr. Brown's state law claims but not as evidence of a constitutional violation for his evidence-fabrication and coercion claims."). Accordingly, this Court should apply the same analysis as was applied in *Brown*, and bar evidence concerning violations of CPD rules, regulations, orders, policies, and procedures.

## DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO BAR EVIDENCE OR ARGUMENT RELATING TO THE THOROUGHNESS OF DEFENDANT OFFICERS' INVESTIGATION OF THE HOMICIDE OF PARIS JACKSON

Plaintiff will likely seek to introduce evidence and argue that Defendant Officers' investigation of the Jackson homicide was not thorough. Although Plaintiff does not allege these arguments in his Operative Complaint (Dkt. 136), Plaintiff has sought discovery and has asked deposition questions of Defendant Officers indicating that Plaintiff plans to argue at trial that Defendant Officers failed to interview all potential witnesses and failed to follow all potential leads while investigating the Jackson homicide. First, Plaintiff will likely argue that Defendant Officers' investigation was not thorough because they did not interview all the individuals who called 911 and reported shots fired at Amundsen Park at the time Plaintiff's cousin was shooting in the park. Second, Plaintiff will likely argue that Defendant Officers did not pursue all leads such as: (i) testing the blood evidence recovered at the crime scene; or (ii) investigating the handwritten letter that was provided by Jackson's mother to the Chicago Police Department ("CPD") several days after Plaintiff's confession. Plaintiff has no constitutional right to an investigation that includes interviewing every possible witness and pursuing every lead. Thus, this type of evidence is not relevant to any of Plaintiff's remaining claims in this case and should be barred pursuant to Fed. R. Evid. 401.

## ARGUMENT

At trial, Plaintiff will likely seek to introduce evidence and argument suggesting that Defendant Officers' investigation into the homicide of Jackson was not thorough. This Court has already ruled that probable caused existed for Defendant Officers to believe that Plaintiff assisted in his cousin's murder of Jackson. (*See* Dkt. No. 294, at pp. 15-22). After probable cause is established, the other interviews that detectives could have taken or the other leads they could have pursued are irrelevant. In *Gramenos v. Jewel Companies, Inc.*, the Seventh Circuit "conclude[d] that the police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages." 797 F.2d 432, 442 (7th Cir. 1986). "Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices." *Id.* Accordingly, Plaintiff must not be permitted to argue that Defendant Officers should pay damages because they did not interview certain witnesses or did not follow specific police practices regarding the thoroughness of the investigation.

To the extent Plaintiff argues that this evidence is relevant to show that Defendant Officers failed to uncover potentially exculpatory evidence, this too is not a legitimate reason to allow the admission of this evidence at trial. "In fact…once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 583 (7th Cir. 1989) (citing *Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986) ("the law appears to be ... that the police ... have no constitutional duty to keep investigating a crime once they have established probable cause"); *see also Nugent v. Hayes,* 88 F. Supp. 2d 862, 868 (N.D. Ill. 2000) ("[I]t is not the duty of the police to perform the perfect investigation, and 'one suspected of committing a crime has no constitutional right to an investigation by police which will uncover all exculpatory evidence.'"); *Davis v. Owens*, 973 F.2d 574, 577 (7th Cir.

22

1992) (same). Furthermore, Plaintiff cannot base a *Brady* claim on an allegation that Defendant Officers must create evidence or hypothetical evidence. *United States v. Lawson*, 810 F.3d 1032, 1042 (7th Cir. 2016).

For example, in *Henriksen v. Picardi*, the plaintiff alleged his constitutional rights were violated because the defendant officers failed "to follow up on potential leads that might have led to other suspects" including a failure to test the cigarette butts found in at the murder site, or to check out some of the telephone numbers in the victim's address book, or to interview her ex-husband. No. 02 C 8060, 2006 WL 299071, at *10 (N.D. Ill. Feb. 7, 2006). The court held that "there is no due process right to a full and complete police investigation." *Id.* (citing *Carroccia v. Anderson,* 249 F.Supp.2d 1016, 1025 (N.D. Ill. 2003) (stating that "it is clear that police are not constitutionally obligated to pursue all investigative possibilities to establish probable cause")). The court continued, "[a]s the Seventh Circuit has made clear, 'the law does not require that a police officer conduct an incredibly detailed investigation at the probable cause stage, even if ideally that might appear to be a more desirable approach.'" *Id.* (quoting *Gerald M. v. Conneely,* 858 F.2d 378, 381 (7th Cir. 1988)). The court ultimately held that the plaintiff did not demonstrate a constitutional violation and that the defendants were "not required to test items such as cigarette butts, dust for fingerprints or seize specific evidence in the manner [the plaintiff] would have liked." *Id.* at *16.

Similarly, Plaintiff cannot show any constitutional violation based on the allegations that Defendant Officers did not test the blood evidence, did not interview specific individuals, or did not follow alleged leads. Therefore, this evidence, and any other evidence that Plaintiff may attempt to rely on to argue Defendant Officers did not conduct a thorough investigation, is irrelevant and must be barred. Fed. R. Evid. 401, 402.

## DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO BAR
## HANDWRITTEN LETTER PURPORTEDLY WRITTEN BY PARIS JACKSON

Days after the Cook County State's Attorney approved first degree murder charges against Plaintiff for the death of Paris Jackson ("Jackson"), Jackson's mother gave Chicago police a handwritten letter purportedly written by Jackson. The letter describes disputes in the neighborhood between Plaintiff's neighborhood crew and a rival neighborhood crew – and thus foreshadows the Amundsen Park shooting at issue in this case. However, Plaintiff has used the letter in this case to suggest that Defendant Officers failed to conduct an adequate investigation. The Court should bar Plaintiff from mentioning or attempting to introduce the letter into evidence for several reasons. First, the letter is irrelevant to any issue at trial. Second, the letter amounts to inadmissible hearsay. Third, the letter would be unfairly prejudicial to Defendant Officers and has no probative value.

## ARGUMENT

The following cannot be disputed: in the early morning hours of September 5, 2008, Cook County Assistant State's Attorney Michelle Spizzirri approved charges for first-degree murder of Paris Jackson against Plaintiff after Spizzirri and certain Defendant Officers finished interviewing Plaintiff. Four days later, on September 9, Jackson's mother delivered a handwritten letter purportedly written by Jackson to Chicago Police Sergeant William Whalen, who is not a defendant in this case. (*See* Letter, attached as Exhibit 12). Sgt. Whalen inventoried the letter and created a report describing the letter and its contents. (*See* Sept. 10, 2008 Case Supp. Report, attached as Exhibit 13.)

Defendant Officers anticipate that Plaintiff will argue that Defendant Officers did not adequately follow up on this letter and, by extension, that the homicide investigation as a whole was inadequate. The argument is ultimately meritless, but Plaintiff must be barred from referencing

24

or attempting to introduce the letter for multiple reasons. First, the letter is irrelevant to proving any of Plaintiff's claims. Second, the letter is inadmissible hearsay. Third, permitting Plaintiff to use the letter will unfairly prejudice Defendant Officers.

## I.  The Letter Is Irrelevant.

Plaintiff's remaining claims all rest on Plaintiff proving that Defendant Officers violated his constitutional rights. First and foremost, the Constitution does not impose any sort of obligation on a police officer to follow every lead during an investigation or even to investigate any lead at all. *See David v. Vill. of Oak Lawn*, 954 F. Supp. 1241, 1245–46 (N.D. Ill. 1996) (finding "plaintiff d[oes] not have constitutional right to have his complaints investigated at all and, accordingly, cannot now maintain a section 1983 claim based on [officers'] investigation); *see also Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (finding that allegation of police chief's "unsatisfactory action (or inaction) on the plaintiff's complaint letter does not implicate the Constitution), *aff'd*, 23 F.3d 410 (7th Cir. 1994). So, even assuming Defendant Officers failed to adequately follow up on this letter (whatever that means), it could not violate any constitutional right.

Moreover, the letter cannot support Plaintiff's primary claim – that his confession was coerced. That claim rests entirely on Defendant Officers' interview of Plaintiff, and as explained above, the letter was not provided to police until days after the interview concluded. The letter cannot support Plaintiff's other constitutional claims either. Plaintiff has failed to raise any theory of liability based on the letter and cannot introduce this novel theory at trial. (*See generally* Dkt. 136; *see also* Pl.'s Resp. to Def. Officers' Ints., attached as Exhibit 14, at 9-15 (detailing all Defendant Officers' alleged unlawful or unconstitutional acts); *see Colyer v. City of Chi.*, 2014 WL 8796112 (N.D. Ill. 2014) (Chang, J.) (dismissing part of an excessive force claim at summary judgment because the plaintiff had not raised the theory of liability in his complaint before

summary judgment). Even putting this fatal mistake aside, the letter cannot support Plaintiff's *Brady* claim because there is no evidence any Defendant Officer concealed or attempted to conceal the letter. Moreover, Defendants anticipate Plaintiff will contend that the letter is genuine, so the letter cannot support Plaintiff's claim based on allegedly fabricated evidence. Accordingly, the letter is irrelevant to Plaintiff's claims and should be barred. Fed. R. Evid. 401; Fed. R. Evid. 402.

## II.     The Letter Is Inadmissible Hearsay.

The Court should also bar Plaintiff from mentioning or introducing the letter because it constitutes inadmissible hearsay. To argue that Defendant Officers failed to adequately address or follow up on the letter, Plaintiff must necessarily ask the jury to accept the statements in the letter as true. In other words, Plaintiff seeks to use the letter as classic hearsay evidence, and it must be barred. Fed. R. Evid. 801; Fed. R. Evid. 802.

Plaintiff cannot establish any exception to the hearsay rule, nor can Plaintiff offer the evidence in a manner that would not amount to hearsay. For example, Plaintiff could not offer the letter to show its impact on Defendant Officers, i.e., for its "effect on the listener." *See*, *e.g.*, *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *16 (N.D. Ill. Jan. 31, 2017) (explaining non-hearsay use). Again, the letter was turned over to police days after murder charges were approved against Plaintiff, so the letter could not possibly have any impact on Defendant Officers during the relevant time period, i.e., while Defendant Officers investigated and questioned Plaintiff prior to charges being filed. Moreover, at the summary judgment stage, the Court found as a matter of law that probable cause existed to charge Plaintiff with murder, so even assuming the letter **could** have impacted Defendant Officers' outlook on the investigation, it is irrelevant because sufficient evidence existed to charge Plaintiff with murder (and thus, the "effect on the listener" exception cannot apply here).

**III.    The Letter is Unfairly Prejudicial and Has No Probative Value.**

Putting aside the fact that the letter is irrelevant and amounts to inadmissible hearsay, the Court should also bar Plaintiff from introducing this letter because it would be unfairly prejudicial to Defendant Officers and provides no probative value. Plaintiff's counsel has used the letter in depositions to suggest that the letter presents additional leads that Defendant Officers should have followed, even though Defendant Officers already had more than enough evidence to establish probable cause and murder charges had already been filed. A major problem is that Plaintiff's argument depends on a subjective interpretation of the letter. Allowing Plaintiff to suggest to the jury that Defendant Officers should have done more work based on the letter would be unfairly prejudicial because, assuming the letter was drafted by Jackson, there is no way to question Jackson about what the contents of the letter actually mean. Moreover, the letter has little or no probative value because, again, it cannot help prove any of Plaintiff's claims. Accordingly, the letter should also be barred under Rule 403.

## DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO BAR OEMC CALL AND DOCUMENT REGARDING PURPORTED CALLS MADE TO OEMC ON AUGUST 30, 2008

Plaintiff has been fixated in discovery on certain 911 calls purportedly received by the City's Office of Emergency Management and Communications ("OEMC") on August 30, 2008, to argue that Defendant Officers ignored the possibility someone else killed Jackson. The 911 calls are ultimately a red herring and are irrelevant to anything that will be at issue at trial. Nevertheless, Defendant Officers anticipate that Plaintiff will seek to introduce two pieces of evidence related to this sideshow: (1) a phone call from Officer Eddie Reed to OEMC dispatch on August 31, 2008 requesting the 911 calls received on August 30, 2008; and (2) a document purportedly showing the 911 calls received by OEMC on August 30, 2008. The Court should bar both pieces of evidence for several reasons.

## BACKGROUND

Paris Jackson was killed after Renard Branch, Jr. ("RJ") opened fire on a group of boys at Amundsen Park at approximately 11 p.m. on the night of August 30, 2008. Around that time, OEMC received multiple calls of shots fired in or near Amundsen Park.

The following morning, after Jackson's body was discovered in the park, Chicago Police Officer Eddie Reed called OEMC to ask about 911 calls received the night before regarding shots fired in the area. An unidentified dispatcher told Reed that OEMC had received "shots fired" calls between 2300 and 2341 hours (i.e., between 11 p.m. and 11:41 p.m.). (*See* Tr. Of Aug. 31, 2008 OEMC Call, attached as Ex. 15). Plaintiff has used the alleged 11:41 p.m. call to argue that someone other than RJ shot Jackson in a separate, later shooting.

Plaintiff has also focused on an "event history table" document contained in the Chicago Police Department's investigative file for the Jackson homicide. (*See* "Event History Table" document, attached as Ex. 16). The document appears to describe "shots fired" calls purportedly received by OEMC on August 30, 2008. There is no evidence in this case showing who created the "event history table" document, and testimony from relevant witnesses reflect that the document is not one produced as a result of a regularly conducted activity. Throughout the case, Plaintiff has used this document to argue that Defendant Officers failed to follow up on every possible lead in the Jackson homicide investigation. Importantly though, it is uncontested that Defendant Officers conducted a canvass of the area following the shooting to find potential witnesses and that Defendant Officers ultimately found more than a dozen people who actually were eyewitnesses to the shooting. It is also undisputed that OEMC employee Allegra Martin— not any Defendant Officer—was responsible for responding to a subpoena from the Cook County State's Attorney's Office seeking any tapes and "event inquiries" of 911 calls from 10 p.m. on August 30, 2008 through 9 a.m. on August 31, 2008 relating to the Jackson shooting.

## ARGUMENT

Defendant Officers request an Order barring Plaintiff from introducing as evidence or mentioning: (1) the August 31, 2008 phone call between Officer Reed and an unidentified OEMC dispatcher ("the August 31, 2008 OEMC Call"); and (2) the "event history table" document purportedly showing 911 calls received by OEMC on August 30, 2008. Both pieces of evidence are inadmissible hearsay, and Plaintiff cannot authenticate or lay a proper foundation for the "event history table" document. Further, both pieces of evidence are irrelevant to Plaintiff's claims. Finally, the evidence should also be barred under Rule 403 because it is unfairly prejudicial, confusing, and will mislead the jury.[7]

**I.    The August 31, 2008 OEMC Call and the Purported "Event History Table" Are Hearsay, and Plaintiff Cannot Authenticate or Lay A Proper Foundation For The "Event History Table" Document.**

Both the August 31, 2008 OEMC Call and the "Event History Table" document are hearsay and should be barred. Regarding the August 31, 2008 OEMC Call, Defendants anticipate Plaintiff will use the call to show that OEMC received 911 calls regarding "shots fired" in or near Amundsen Park from 11 p.m. to 11:41 p.m. on August 30, 2008. In other words, Plaintiff will use the call to prove the truth of the matter asserted by an unidentified OEMC dispatcher. The call amounts to hearsay within hearsay: (1) the OEMC dispatcher's out-of-court statement describing the calls, and (2) the out-of-court "shots fired" statements made by unidentified callers. Absent showing an exception for each level of hearsay, the August 31, 2008 OEMC call must be barred.

---

[7] One case supplementary report mentions that an officer on the scene—i.e., Officer Reed—relayed to detectives that there were "shots fired" calls in Amundsen Park between approximately 11 p.m. and 11:41 p.m. Defendant Officers ask the Court bar Plaintiff from using that portion of the case supplementary report for the same reasons that the Court should bar the August 31, 2008 OEMC Call: it is hearsay, irrelevant, and unfairly prejudicial. *See also Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013) (noting "police reports have generally been excluded except to the extent to which they contain firsthand observations of the officer").

29

Fed. R. Evid. 802; Fed. R. Evid. 805. Plaintiff cannot show any exception applies to the call. Officer Reed's request for "shots fired" calls from August 30, 2008, is a one-time, non-routine request, and the unidentified dispatcher repeats non-specific statement information collected by OEMC hours earlier; in other words, the call cannot be characterized as any sort of business record, present sense impression, or excited utterance, which typically provide the exception for 911 call evidence. *See* Fed. R. Evid. 802(1)-(2), (6); *see also United States v. Brown*, No. 18-CR-237, 2019 WL 1522064, at *1 (E.D. Wis. Apr. 8, 2019) (denying motion to admit 911 call and rejecting common hearsay exceptions).

Likewise, the "event history table" document is hearsay within hearsay, and Plaintiff cannot show any exceptions apply. The document purportedly contains information collected by OEMC about certain 911 calls received on August 30, 2008. The document itself is an out-of-court statement. Importantly, it is unknown who created the document. Plaintiff has not produced any evidence showing any Defendant Officer created this document. Plaintiff deposed an OEMC employee, Allegra Martin, but she had no knowledge of how it was created and testified that it was not in a format that OEMC typically prints such information. (*See* A. Martin Depo. Tr., attached as Ex. 17, at 148:2-150:14). Accordingly, Plaintiff cannot show that this document has the sort of trustworthiness to constitute a public record or a record of a regularly conducted activity. *See* Fed. R. Evid. 803(6)-(8). The document also apparently contains summaries of statements purportedly made by callers. (*See*, *e.g.*, Ex. 2 at 1-2 ("CS HEARD SHOTS FIRED . . . CS THEY ARE STILL SHOOTING NFI" or "PEOPLE IN THE PARK SHOOTING").) Plaintiff has used these statement summaries throughout the case to support his argument that there were multiple shooters in the park. Defendants anticipate Plaintiff will do the same at trial, i.e., argue that the statement summaries are true. As such, the statement summaries are another level of hearsay.

These statements are clearly inadmissible hearsay because no presumption of reliability can attached to "statements of [unidentified] third parties who themselves have no public duty to report." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013). Moreover, because this vague document appears to contain only non-verbatim snippets of statements from 911 callers, it is impossible to tell whether some hearsay exception could apply. *See*, *e.g.*, *Scott v. Wendy's Properties, LLC*, No. 20 CV 6829, 2024 WL 1768630, at *2 (N.D. Ill. Apr. 24, 2024) (noting that "[w]ithout more information about the individual calls made to the OEMC," the court could not discern whether statements in official OEMC call log could fall under exceptions present-sense impression or excited utterance).

Relatedly, the "event history table" document should be barred because Plaintiff will not be able to authenticate or lay a proper foundation for it. Again, Plaintiff has been unable to identify anyone in this case who created the document or could identify when it was created. At best, witnesses will be able to say the information contained in the document is similar to information that was maintained by OEMC at one time, (Ex. 15 at 148:2-150:14), but no one will be able to testify that the document is what it purports to be: an official document containing all OEMC information about "shots fired" calls that were received on August 30, 2008. Fed. R. Evid. 901(a). The Court should bar the "event history table" document on this basis as well.

## II.     Both Pieces of Evidence Are Irrelevant.

The August 31, 2008 OEMC Call and the "Event History Table" document should also be barred because they are irrelevant. Plaintiff's counsel has fixated on the 911 calls purportedly received on August 30, 2008, to argue that Defendant Officers did not adequately follow up on these calls and, by extension, conducted a shoddy investigation. Even assuming that was true (it is not as Defendant Officers canvassed the area for witnesses and ultimately interviewed dozens of eyewitnesses in this case), the Constitution does not require police officers to follow every possible

lead, nor does it provide any sort of right to a thorough investigation. *See David v. Vill. of Oak Lawn*, 954 F. Supp. 1241, 1245–46 (N.D. Ill. 1996) (finding "plaintiff d[oes] not have constitutional right to have his complaints investigated at all and, accordingly, cannot now maintain a section 1983 claim based on [officers'] investigation"); *see also Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (finding that allegation of police chief's "unsatisfactory action (or inaction) on the plaintiff's complaint letter does not implicate the Constitution), *aff'd*, 23 F.3d 410 (7th Cir. 1994).

Plaintiff cannot demonstrate how the August 31, 2008 OEMC Call or the "Event History Table" document—or any of the August 30, 2008 "shots fired" calls—are relevant to any issue for trial. The issues here are whether Defendant Officers coerced Brown's confession, fabricated evidence presented at trial, or withheld exculpatory material evidence. If Plaintiff, belatedly,[8] tries to argue that August 30, 2008 "shots fired" calls constituted potential exculpatory evidence that could support a *Brady* claim, the argument fails on its face. Plaintiff has never been able to uncover any evidence that any Defendant Officer suppressed the existence of these August 30, 2008 "shots fired" calls. Plaintiff also cannot prove this evidence was withheld from Plaintiff's criminal defense attorney. Even assuming Plaintiff could, there is also no evidence showing the failure could be attributed to any **Defendant Officer**. It is undisputed that the Cook County State's Attorney's Office subpoenaed OEMC (not CPD) for all tapes and "event inquiries" of 911 calls from 10 p.m. on August 30, 2008, through 9 a.m. on August 31, 2008, relating to the Paris Jackson

---

[8] This theory of liability is not contained anywhere in his operative complaint, (*see generally* Dkt. 136), nor is it contained anywhere in Plaintiff's response to Interrogatory Response No. 6 of Defendant Officers' First Set of Interrogatories, where Plaintiff was asked to specify each unconstitutional act Defendant Officers committed. (*See* Ex. 14 at 9-15.) Therefore, Plaintiff cannot introduce this as a theory at trial. *See Colyer*, 2014 WL 8796112 (dismissing part of an excessive force claim at summary judgment because the plaintiff had not raised the theory of liability in his complaint before summary judgment).

shooting, and it is also undisputed that non-defendant Allegra Martin handled the response to that subpoena. (*See* Ex. 17 at 96:17-106:15.)

### III. Both Pieces of Evidence Should Be Barred Under Rule 403.

Finally, the August 31, 2008 OEMC Call and the "Event History Table" document should also be barred under Rule 403. As explained above, neither piece of evidence has any probative value for anything that will be at issue at trial. Defendant Officers anticipate Plaintiff will attempt to introduce the evidence only to argue that Defendant Officers did not sufficiently investigate the possibility that there were multiple shooters in Amundsen Park or that Jackson could have been killed in separate shooting that took place after RJ opened fire in the park. Permitting Plaintiff to make these arguments would be confusing to the jury and mislead them into focusing on aspects of the Jackson homicide investigation that really have no bearing on Plaintiff's claim. The evidence would also unfairly prejudice Defendant Officers because it would allow Plaintiff to nitpick irrelevant parts of the investigation and provide Defendant Officers no way to meaningfully rebut Plaintiff because Defendant Officers would be unable to question the unidentified OEMC dispatcher who spoke to Officer Reed or the unidentified callers who allegedly reported "shots fired" on the night of August 30, 2008. Given this potential prejudice and limited probative value, the Court should bar Plaintiff from introducing or mentioning the August 31, 2008 OEMC Call and the "Event History Table" document. Fed. R. Evid. 403.

### DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO BAR TESTIMONY OR EVIDENCE RELATING TO A GENERAL "CODE OF SILENCE" OR "BLUE WALL"

Defendant Officers anticipate, based on Plaintiff's Complaint and questions asked of Defendant Officers at their depositions, that Plaintiff may try to introduce, through questioning or argument, references to generalized allegations of police misconduct against the Chicago Police Department, including use of the terms "code of silence," "blue wall," "blue shield," or any other

pejorative term or phrase relating to police allegedly covering up, lying, or not disclosing information in order to protect fellow officers. Any evidence or argument relating to these, and any other generalized allegations of police misconduct must be barred under Fed. R. Evid. 401, 402 and 403.

Plaintiff has stipulated that he will not introduce testimony or evidence regarding other allegations or incidents of reversed convictions, or highly publicized incidents of police misconduct. However, Plaintiff opposes this Motion to bar general allegations of police misconduct relating to a "code of silence," "blue wall," etc. For the same reasons that the references to other reversed conviction cases and allegations of police misconduct are inadmissible, so too are references to other police officers allegedly covering up or lying to protect fellow officers.

## ARGUMENT

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Generalized allegations of misconduct, including but not limited to those set forth above, have no tendency to make a fact of consequence in this case more probable than not. Without being able to satisfy Rule 401's most fundamental premise for admissibility, this evidence must be barred by Rule 402.

Further, information concerning non-case related and generalized allegations of police misconduct is likewise barred under Rule 403. Plaintiff cannot prove his claims in this case by reference to non-case specific "evidence" of police misconduct, inserted into the case through inference and innuendo. The above referenced allegations of misconduct have no probative value to the jury's determination that any Defendant Officers violated Plaintiff's constitutional rights in this matter. The only purpose for the introduction of this type of inflammatory and irrelevant information or argument would be to inflame the jury and encourage a verdict based on guilt by association. References to a "code of silence" or "blue wall" and phrases of the like are invariably

designed to portray the Defendant Officers in this case as bad actors by function of their office and with the specter of well-known or media covered incidents of police misconduct rather than being grounded in the facts of this case and admissible evidence the jury should hear and weigh during this trial. Such pleas to negative inferences have no probative value and, even if they somehow had minimal relevance, it is substantially outweighed by the unfair prejudice to the Defendant Officers in this case. Consequently, any such reference should be barred under Fed. R. Evid. 403. *See also Dollard v. Whisenand,* 946 F.3d 342, 359 (7th Cir. 2019) ("[T]he concept of guilty by association is repugnant to our notion of elemental justice and fair play").

Multiple courts in this district have granted motions *in limine* to exclude similar evidence, reasoning that evidence of other officers' alleged misconduct and any mention of high-profile cases and a "code of silence," are irrelevant and highly prejudicial. *See e.g. Gomez v. City of Chi.*, No. 13-C-05303, 2015 WL 1361138, at *9 (N.D. Ill. June 29, 2015) (granting motion to bar evidence of or arguments about other allegations of police misconduct as irrelevant); *Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908, at *7 (N.D. Ill. Apr. 29, 2016) (granting motion to bar evidence of publicized events and other allegations of police misconduct as irrelevant and unfairly prejudicial); *Martinez v. City of Chicago*, No. 14-cv-369, 2016 WL 3538823, at *7 (N.D. Ill. June 29, 2016) (any "code of silence" or "all cops lie" evidence would be unduly prejudicial and would constitute improper propensity evidence); *Caldwell v. City of Chicago*, No. 08 C 3067, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010) (granting motion to bar evidence that there is a code of silence); *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011) (granting motion as to any generalized allegations concerning the "code of silence" because these allegations would not be helpful to the jury and are unduly prejudicial); *Holt v. Lewsader*, No. 18-cv-2169, 2021 WL 4094996, *18 (C.D. Ill., Apr. 18, 2021) (granting motion to

bar evidence that law enforcement officers in general adhere to a "code of silence," "blue wall," or otherwise generally seek to cover-up misconduct in order to protect other officers; and to bar the use of the terms "code of silence" and "blue wall" because those terms are unduly prejudicial); *Watson v. Fulton*, No. 1:15-cv-11559, 2022 WL 21296130, at *5 (N.D. Ill. Feb. 23, 2022) (granting motion to bar general references that there is a "code of silence," "blue wall," or like accusations amongst all officers); *Stewardson v. Cass Cnty*, No. 3:18-cv-958 DRL, 2023 WL 2596730, at *7 (N.D. Ind. Mar. 22, 2023) (granting motion to bar use of the terms "blue wall," "blue line," or "code of silence" as these terms are unduly prejudicial without probative value of particularized bias of these two officers; and to bar the introduction of evidence or argument that in analogy to high-profile incidents law enforcement officers generally cover up misconduct to protect fellow officers); *Andersen v. City of Chicago*, No. 16-cv-1963, Dkt. 703 (N.D. Ill. Nov. 17, 2020) (Any mention of any other police misconduct cases would be highly prejudicial to Defendants and irrelevant to the facts of this case. It would be improper to enflame the passion of the jury to correct overall police misconduct.). The present case is no different.

In addition to the lack of relevance, and the unfair prejudice resulting from the introduction of such evidence, allowing such evidence would mislead the jury, and substantially confuse the facts at issue the jury must decide in determining whether Plaintiff has met his burden of proof against Defendant Officers in this case. As such, the evidence should be barred under Rule 403 to avoid misleading the jury and confusing the issues.

## DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO BAR EVIDENCE OR ARGUMENT RELATING TO "STREET FILES"

Defendant Officers seek to bar all evidence and argument relating to an inference that there was some secret file (a "street file") or that any Defendant Officer withheld documents in a secret file or "street file," or any other pejorative phrasing and inference relating to a "street file."

Plaintiff's *Brady* claim rests on the allegation that an officer interviewed Rufus McGee and that despite McGee providing information that would purportedly exculpate Plaintiff, officers failed to prepare a police report that included this exculpatory information and therefore the information was not provided to Plaintiff's criminal defense counsel.

"Street file" type evidence and related argument should be barred under Fed. R. Evid. 403 as its prejudicial effect is high and probative value nonexistent. There are no pending constitutional or state law claims that makes reference to hidden documents, "street files" or clandestine secret files relevant at the trial in these cases. Thus, there is no probative value to using pejorative terminology such as "street files" or secret clandestine files that create or suggest inferences that are not relevant to the claims the jury will consider.

As Plaintiff's counsel well knows, and hopes to capitalize on, "street files" has a specific meaning from prior litigation. *See e.g. Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988). In *Jones*, the plaintiff alleged the individual officers withheld exculpatory information from him in his criminal case in a "street file." That moniker lives on today as does its prejudicial connotation. Without having developed any evidence of a "street file" in this case, Plaintiff's use of the term is inflammatory, confusing and unfairly prejudicial.

Thus, because there is no probative value to the use of terms such as "street files" and the like, and the prejudice to Defendant Officers is high, the Rule 403 balancing test requires evidence and argument referring to "street files," "running files," and "secret files" to be barred.

## DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO BAR ARGUMENT THAT PLAINTIFF IS ENTITLED TO RECOVER FOR TIME SPENT IN PRETRIAL DETAINMENT AND TO BAR ARGUMENT THAT PLAINTIFF WAS WRONGFULLY INCARCERATED FOR MORE THAN 7.5 YEARS

Plaintiff will likely argue that he should recover for the approximately ten years he spent in confinement; specifically, from September 3, 2008, when he was arrested for questioning in

connection with Paris Jackson's murder, to July 18, 2018, when all charges against him were dismissed. (2d Am. Compl. ¶¶ 39, 57). Plaintiff should not be permitted to argue that he was wrongfully held in pretrial custody or seek damages for the time he was in pretrial custody from September 3, 2008, until January 6, 2011, when he was found guilty. (*Id.* at ¶ 39; June 9, 2011 Order (CCSAO_005731), attached hereto as Ex. 18). This Court has already found as a matter of law that probable cause existed for the prosecution of Brown. (Dkt. No. 294, at p. 22). Therefore he was lawfully detained before his criminal trial and cannot claim otherwise.

## ARGUMENT

Plaintiff's only non-derivative claims are the constitutional claims of due process (under the Fourteenth Amendment) and a coerced confession (under the Fifth and Fourteenth Amendments).[9] These are claims that arise out of the denial of a fair trial, and do not implicate any pretrial wrongdoing. Plaintiff's state law malicious prosecution claim, the only claim that concerned Plaintiff's pretrial detention, has been dismissed. (*See* Dkt. No. 294). If Plaintiff were to succeed on his claims, his damages must be limited to the time he spent in confinement following his conviction, *i.e.*, from January 6, 2011, until July 18, 2018 (approximately 7.5 years). (2d Am. Compl. ¶ 57; Ex. A).

Because the state law claim of malicious prosecution has been dismissed and there is no remaining Fourth Amendment claim, Plaintiff cannot seek any damages for pretrial detention. This Court dismissed Plaintiff's state law malicious prosecution claim, finding "that when the criminal complaint was filed, Defendants had probable cause to believe that Brown assisted in R.J.'s murder of Paris." (Dkt. No. 294, at p. 22). He has no state-law basis, therefore, to seek pretrial damages.

---

[9] *Supra* note 2.

As to his remaining due process and coerced confession claims, he also may not seek damages for pretrial detention because the detention as a result of a fair trial comes after he is convicted. The Supreme Court has specifically identified that the Fourth Amendment "establishes the standards and procedures governing pretrial detention" in criminal cases. *Manuel v. City of Joliet*, 580 U.S. 357, 360 (2017) (internal quotation marks and citations omitted). Courts in this circuit have recognized this to mean that claims seeking recourse for unlawful pretrial detention sound in the Fourth Amendment, rather than the Due Process Clause. *See, e.g.*, *Patrick v. City of Chicago*, 974 F.3d 824, 834-35 (2020) ("We have recently clarified the contours of constitutional claims based on allegations of evidence fabrication. A claim for false arrest or pretrial detention based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without probable cause . . . The essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process."); *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) ("[W]hen a plaintiff alleges that officials held him in custody before trial without justification . . . [t]here is only a Fourth Amendment Claim—the absence of probable cause that would justify the detention."); *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("The injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the Due Process Clause.").

To the extent Plaintiff seeks to recover for the time he spent in pretrial detainment (i.e., from September 3, 2008, until January 6, 2011), he is seeking to recover for a violation of his Fourth Amendment right to not be held without probable cause, not for a violation of his Due Process right to a fair trial. *See Patrick*, 974 F.3d at 834-35; *Lewis*, 914 F.3d at 479. Since Plaintiff's remaining claims are premised on his Due Process rights rather than his Fourth

Amendment right to not be held without probable clause, he may not seek damages for his pretrial detainment. (*See, e.g.*, 2d Am. Compl. ¶¶ 72-93).

Further, Plaintiff cannot use his alleged coerced confession to seek damages for pretrial custody. This Court made clear that it did not rely on Plaintiff's confession or the allegedly falsified evidence to determine that probable cause existed; rather, the Court specifically concluded that "the statements written by ASAs and adopted by witnesses establish probable cause." (Dkt. No. 294, at p. 17). Courts in this Circuit have routinely held that § 1983 plaintiffs cannot recover for time spent in pretrial detainment if probable cause existed. *See, e.g.*, *McWilliams v. City of Chicago*, 451 F. Supp. 3d 867, 879 (N.D. Ill. 2020), *aff'd*, No. 20-1770, 2022 WL 135428 (7th Cir. Jan. 14, 2022) ("Because the Defendant Officers had probable cause to arrest plaintiff for the brass knuckles, plaintiff cannot recover damages related to any pretrial detention that occurred after his arrest."). Accordingly, the Court must summarily reject Plaintiff's argument that he can recover for the time he spent in pretrial detention because the "tainted" evidence may have been considered during this time. *C.f. Wrice v. Byrne*, 488 F. Supp. 3d 646, 675 (N.D. Ill. 2020) (explaining that plaintiff, despite the use of his coerced confession at trial, could not recover for time spent in prison because "Wrice would not have been acquitted had the statement not been introduced.").

### DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO BAR ARGUMENT OR EVIDENCE SUGGESTING THAT DEFENDANT OFFICERS LACKED PROBABLE CAUSE

Plaintiff may attempt to argue or introduce evidence suggesting that Defendant Officers lacked probable cause to arrest and interrogate him. This Court has already ruled that probable caused existed for Defendant Officers to believe that Plaintiff assisted in R.J.'s murder of Paris. (*See* Summary Judgment Order, Dkt. No. 294, at 15-22). Plaintiff should not be permitted to

relitigate matters already decided by this Court; therefore, any argument or evidence suggesting that Defendant Officers lacked probable cause must be barred.

## ARGUMENT

Defendant Officers' request that the Court bar argument or evidence suggesting that Defendant Officers lacked probable cause is governed by the "law of the case" doctrine. "When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Williams v. City of Aurora*, 2024 WL 1195515, at *11 (N.D. Ill. Mar. 20, 2024) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1984)). Accordingly, the law of the case doctrine "binds a court to its own previous decision on issues arising earlier in the litigation." *Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997). The doctrine "is a rule of practice, based on the sound policy that, when an issue is once litigated and decided, that should be the end of the matter." *General Citrus Int'l v. Remien*, 2009 WL 2486164, at *3 (N.D. Ill. Aug. 10, 2009) (quoting *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 912 (7th Cir. 2005)).

Courts in this district have routinely applied the law of the case doctrine to grant motions in *limine* seeking to prevent parties from relitigating issues that were previously decided at the summary judgment stage. *Life Spine, Inc. v. Aegis Spine, Inc.*, 2023 WL 7919579, at *4 (N.D. Ill. 2023) (granting motion in *limine* in part because "[t]he court's prior rulings are law of the case and cannot be relitigated at trial without a showing of good cause"); *Dunkley v. Illinois Dep't of Human Servs.*, 2022 WL 4132462, at *2 (N.D. Ill. Sept. 12, 2022) (granting motion in *limine* and "bar[ring] Plaintiff from suggesting arguing, stating or otherwise introducing, in the presence of the jury" evidence concerning matters decided on summary judgment); *see also Kalra v. Adler Pollock & Sheehan, P.C.*, 2023 WL 363043, at *3 (D. Conn. Jan. 23, 2023) (granting motion in *limine* because "Plaintiffs' malpractice claim and breach of fiduciary duty claim have been decided on

the merits and shall not be relitigated as affirmative defenses to Defendants' counterclaims");

*United States v. Dish Network, L.L.C.*, (C.D. Ill. Dec. 7, 2015) (granting motion in *limine* to preclude litigating "the issues actually decided by this Court in its prior Opinion on summary judgment," which "constitute[s] the law of the case."). Here, the Court has already considered the relevant evidence and decided that probable cause existed. (*See* Dkt. No. 294, at pp. 15-22). Accordingly, the law of the case doctrine must preclude Plaintiff from arguing otherwise.

## DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO BAR TESTIMONY OR EVIDENCE RELATING TO MARISOL O'CAMPO'S PRIOR DRUG USE OR EMPLOYMENT HISTORY

Plaintiff will attempt to introduce evidence concerning O'Campo's prior drug use or her employment history at trial to imply to the jury that her testimony is unreliable. Indeed, during the parties' meet and confer concerning the motions *in limine*, Plaintiff's counsel represented that they intended to use this evidence to show the jury that O'Campo is "out to lunch" and is not a reliable witness. This evidence is inadmissible because it is irrelevant, unfairly prejudicial, and constitutes improper character evidence. Fed. R. Evid. 401-404.

## ARGUMENT

### I. O'Campo's Prior Drug Use

At the beginning of O'Campo's deposition, she testified that the day prior she had taken ecstasy. (O'Campo Depo. 12:11-15, attached as Ex. 19). Plaintiffs' counsel asked a series of questions to confirm whether O'Campo could proceed with the deposition, and she confirmed that she would be able to answer their questions truthfully. (*Id.* at 13:2-14:6). Any evidence or testimony that O'Campo used ecstasy, or that O'Campo has ever used any form of illegal substance, is irrelevant and unfairly prejudicial, and should not be admitted at trial.

It is well established that "there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness'

testimony." *United States v. Mojica*, 185 F.3d 780, 789 (7th Cir. 1999); *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060 (N.D. Ill. 2009) (quoting *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008)). For this reason, courts routinely preclude the introduction of evidence concerning a witness' prior drug use. *See, e.g.*, *Mojica*, 185 F.3d at 789 (affirming district court's decision to bar evidence of prior drug use); *United States v. Robinson*, 956 F.2d 1388, 1398 (7th Cir. 1992) (same); *Mason*, 631 F. Supp. 2d at 1060 ("This Court is mindful of the dangers of introducing evidence about drugs. These concerns strike at the heart of this Court's decision to bar such evidence in this case. The mere mention of Plaintiff's drug use would be highly inappropriate."); *see also United States v. Galati*, 230 F.3d 254, (7th Cir. 2000) (affirming district court's decision to bar evidence of drug possession conviction, explaining that "the district judge wisely gauged the potential for jurors to see Sims' prior drug possession conviction as a reason to discount her entire testimony, even though nothing about her conviction actually suggests the likelihood that she would be dishonest or deceitful."). *Lyles v. Gambino*, 2019 WL 5654227, at *4 (N.D. Ill. Oct. 31, 2019) (applying Rule 403 to permit introduction of felony convictions, but barring reference to the fact that those convictions were drug convictions because "evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony.").

Plaintiff's counsel has represented that they intend to use the fact that O'Campo took ecstasy the day before her deposition as evidence that she is "out for lunch" and is an unreliable witness. Courts in this circuit have repeatedly affirmed that this is not a proper use of evidence concerning a witness' prior drug use. *See, e.g.*, *Robinson*, 956 F.2d 1388, 1398 (7th Cir. 1992) ("The appellants, in sum, insist that witnesses who have previously used narcotics are more likely to tell lies. This is exactly the type of character attack that [is forbidden]"); *Mojica*, 185 F.3d at

43

789 (explaining that evidence of drug use cannot be "offered solely as a general character attack.");
*Mason*, 631 F. Supp. 2d 1052, 1061 ("It is entirely apparent to the Court that Defendant is pursuing
a strategy similar to the *Robinson* or *Neely* defendants, in that Defendant attempts to show that if
Plaintiff was a drug user, then his truthfulness is inherently suspect. Dr. Silberberg will not be
permitted to testify in furtherance of a such a strategy."). Accordingly, any reference to O'Campo's
drug use should be barred.

Plaintiff may argue that O'Campo's drug use is relevant because it could have impacted
her memory. The Seventh Circuit has made clear that "[t]he district court need only allow cross-
examination concerning a witness' past drug use if the witness' memory or mental capacity are
'legitimately at issue." *Robinson*, 956 F.2d at 1397 (7th Cir. 1992); *see also Mojica*, 185 F.3d at
789 (empowering district court to "refuse cross-examination on the issue [of drug use] where
memory or mental capacity is not legitimately at issue and the evidence is offered solely as a
general character attack."). The party seeking to use evidence concerning a witness' prior drug use
must proffer sufficient evidence to demonstrate that their memory or mental capacity are
legitimately at issue. *Mojica*, 185 F.3d at 789 (affirming district courts decision to allow testimony
concerning a witness' prior drug use "provided [the cross-examining party] could proffer evidence
that such use impaired his ability to recall and relate relevant events."). Plaintiff will be unable to
show that O'Campo's drug use "had affected [her] memory of relevant events"; therefore, any
testimony or evidence concerning her drug use must be barred. *See Robinson*, 956 F.2d at 1398.

O'Campo has given a statement or testified about this matter on four separate occasions;
specifically she: (1) provided a written statement to Assistant State's Attorney Michael Hogan,
(2) testified at Plaintiff's grand jury proceedings, (3) testified at Plaintiff's criminal trial, and (4)
testified, approximately fourteen years later, at a deposition in connection with the instant case.

(Statement of Marisol O'Campo, attached as Ex. 20; Marisol Ocampo Grand Jury Tr., attached as Ex. 21; Marisol Ocampo Trial Tr., attached hereto as Ex. 22).

On each occasion, O'Campo testified or indicated that: (1) she was at Amundsen Park (the "Park") on August 30, 2008, after a block party (Ex. 19, at 32:3-6, 34:11-16; Ex. 20, at p. 1; Ex. 21, at 4:19-5:4; Ex. 22, at 40:9-42:8), (2) that RJ and Marcel arrived at the Park in Marcel's car, (Ex. 19, at 64:2-65:16; 207:14-208:6; Ex. 20, at p. 2; Ex. 21, at 7:14-8:10; Ex. 22, at 45:22-46:16, 51:6-52:5, and (3) that she saw RJ point and fire a gun in the direction of others, including Paris, while in the park, (Ex. 19, at 36:1-37:24, 113:6-13; 194:8-196:5 Ex. 20, at p. 2-3; Ex. 21, at 10:18-11:22, ; Ex. 22, at 55:6-22, 60:23-61:24). She also repeatedly indicated that she saw RJ flee the scene towards Marcel's car, (Ex. 20, at p. 3; Ex. 21, at 12:9-19; Ex. 22, at 66:18-23).The consistency in Ocampo's statements or testimony concerning the events of August 30, 2008, demonstrates that her memory of the events relevant to this lawsuit is not legitimately at issue. Plaintiff's position is that O'Campo is lying, which is why he seeks to use evidence of her prior drug use to discredit her. This use of such evidence must not be allowed.

## II.     O'Campo's Employment History

During her deposition, O'Campo testified that she currently works at a strip club. (Ex. 19, at 11:17-24). Plaintiff may attempt to use this testimony as a way to discredit O'Campo. Courts have routinely held that references to a witness' employment at a strip club can be overly prejudicial. *Collins v. Univ. Park*, 2018 WL 11193174, at *2 (N.D. Ill. Sept. 25, 2018) (granting motion *in limine* "to bar evidence that [defendant's employer] was a strip club" because such evidence "is not relevant, not probative, and overly prejudicial") *Zucchella v. OlympUSA, et, Inc.*, 2023 WL 9379193, at *12 (C.D. Cal. Dec. 6, 2023) ("At Herran's deposition, Defense counsel asked whether Herran had ever worked as a stripper . . . Plaintiff seeks to preclude Defendants from this inquiry because it is irrelevant and unduly prejudicial. The Court agrees and grants

Plaintiff's Motion *in Limine* regarding this topic."). O'Campo's place of employment does not make any fact in this case more or less probable; therefore, her employment is irrelevant and all references to O'Campo's employment at a strip club are overly prejudicial and should be barred.

### DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO BAR MENTION OF OR QUESTIONING ABOUT CERTAIN TOPICS RELATED TO WILLIAM MARSH'S BACKGROUND

Defendants disclosed as a police practices expert William Marsh, a former detective sergeant of the Los Angeles Sheriff's Department with nearly 50 years of law enforcement experience. During his deposition, Plaintiff's counsel questioned Mr. Marsh on a number of irrelevant and highly prejudicial topics, including: (1) a prior civil lawsuit naming Mr. Marsh as a defendant; (2) general allegations of misconduct by the Los Angeles Sheriff's Department; (3) the alleged personal opinions of a former colleague, Michael Bumcrot; and (4) the United Arab Emirates being a "repressive regime" with a history of "human-rights abuses." Plaintiff should be barred from mentioning any of these topics in front of the jury because they are entirely irrelevant and highly prejudicial.

### ARGUMENT

The Court should bar Plaintiff from mentioning or asking Mr. Marsh questions about the following topics: (1) prior lawsuits or claims made against Mr. Marsh; (2) allegations of misconduct by the Los Angeles Sheriff's Department ("LASD"); (3) certain personal opinions expressed by Michael Bumcrot, a former colleague of Mr. Marsh; and (4) the United Arab Emirates being a "repressive regime" with a history of "human-rights abuses."

I.    **Prior Lawsuits, Civil Claims, or Incidents Involving Mr. Marsh**

Plaintiff issued a subpoena before Mr. Marsh's deposition requesting any records regarding complaints made about Mr. Marsh during his professional career. In response, Mr. Marsh disclosed

a LASD personnel file containing administrative investigations, civil claims, civil lawsuits, and an officer-involved shooting involving Mr. Marsh.

The Court should bar Plaintiff's counsel from mentioning or questioning Mr. Marsh about the incidents contained in the LASD personnel file. First, the incidents are irrelevant. Mr. Marsh will offer testimony about generally accepted police practices for conducting police interviews of suspects and witnesses. The incidents referred to in the LASD personnel file—most all of which are decades old—do not relate to Mr. Marsh's experience interviewing suspects or witnesses, let alone suggest in any way that Mr. Marsh has ever acted improperly when conducting interviews or otherwise acted inconsistently with his proffered testimony. Second, these incidents are certainly unfairly prejudicial; Plaintiff questioning Mr. Marsh about them would amount to nothing more than an attempt to muddy his reputation. As such, the evidence should be barred under Rules 401 and 403. *E.g.*, *Cazares v. Frugoli*, No. 13 CV 5626, 2017 WL 4150719, at *9–10 (N.D. Ill. Sept. 19, 2017) (barring evidence of unrelated citizen complaints and lawsuits as irrelevant and unfairly prejudicial)

Case in point: during Mr. Marsh's deposition, Plaintiff's counsel asked about a lawsuit included in the LASD personnel file; the lawsuit arose from an incident in 1992 where law enforcement officers fatally shot a suspect while executing a search warrant. (*See* W. Marsh Depo. Tr., attached as Ex. 23, at 8:12-9:4.) Though Mr. Marsh was named as a defendant, he did not participate in the officer-involved shooting, nor was he even present while law enforcement executed the search warrant. Also, the lawsuit makes no allegation against Mr. Marsh that relates in any way to coercive conduct or interrogating suspects similar to Plaintiff's allegations in this case. Even if it did, the case was settled without any admission by Mr. Marsh of wrongdoing, so it "proves nothing." *Slaven v. City of Chi.*, No. 95 C 7310, 1999 WL 1024563, at *1 (N.D. Ill. Nov. 1,

1999). Plaintiff should not be permitted to mention this lawsuit or other incidents contained in the LASD personnel file at trial.

## II.    General Allegations of LASD Misconduct

During Mr. Marsh's deposition, Plaintiff's counsel asked Mr. Marsh about a four-year period of nearly 50-year career that he was assigned to the LASD's Firestone Station. Plaintiff's counsel characterized the Firestone Station as being "plagued by scandal" and referenced unsourced allegations of various kinds of misconduct, including things like forming "deputy gangs" and killing suspects as a form of initiation. (Ex. 23 at 30:1-41:25.) Mr. Marsh had no personal knowledge of any of this alleged misconduct, and there is no evidence whatsoever suggesting Mr. Marsh engaged in any such alleged misconduct. (*Id.*) Plaintiff's counsel must be barred from raising this topic in front of the jury. It is irrelevant and unfairly prejudicial. *E.g.*, *Green v. Cty. of L.A.*, No. 2:12-cv-06007-CAS(CWx), 2014 U.S. Dist. LEXIS 85939, at *7 (C.D. Cal. June 19, 2014) (granting Defendant Los Angeles County's motion *in limine* to bar reference to "deputy gangs" and similar evidence as irrelevant and unfairly prejudicial)[10]; *Caldwell v. City of Chi.*, No. 08 C 3067, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010) (granting motion *in limine* to bar plaintiff from "referring to other police misconduct, criminal investigations, or publicized scandals"); *Fox-Martin v. Cnty. of Cook*, No. 09 C 1690, 2010 WL 4136174, at *4 (N.D. Ill. Oct. 18, 2010) (finding such evidence "has only minimal probative value and is highly inflammatory and prejudicial").

## III.    Personal Opinions of Michael Bumcrot

After Mr. Marsh partially retired from the LASD, he spent time working as an associate for Michael Bumcrot consulting. Mr. Bumcrot is also a retired LASD homicide detective, and

---

[10] Defendant Officers note the Court's preference for Westlaw citations but could not find a Westlaw citation for *Green v. Cty. of L.A.* Defendant Officers have included a copy of the decision as Ex. 24.

Mr. Marsh assisted Mr. Bumcrot in conducting private investigations or in providing expert opinions, mostly in cases of officer-involved shootings. (Ex. 23 at 72:4-73:1.) Plaintiff's counsel asked Mr. Marsh about allegations that Mr. Bumcrot was a racist and apparently posted comments on a personal Facebook page regarding the confederate flag and Rev. Al Sharpton. (*Id*. at 73:16-74:14.) Mr. Marsh testified he had no knowledge of Mr. Bumcrot's alleged posts or comments or any impact they may have had on Mr. Bumcrot's business. (*Id*.) Mr. Marsh also testified he did not assist Mr. Bumcrot in any work involving alleged false confessions, including in the "Marquette Park Four" lawsuit where apparently Plaintiffs' counsel (many of whom also represent Plaintiff in this case) asked Mr. Bumcrot about these personal comments at Mr. Bumcrot's deposition. (*Id*.) Plaintiff must be barred from mentioning Mr. Bumcrot or questioning Mr. Marsh about this topic at trial. Mr. Marsh had no involvement or knowledge of this matter that is apparently limited to the personal views expressed by a person who is not an expert in this case. It is irrelevant. Fed. R. Civ. 401. And needless to say, asking Mr. Marsh about alleged racist remarks of a former colleague would only serve to encourage the jury to conclude that Mr. Marsh shares these alleged views, and therefore, such questions should also be barred as unfairly prejudicial, especially given they have no probative value. Fed. R. Evid. 403.

## IV. United Arab Emirates

Finally, at Mr. Marsh's deposition, Plaintiff's counsel asked Mr. Marsh about a six-month period that Mr. Marsh spent in the United Arab Emirates ("UAE") conducting law enforcement trainings while Mr. Marsh worked for a company called the Lexington Security Group. Mr. Marsh said the instruction he provided did not relate to interviewing suspects or witnesses but rather dealt with things like securing buildings and other tactical training. (Ex. 23 at 68:22-71:7.) Plaintiff's counsel asked about Mr. Marsh's knowledge regarding the UAE being a "repressive regime" with

a history of "human rights abuses on the part of law enforcement" that include "reports of arbitrary arrest and…incommunicado detention." (*Id*. 69:15-20, 71:8-72:3.)

The questioning by Plaintiff's counsel suggests that Plaintiff intends to raise this topic at trial and apparently imply that Mr. Marsh is responsible for or complicit in the generalized claim that UAE law enforcement engages in human rights abuses including improper arrest and "incommunicado detention." Plaintiff must be barred from doing so. Mr. Marsh testified that none of the training he provided related to conducting interviews or interrogations of citizens, and Mr. Marsh also testified that he did not witness any abuses or have any knowledge of the allegations raised by Plaintiff's counsel. (*Id*. at 70:12-71:25.) As such, this topic has no connection to Mr. Marsh's proffered testimony, and once again, permitting questions on this topic would only serve to suggest to the jury that Mr. Marsh is somehow responsible for the UAE's alleged bad acts. Raising the topic should be barred as irrelevant and unfairly prejudicial. Fed. R. Evid. 401; Fed. R. Evid. 403.

### DEFENDANTS' MOTION *IN LIMINE* NO. 13 TO BAR STATEMENTS MADE BY JUDGE GAINER AND TO BAR EVIDENCE RELATING TO THE DETAILS OF PLAINTIFF'S POSTCONVICTION PROCEEDINGS, INCLUDING HOW OR WHY PLAINTIFF'S POSTCONVICTION RELIEF WAS GRANTED

At trial, Plaintiff will most certainly attempt to introduce statements that were made by the state court judge, Judge Gainer, in connection with his criminal trial and postconviction proceedings. Plaintiff will also likely try to introduce evidence or testimony concerning the details of his postconviction proceedings, including how or why he was granted postconviction relief. Statements by Judge Gainer as well as the details of Plaintiff's postconviction proceedings are irrelevant to this matter and, therefore, inadmissible, as such evidence cannot prove any element of Plaintiff's claims. Fed. R. Evid. 401; Fed. R. Evid. 402. Even if this evidence had any minimal probative value (it does not), such value would be far outweighed by its unfair prejudicial effects.

Fed. R. Evid. 403. For instance, permitting Judge Gainer's statements, from proceedings in which the Defendants were not a part of, creates the risk that the jury will wrongly conflate such statements as a court's binding opinion concerning this case. This evidence should not be admitted, as allowing this evidence will undoubtedly inflict unfair prejudice, waste time, and prolong the trial.

## ARGUMENT

### I.    Judge Gainer's Statements

It is likely that Plaintiff will attempt to introduce statements made by Judge Gainer, the judge who tried his criminal case and presided over his postconviction proceedings, in an attempt to improperly influence the jury. For example, Judge Gainer, when ruling on a post-trial motion for a new trial, made the following side comment:

> I sat for months listening to the evidence and I'm thinking the whole time I'm there, I'm saying wow. This is a very, very, very weak case on Brown until I heard the statements and the statements put everything in the whole new light. Everything that Brown did that night when illuminated by the light of those statements changes. This is not the Taylor case. This is a completely different case. This is—Marcel Brown is not Tory Taylor. It's unfortunate for Marcel Brown that he didn't understand the law of accountability when he was making his statements but his statements clearly make him accountable for the acts of Renard.

(Trial Tr. at MB 3491-92, attached hereto as Ex. 25). Further, during Plaintiff's postconviction proceedings, Judge Gainer commented as follows:

> I think it's important to remember what you all and I know about this case, this thing was a mystery. There was a body found in Amundsen Park in broad daylight after there was a shooting in the park during the late evening hours and after the police had swept the entire area and didn't find a body. After the area was cleared, there was no more shooting, the police did what they do, they never found a body. The body wasn't found until the next morning in broad daylight when apparently someone who worked in the fieldhouse came on the scene. So this thing was a mystery. And what's the first break they got in this mystery, they got a young man who was in custody and was talking.

(MB-00003356, p. 43, attached hereto as Ex. 26). Foremost, each of Judge Gainer's statements constitute inadmissible hearsay and, therefore, should be barred. Indeed, it is "plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay." *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007). Plaintiff's only purpose for introducing these statements is to influence the jury: That is, because a judge said the government's case was "weak" or the circumstances surrounding this case were a "mystery" it must be true. Accordingly, the statements must not be permitted. *Id.* ("The government wanted the jury to agree with Judge Carr's conclusions that Sine was not acting as a good faith fiduciary in conducting the Ohio litigation. So, unless the order comes with a hearsay exception recognized by the Federal Rules of Evidence, the references to the order should not have been allowed.").

Further, well-established precedent precludes admission of judicial statements like those set forth above. "A judgment is a solemn record. Parties have a right to rely upon it. It should not be lightly disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision." *Perkins v. LeCureux*, 58 F.3d 214, 220 (6th Cir. 1995) (quoting *Fayerweather v. Ritch*, 195 U.S. 276, 306–07 (1904)) (concluding that the district court erred by considering "a statement made by the sentencing judge ten years after the fact, regarding his thought processes at the time of sentencing."). Accordingly, courts, when presiding over a subsequent proceeding, have routinely excluded from evidence both testimony and court transcripts regarding the trial judge's thought process. *See, e.g.*, *Schultz v. Thomas*, 832 F.2d 108, 111 (7th Cir. 1987) ("Judge Flynn's findings and opinions regarding Schultz's arrest and subsequent prosecution are irrelevant to an adjudication of his civil rights claim."); *Fisher v. Krajewski*, 873 F.2d 1057, 1062-64 (7th Cir. 1989) (affirming decision to bar the reading of

excerpts from magistrate's prior opinion "[b]ecause we are confident that admission of this evidence would usurp the jury's freedom . . . and would unfairly prejudice Judge Krajewski in denying him the right to have a fair and impartial jury decide the facts."); *Henriquez v. City of Los Angeles*, 2012 WL 13226590, at *3 (C.D. Cal. July 12, 2012) ("Allowing the jury to hear the criminal trial judge's evaluation of the credibility of a witness's testimony is highly prejudicial and usurps the responsibilities of the jury, since the jurors will have their own opportunity to evaluate the credibility of those witnesses at trial and should be free to make their own credibility evaluations. Any probative value that evidence may possess is substantially outweighed by its high potential for prejudice."); *see also Perkins*, 58 F.3d at 220 (statement made by sentencing judge ten years later regarding judge's thought processes at time of sentencing must not be considered in habeas proceeding); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986) (upholding a district court's refusal to admit the text of an arbitration decision and "the arbitrator's comments and findings" because it would "either usurp the jury's role in assessing credibility or would be unfairly prejudicial").

In *Schultz v. Thomas*, the criminal trial court judge made findings concerning the reliability of statements made by the defendant officers. 832 F.2d at 109-10 (7th Cir. 1987). During the plaintiff's civil rights trial, the court admitted into evidence the text of the trial judge's transcribed oral decision, which contained his determinations concerning the witnesses' credibility. *Id.* at 110. On appeal, the Seventh Circuit ruled that it was improper for the statements to be admitted, as "the aforequoted excerpts from Judge Flynn's opinion so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them." *Id.* at 110-11. The court ultimately remanded the matter for a new trial, explaining that the prior judge's "findings

and opinion regarding [plaintiff's] arrest and subsequent prosecution are irrelevant to an adjudication of his civil rights claim." *Id.* at 111.

Similarly, in *Fisher v. Krajewski*, the Seventh Circuit was tasked with determining whether "the jury should have been informed that the magistrate had previously ruled against [the defendant] in [a prior proceeding]." 873 F.2d at 1062. The Seventh Circuit, relying on Schultz, affirmed the district court's decision to bar "evidence underlying [the defendant's] contempt citation and the magistrate's decision in [the prior case]." Id. at 1064. The court explained that it was:

> confident that admission of this evidence would usurp the jury's freedom to assess the credibility of each and every witness and to determine whether or not there was a political firing in this case, and would unfairly prejudice Judge Krajewski in denying him the right to have a fair and impartial jury decide the facts.

*Id.* at 1064 (internal quotation marks omitted).

Both *Schultz* and *Fisher* support Defendant Officers' argument that Judge Gainer's statements must not be introduced at trial because they would improperly influence the members of the jury into adopting Judge Gainer's musings on this matter as their own opinions. If the jury were to hear Judge Gainer's statements, it would influence its members' assessment of Plaintiff's confession. Judge Gainer's comments that he believed the case against Plaintiff, without Plaintiff's confession, was weak—which were made in hindsight, significantly after the guilty verdict was entered—will improperly influence the jurors to conclude that Plaintiff would not have been convicted without the confession. Further, Judge Gainer's comments that there is a "mystery" surrounding this case—which were made over a decade after he issued a guilty verdict—would influence the jury to conclude that Defendant Officers coerced Plaintiff's confession to close the case. The use of Judge Gainer's statements would encroach on the jury's role as the fact finder in

54

this case and would unfairly prejudice Defendant Officers. Therefore, all such statements must be barred.

## II.     Plaintiff's Postconviction Proceedings

Defendant Officers do not dispute that Plaintiff received postconviction relief. However, Plaintiff's postconviction proceedings involved issues separate from the issues relevant to this case. Therefore, testimony or evidence relating to the details of Plaintiff's postconviction proceedings, including how or why Plaintiff's postconviction relief was granted, are simply not relevant. The Order granting Plaintiff's postconviction relief clearly indicated that the "Court conducted an evidentiary hearing on petitioner's claim that he was denied his right to counsel when an attorney hired by his family appeared at the police station and was denied access to petitioner who was in police custody." (July 18, 2018 Order (CCSAO_6021), attached hereto as Ex. 27). Further, the Order expressly "vacated petitioner's conviction and granted a new trial based on its finding that petitioner was denied his right to counsel [under Illinois law] while he was in custody at the police station." (Id.).[11]

Foremost, and as explained above, evidence surrounding Plaintiff's post-conviction proceeding is inadmissible hearsay, and should not be admitted. *Sine*, 493 F.3d at 1036 ("It is even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay." Further, the details surrounding Plaintiff's postconviction proceedings are not relevant and highly prejudicial. As explained in Defendants' Motion in Limine #1 to Bar Testimony or Evidence Relating to Stephen "Wham" Cary, which concerns testimony from the lawyer who was

---

[11] Plaintiff specifically "claim[ed] that he was denied his rights under the Illinois Constitution as articulated in People versus McCauley, based on the denial of access to counsel at the police station where he was under custodial interrogation." (June 19, 2018 Hearing Tr, at 2 (CCSAO_005974), attached hereto as Ex. 28).

purportedly denied access to Plaintiff, whether Plaintiff's rights under the Illinois constitution were violated is not relevant to the trial and introduction of such evidence would unfairly prejudice Defendant Officers. The details surrounding Plaintiff's postconviction proceedings should not be admitted for the reasons set forth in Defendants' Motion in Limine #1, as well as for the reasons set forth below.

### A. Evidence relating to Plaintiff's postconviction proceedings is irrelevant because it cannot help prove any element of Plaintiff's claims.

Evidence is not admissible at trial unless it is relevant. Fed. R. Evid. 402. Evidence is relevant only if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action" Fed. R. Evid. 401. In determining whether evidence bears on a fact of consequence, courts frequently look at what a party must prove to prevail on a claim or defense. *See, e.g.*, *United States v. Hamzeh*, 986 F.3d 1048, 1052 (7th Cir. 2021) ("[W]hat must be proven at trial in this case is germane to the relevance inquiry."). Evidence concerning Plaintiff's postconviction proceedings is irrelevant because it cannot help prove: (i) a constitutional violation; or (ii) any other element of Plaintiff's claims.

#### a. Evidence concerning Plaintiff's postconviction proceeding, which concerns a violation of rights under the Illinois Constitution, has no bearing on whether Plaintiff's rights under the U.S. Constitution were violated.

Plaintiff's claims all rely on the premise that Defendant Officers violated Plaintiff's constitutional rights under the U.S. Constitution. More specifically, the claims require Plaintiff to prove Defendant Officers violated his rights under the Fifth Amendment or Fourteenth Amendment.[12] The evidence relating to Plaintiff's postconviction proceedings cannot prove either violation. "A suspect in police custody does not have a constitutional right to be notified that his attorney is at the stationhouse." *First Def. Legal Aid v. City of Chicago*, 319 F.3d 967, 968 (7th

---

[12] *Supra* note 2.

Cir. 2003); *Moran v. Burbine*, 475 U.S. 412, 422-34 (1986) (holding Fifth Amendment does not "require that police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights"). In other words, when a suspect knowingly waives his *Miranda* rights and does not request an attorney, police are under no constitutional obligation to notify the suspect that an attorney is attempting to reach them. *Moran*, 475 U.S. at 424-34. (finding police's refusal to inform murder suspect that attorney was attempting to reach him does not violate suspect's rights under the Fifth Amendment); *Vainder v. Powell*, 2004 WL 1660618, at *9 (N.D. Ill. July 26, 2004) (concluding police do not violate a suspect's constitutional rights "by failing to inform him that counsel is present and asking to see him").

Plaintiff received postconviction relief based on the application of a state law case, *People v. McCauley*, which provides that the "failure to apprise defendant of communications from his attorney" can result in a violation of the defendant's right to counsel under the Illinois constitution. 163 Ill. 2d 414, 446 (1994). Such conduct does not amount to a violation of an individual's rights under the U.S. Constitution. *Moran* and its progeny make clear that police mistreatment of a suspect's attorney should have no bearing on whether the police violated a suspect's Fifth Amendment rights, particularly where the suspect had no knowledge an attorney was trying to make contact. *Moran* also squarely rejected the argument that police deceiving an attorney amounted to a violation of a suspect's Fourteenth Amendment due process rights. 475 U.S. at 432-434. While *Moran* suggests (in dicta) that "egregious" police deception **could** violate a suspect's Fourteenth Amendment rights if it "shocks the sensibilities of civilized society," *id*., the Supreme Court has not yet found any police misconduct which meets this high bar, nor has it provided standards to help determine what constitutes sufficiently egregious behavior. *Hyatt v. Branker*, 569 F.3d 162, 170-71 (4th Cir. 2009) (noting lack of standards and rejecting argument that failing

to tell suspect about lawyer's presence at sheriff's office could amount to "police deception" constituting due process violation).

Despite a lack of explicit standards, *Moran* clearly demonstrates that this case does not present the sort of egregious police deception that can violate the Fourteenth Amendment. In *Moran*, a suspect was arrested for burglary, and police learned the suspect may have committed an unrelated murder. *Id*. at 416 While the suspect was being held, his sister contacted the public defender's office to represent him on the burglary charge, and an assistant public defender, in turn, called the police department and notified them that she wanted to be present for any questioning or police lineups. *Id*. at 417. Police told the assistant public defender that the suspect would not be questioned until the following day; police did not say anything about the murder or that another police department was en route to question the suspect about the murder. *Id*. The suspect later confessed to the murder during questioning. *Id*. at 418. Ultimately, the Court concluded that police "conveying false information to an attorney" did ***not*** violate the Fourteenth Amendment. *Id*. at 432.

Applying *Moran*, courts have found other instances of police deception—like lying about a suspect's location, lying about how long a suspect would be held in custody, or even telling a suspect her lawyer had abandoned her—could not amount to a due process violation. *E.g.*, *United States v. Hankey*, 203 F.3d 1160, 1173-75 (9th Cir. 2000) (affirming decision to bar evidence that police misled attorney into thinking suspect's "release was imminent" and rejecting argument that evidence was relevant to issue of voluntariness of confession); *Matney v. Armontrout*, 956 F.2d 824, 825-26 (8th Cir. 1992) (finding police repeatedly and falsely telling attorney that suspect was not at police station did not "rise to the level of culpability" required for a due process violation); *Tinker v. Beasley*, 429 F.3d 1324, 1328-29 (11th Cir. 2005) (discussing *Moran* and finding officers

falsely telling suspect that attorney "had abandoned her" and then questioning her multiple times over three days did not constitute due process claim). Clearly, this case presents no more egregious conduct than *Moran*, *Hankey*, *Matney*, or *Tinker*. Plaintiff's allegations, even if true, do not constitute a Fourteenth Amendment violation.[13]

> **b. Evidence concerning Plaintiff's postconviction proceeding cannot help prove any other element of Plaintiff's claims.**

In addition to being irrelevant as to whether Plaintiff's constitutional rights were violated, evidence concerning Plaintiff's postconviction proceedings cannot help prove any other element of Plaintiff's claims. Plaintiff implicitly concedes as much in his pleadings. In his Complaint, Plaintiff only alludes to the purported denial of access to counsel when alleging his *Monell* claim, which has been bifurcated from trial, and his state law malicious prosecution claim, which was dismissed on summary judgment. (Dkt. 136 at ¶¶ 97, 103.) In fact, the malicious prosecution claim was Plaintiff's only claim that required showing the underlying criminal proceeding was terminated in his favor. *See Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022) (providing elements of claim). Now that his malicious prosecution claim is gone, Plaintiff can prevail on his claims without presenting any evidence that his conviction was vacated (let alone the entire story of *how* it was vacated).

Defendant Officers anticipate that Plaintiff may argue that the evidence concerning his postconviction proceedings is somehow relevant to his conspiracy claims. Such an argument must fail because Plaintiff cannot connect any of the Defendant Officers to the purported violation of his rights under the Illinois constitution. As explained in Defendants' Motion *in Limine* #1, there is no evidence in the record showing that the Defendant Officers participated in turning Plaintiff's

---

[13] Whether conduct is "shocking" enough to violate the Fourteenth Amendment is a question of law, so this question is appropriately determined by the Court and not a jury. *See Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998).

attorney away, knew that it happened, or knew that the attorney ever claimed to represent Plaintiff. Even assuming Plaintiff's attorney was actually turned away, no one has been able to identify the police officers who allegedly told the attorney that Plaintiff did not want to speak with him. Given the record, evidence of how unidentified officers treated Plaintiff's attorney cannot be imputed to Defendant Officers or otherwise support Plaintiff's conspiracy claims.

To prevail on his conspiracy claims, Plaintiff must prove that the conspirators formed an agreement or reached an understanding to deprive Plaintiff of his *federal* constitutional rights; he has no other state law claims of misconduct pending. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (noting § 1983 conspiracy claim requires plaintiff prove conspirators "reached an understanding to deprive the plaintiff of his constitutional rights"); *Vance v. Chandler*, 231 Ill. App. 3d 747, 750, 597 N.E.2d 233 (Ill. Ct. App. 1992) (noting "agreement between two or more persons" is necessary element to state law civil conspiracy claim).[14]

As explained in Defendants' Motion *in Limine* #1, there is no evidence in the record that shows—or permits a reasonable inference—that any of the Defendant Officers formed an agreement or understanding with the officers who allegedly interacted with Plaintiff's attorney. So even assuming that the Defendant Officers engaged in a conspiracy, there is no evidence to support the conclusion that the unidentified officers who encountered Plaintiff's attorney were part of the

---

[14] To prevail on his state law civil conspiracy claim, Plaintiff must prove: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Vance*, 231 Ill. App. 3d at 750. The only "unlawful act" Plaintiff has identified is Defendants Officers' alleged violation of Plaintiff's U.S. constitutional rights. In other words, Count VIII is a state law civil conspiracy claim, if it survives at all, must be premised on U.S. constitutional violations. (*See* Dkt. 276 at 15-16 (arguing that, if his malicious prosecution claim failed, his Section 1983 claims could provide the act supporting civil conspiracy claim); *see also* Dkt. 294 at 23-25 (accepting Plaintiff's theory that Section 1983 provides the "unlawful act" to anchor the state law civil conspiracy claim)). For sake of preservation, Defendants maintain that a state law civil conspiracy claim cannot be based on a violation of federal law. (Dkt. No. 246, at pp. 10-11). However, Defendants understand that this Court ruled otherwise at summary judgment.

conspiracy. Such a conclusion would be pure speculation, which is impermissible. *Moran*, 54 F.4th at 500 (finding that state law civil conspiracy claim failed because plaintiff offered insufficient evidence of "any agreement or scheme" among the alleged conspirators); *Cooney v. Casady*, 735 F.3d 514, 518-20 (7th Cir. 2013) (rejecting plaintiff's argument that evidence showing "knowledge and opportunity" to conspire could be sufficient to prove an agreement for § 1983 conspiracy claim and noting that "[o]nly speculation and conjecture could result in a finding that defendants conspired"); *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (noting that circumstantial evidence like "numerous phone calls" between alleged conspirators proves only that they communicated, not that they engaged in conspiracy). Because there is no evidence showing that Defendant Officers and the unidentified officers formed an agreement or understanding of any kind, evidence of the unidentified officers' conduct is irrelevant to Plaintiff's conspiracy claims.

The details concerning Plaintiff's postconviction proceedings have no bearing on whether Defendant Officers violated Plaintiff's rights under the Fifth or Fourteenth Amendment and cannot prove any element of his claims. Therefore, the Court should bar Plaintiff from seeking to introduce the details surrounding his postconviction proceedings at trial.

B. **Even if deemed relevant, evidence relating to Plaintiff's postconviction proceedings should be barred because it is unfairly prejudicial, will confuse the jury, distract from the real issues, and will waste trial time.**

Rule 403 provides that relevant evidence should be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, or wasting time. Fed. R. Evid. 403. Permitting Plaintiff to introduce evidence concerning his postconviction proceedings presents all these dangers.

Critically, allowing Plaintiff to present evidence concerning his postconviction proceedings would likely confuse what is at issue at trial. Throughout this litigation, Plaintiff has conceded that his postconviction relief was premised on a violation of the Illinois constitution.

61

(*See, e.g.*, Dkt. 136 at ¶ 41 (citing *People v. McCauley*, 645 N.E.2d 923 (Ill. 1994).) But whether unidentified officers violated the Illinois constitution will be an issue of no consequence at this trial because the alleged violation has no bearing on whether Plaintiff prevails on his claims. *See Vainder*, 2004 WL 1660618 at *9 (noting that an allegation that police failed to inform plaintiff of counsel's presence may violate the Illinois constitution—which does not provide for a cause of action for damages—but could ***not*** give rise to a § 1983 claim); *cf. Thompson v. City of Chi.*, 472 F.3d 444, 457 (7th Cir. 2006) (barring under Rule 403 evidence of CPD general orders because evidence was irrelevant to § 1983 claims, had limited relevance to state law wrongful death claim, and would likely create confusion that CPD general orders established duty of care). In a trial that revolves around proving violations of rights under the U.S. Constitution, evidence relating to a violation of the Illinois constitution is almost certain to cause confusion, especially given the parties will engage in a "mini-trial" about actually happened. *Manuel v. City of Chi.*, 335 F.3d 592, 597 (7th Cir. 2003). Indeed, Plaintiff is almost certain to argue to the jury that turning his attorney away contributed to the "coerciveness" of the police interview, but this would improperly warp how a jury assesses Plaintiff's claim because, again, the inquiry of whether Plaintiff's confession was voluntary looks only at what Plaintiff knew and was experiencing – not what may have been happening in the background unbeknownst to him. *See Moran* 475 U.S. at 422-24.

Second, allowing Plaintiff to present this evidence would unfairly prejudice Defendant Officers and could mislead the jury. As explained above, the police officers who allegedly turned away Plaintiff's attorney have never been identified and, thus, have never had a chance to respond to and refute the attorney's allegations. *Stassen v. Vill. of Arlington Heights*, 2002 WL 485664, at *4 (N.D. Ill. Apr. 1, 2002) (barring evidence of statement from unidentified officer and noting it was proper to do so under Rule 403 because it would be impossible for defendants to refute

"without calling virtually the entire police force to testify"). Again, there is no evidence showing that Defendant Officers participated in or had knowledge of what happened to Plaintiff's attorney at the police station. Yet, at trial, if a jury believes Plaintiff's story, Defendant Officers will be the only individuals there for the jury to blame. In other words, allowing this evidence would almost certainly create the risk of misleading the jury to improperly attribute the unidentified officers' conduct to Defendant Officers. *See, e.g., Holmes v. City of Chicago*, 2016 WL 6442117, at *14–15 (N.D. Ill. Nov. 1, 2016) (barring evidence of past complaints against defendant officer's team members in part because of "significant Rule 403 problems" including risk that jury would improperly attribute non-defendant team members' practices to the individual defendant); *see also Holder v. Interlake S.S. Co.*, 2018 WL 1725694, at *9-10 (W.D. Wis. Apr. 10, 2018) (barring evidence of OSHA violations against one party in part because of risk that the evidence would mislead a jury to use the OSHA violations to support a claim of negligence against another party); *Bartos v. Pennsylvania, Dep't of Env't Prot.*, 2012 WL 1246782, at *5 (M.D. Pa. Apr. 13, 2012) (barring evidence that non-defendant state employees lied during deposition out of "antipathy" for plaintiff because "serious risk that the jury would improperly attribute the conduct" to the defendants).

Finally, allowing Plaintiff to delve into his postconviction proceedings will certainly waste precious trial time. For the reasons explained above, evidence and testimony concerning Plaintiff's postconviction proceedings amount to a detour with no legal import for Plaintiff's claims or Defendant Officers' defenses. At best, such details provide background information as to the fact that Plaintiff's conviction was vacated—a fact that is not in dispute. Such background information provides minimal probative value, and "[e]vidence providing minimal probative value is admissible only if it bears a remote risk of prejudice." *United States v. Boros*, 668 F.3d 901, 909-

10 (7th Cir. 2012) (barring background evidence under Rule 403). There is certainly more than a remote risk of prejudice here. The evidence should be barred.

## DEFENDANTS' MOTION *IN LIMINE* NO. 14
## TO BAR UNDISCLOSED THEORIES OF LIABILITY

Plaintiff may attempt to introduce undisclosed theories of liability at trial. This case has been pending for over five years, fact discovery has been closed for nearly two years, expert discovery has been closed for ten months, and the theories of liability were examined and ruled on by this Court at summary judgment. Plaintiff cannot seek to introduce at trial a theory of liability that he has failed to allege in his Complaint, disclose in response to interrogatories, or argue in response to summary judgment. For example, if he never argued in response to Defendants' motion for summary judgment on the *Brady* claim that a certain piece of exculpatory evidence was withheld during criminal proceedings, he cannot at trial try to introduce that as a new theory for his *Brady* claim. The time to introduce new theories of liability has passed, and the introduction of any such theories will unfairly prejudice Defendant Officers. Accordingly, all arguments or evidence concerning undisclosed theories of liability must be barred.

## ARGUMENT

It is well established that the Federal Rules empower district courts to manage trials. *See, e.g.*, *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874 (7th Cir. 2011); *Next Payment Sols., Inc. v. Clearesult Consulting, Inc.*, 2023 WL 7196125, at *13 (N.D. Ill. Apr. 17, 2023). This includes "the power to stand guard against unfair surprise" by rejecting a party's attempt to "raise a new theory of liability at late stages in the case." *Next Payment Sols., Inc.*, 2023 WL 7196125, at *13. "In fact, the district court's power to exclude new theories begins long before the eve of trial. A district court can exclude new theories introduced after summary judgment briefing has begun." *Id.* at *14; *see also Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005)

("Surprises' such as new arguments or defense theories propagated after the completion of discovery and filing of summary judgment are wisely discouraged."); *Bethany Pharm. Co. v. QVC, Inc.*, 241 F.3d 854, 862 (7th Cir. 2001) ("[A]llowing [plaintiff] to add [a new claim] would have required additional delays in the resolution of the case to allow [defendant] to respond to a new theory of liability. We do not require a district court to tolerate such delays.").

Courts have observed that it is unfairly prejudicial for defendants to have to defend against new theories of liability at trial that were not clearly pled and were never disclosed during discovery or during the summary judgment briefing process. *United States ex rel. Patzer v. Sikorsky Aircraft Corp.*, 2024 WL 1671447, at *17 (E.D. Wis. Apr. 18, 2024) ("[I]t would unfairly prejudice defendants to have to defend against claims at trial that the government did not clearly plead and did not explicitly mention at any time during discovery, during pretrial conferences held for the express purpose of identifying the claims to be pursued at trial, or during briefing on motions for summary judgment."); *Next Payment Solutions, Inc.*, 2023 WL 7196125, at *13 (explaining that introducing new theories of liability on the eve of trial unfairly "throws a wrench into the plans of opposing counsel" and observing that "it is unfair to throw a proverbial hand grenade under the other side's tent, shortly before packing up for trial."); *see also Client Funding Sols. Corp. v. Crim*, 943 F. Supp. 2d 849, 853 (N.D. Ill. 2013) (denying request to amend complaint to add new theory of liability in order to "avoid prejudice to [defendant]"). Accordingly, courts have routinely granted motions *in limine* to bar the introduction of new or previously undisclosed theories of liability at trial. *See, e.g.*, *Aldridge*, 635 F.3d at *875-76 (affirming denial of motion *in limine* to preclude amendment of the complaint and the introduction of new theories of liability where "the district court was well within its discretion to deny [the plaintiff's] motion for leave to file an amended complaint because defendants did not consent to add this theory of liability and

they were not proceeding as such. Further, the amendment would have added a new theory of liability to the case at the late stage of the proceedings."); *Sikorsky Aircraft Corp.*, 2024 WL 1671447, at *17 (granting motion *in limine* to bar new fraud-in-the-inducement theory of liability); *In re C2R Global Mfg., Inc.*, 2021 WL 1346047, at *6 (Bankr. D. Wis. Mar. 30, 2021) (granting motion in *limine* because "[b]ased on the language of Verde's complaint and the way in which Verde has prosecuted this suit, C2R had no notice that Verde intended to pursue liability on any claims *other than* C2R's numerical capacity representations until after discovery closed and during summary judgment briefing" and because "[a]t this late date, it would be unfair and prejudicial to C2R to allow Verde to argue that C2R violated the Lanham Act by making other categories of false statements.").

In *Next Payment Solutions, Inc.*, the defendant filed a motion *in limine* to exclude arguments or evidence in support of a new theory of liability. *Id.* The Court granted the motion, explaining that:

> Parties who have litigated a case for years should not get subjected to new theories of liability on the eve of trial. Announcing a new theory of liability late in the game comes with significant costs. It creates uncertainty. It interferes with the ability to settle cases. It throws a wrench into the plans of opposing counsel. It strains judicial resources, which have real-world limits. It creates new distractions, new risks, and new headaches. Last-minute changes create a danger of sandbagging, too. It is unfair to throw a proverbial hand grenade under the other side's tent, shortly before packing up for trial. If allowed, unveiling new theories would create an opportunity for tactical gamesmanship. That approach would stand the Federal Rules on their head, because the Federal Rules favor disclosure.

*Id. (citing* Fed. R. Civ. P. 26). Similarly, this case is extremely complicated and has been litigated for over five years. The parties have retained several experts and have deposed nearly fifty witnesses. Fact discovery has been closed for nearly two years and summary judgment briefing has been completed and ruled upon. It would greatly prejudice Defendant Officers if Plaintiff were

permitted to introduce new theories of liability at this stage in the litigation; therefore, he should be precluded from doing so.

## DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO BAR REFERENCE TO PLAINTIFF'S CERTIFICATE OF INNOCENCE

Plaintiff was convicted at a bench trial on January 6, 2011, for first-degree murder for his role in the murder of Paris Jackson ("Jackson"). The Illinois Appellate Court affirmed Plaintiff's conviction on March 18, 2014. Plaintiff next filed a motion seeking postconviction relief. The court granted Plaintiff's postconviction relief in 2018, not because of anything Defendant Officers did but, rather, because it found that an attorney should have been permitted to see Plaintiff during his interrogation relating to the Jackson murder. (*See* Ex. 29).

Following the June 19, 2018 decision to vacate Plaintiff's conviction, the Cook County State's Attorney's Office ("CCSAO") decided not to retry Plaintiff for Jackson's murder when it dismissed the charges via *nolle prosequi* on July 18, 2018. (*Id.*). This dismissal had the effect of terminating the criminal proceeding against Plaintiff.

After the dismissal of the criminal charges, Plaintiff petitioned the Circuit Court for a certificate of innocence ("COI") pursuant to 735 ILCS 5/2-702. This petition was granted, and Brown received his COI on June 7, 2019. Defendant Officers were not parties to this hearing and were not made aware that Plaintiff was seeking a COI.

## ARGUMENT

Plaintiff intends to introduce evidence, testimony, and argument at trial regarding his COI. The COI should be excluded for several reasons: (1) the COI is irrelevant to the remaining claims at issue in this case; (2) the COI is inadmissible hearsay; (3) even if the COI was relevant and not inadmissible hearsay, it should be barred under Rule 403 because its admission would severely

and unfairly prejudice Defendant Officers; and (4) the introduction of the COI would lead to a mini-trial and would needlessly complicate an already complex trial.

## I.     The COI Has No Relevance to Plaintiff's Remaining Claims.

Plaintiff plans to introduce evidence at trial of the fact that he was granted a COI. However, any such evidence is wholly irrelevant to the claims and defenses in this case. Here, the criminal charges against Plaintiff were terminated on July 18, 2018, when the State dismissed the case via a *nolle prosequi* motion. (Ex. 30). At that point, the criminal charges were terminated. *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996). Plaintiff filed a petition for a COI on March 7, 2019, and the COI was granted, on June 7, 2019, in a separate civil proceeding under 735 ILCS 5/2-702. *Abu-Shawish v. United States*, 898 F.3d 726, 736 (7th Cir. 2018); (Certificate of Innocence, attached as Ex. 31). Under that statute, a COI has no other effect apart from creating a claim for relief against the State of Illinois in the Court of Claims. *Rodriguez*, 664 F.3d at 629; 735 ILCS 5/2-702(j) ("The decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a res judicata effect on any other proceedings."). The COI has no relevance to Plaintiff's claims in this case.

Defendants anticipate that, in response to this Motion, Plaintiff will cite cases where COIs were deemed admissible. However, the COI was deemed admissible because it purportedly supported the "favorable termination" element of the plaintiff's state law malicious claim, *see, e.g. Patrick v. City of Chicago, et al.*, 974 F.3d 824, 833 (7th Cir. 2020), which requires when there is a *nolle prosequi* to end the prosecution that the plaintiff show the case was dismissed in a manner indicative of innocence, *Swick*, 662 N.E.2d at 1242. Here, Defendant Officers were granted summary judgment on Plaintiff's malicious prosecution claim so this element is not at issue. (Dkt. 294 at 15-22).

Plaintiff's remaining claims are: (i) § 1983 due process fabrication; (ii) § 1983 due process suppression; (iii) § 1983 coerced confession; (iv) § 1983 failure to intervene; (v) § 1983 conspiracy; (vi) Illinois civil conspiracy; (vii) indemnification; and (viii) *respondeat superior*. None of the elements to any of these claims require a showing that there was a favorable termination of Plaintiff's criminal charges. Further, none of Plaintiff's remaining claims require a showing of Plaintiff's innocence. Accordingly, evidence of Plaintiff's COI should be excluded because it is irrelevant to any issue in this case. Fed. R. Evid. 401. It does not prove any element of Plaintiff's remaining claims.

## II.     The COI is Inadmissible Hearsay.

Even though the COI is not relevant to the claims at issue in this case, Plaintiff may try to use it as affirmative evidence of his innocence. But the COI is hearsay, and not admissible under any exception.[15] The COI and any declarations (or "findings") therein are out-of-court statements Plaintiff seeks to offer to prove the truth of the matter asserted. Fed. R. Evid. 801(c). But there is no exception to the hearsay rule that would allow its admission. *See Fields v. City of Chicago*, 2014 WL 12778835, at *4 (N.D. Ill. Apr. 29, 2014) (holding the denial of a COI is inadmissible).

Defendants anticipate that Plaintiff will argue that Rule 803(8) allows for the admission of the COI as a public record that sets forth "factual findings from a legally authorized investigation." Fed. R. Civ. 803(8). However, this exception does not encompass judicial findings of fact, such as a decision to grant a COI. *See United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *see also Hillard v. City of Chicago*, 2010 WL 1664941, n. 2 (N.D. Ill. Apr. 23, 2010) (Conlon, J.) ("Federal Rule of Evidence 803(22) excepts from the hearsay rule judgments of conviction, but not judgments of acquittal. A finding of no probable

---

[15] The Seventh Circuit has never decided whether the COI is hearsay. That issue was not before the court or considered in *Patrick*. 974 F.3d at 834.

cause is more closely akin to an acquittal for hearsay purposes"); *Taylor v. City of Chicago*, 09 C 5092, 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) (a criminal judge's finding of "no probable cause" does not qualify as a hearsay exception under Rule 803(8) or 803(22)). In short, the COI is inadmissible hearsay and should be barred.

A petition for a COI is a separate civil proceeding under Illinois law. They are proceedings that not only allow hearsay, *People v. Fields*, 959 N.E.2d 1162, 1166 (Ill. App. Ct. 2011), but also require judges to solely rely on the evidence plaintiff presented in his petition when there is no intervention by the prosecution. The officers have no ability to appear in the COI proceedings or contest the COI. 735 ILCS 5/2-702(e) (allowing only the Attorney General or the County State's Attorney to intervene). Where the State does not take a position the COI proceedings,[16] the circuit court is forbidden to consider any evidence beyond the plaintiffs' petitions, including the criminal trial transcripts. *People v. Washington*, 2023 IL 127952 ¶¶ 51-56. One circuit court complained that with such constrictions, it was forced to "'rule on something in a vacuum and just a partial record and partial transcripts.'" *Id.* at ¶ 21 (quoting the trial court's ruling). The Illinois Supreme Court nevertheless ruled that the criminal court is "not free to reject the petitioner's evidence" and cannot consider anything beyond what is submitted by the petitioner. *Id.* at ¶ 56. Along those same lines, the Seventh Circuit discounted the COI when there is no opposition, stating it "does not really reflect a factual finding arising from the crucible of the adversarial process, which our legal system regards as the truth." *Patrick v. City of Chicago*, 974 F.3d 824, 833 (7th Cir. 2020).

And it is black letter law that the outcome of related civil proceedings is inadmissible as hearsay in subsequent proceedings involving different parties. *See Greycas, Inc. v. Proud*, 826

---

[16] The Cook County State's Attorney's Office (SAO) has made clear, "when an individual files a COI petition . . . the SAO's decision to not take a position does not reflect the SAO's ultimate belief in their innocence." Ex. 32 Br. *Amicus Curiae* of Cook Cnty. State's Attorney in Supp. Of Def.-Appellants' Pet. For Panel Rehr'g, at 7, *Patrick v. City of Chicago*, No. 18-2759 (7th Cir. Oct. 15, 2020).

F.2d 1560, 1567 (7th Cir. 1987) ("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews*, 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006) (barring reference to outcome of prior litigation as both hearsay and as unduly prejudicial under Fed. R. Evid. 403); *Burbach Aquatics, Inc. v. City of Elgin, Ill.*, 2011 WL 148394, *1–2 (N.D. Ill. 2011) (barring reference to outcome of related litigation arising from same construction project; "The Court reminds the parties that the outcome of a lawsuit cannot be used in subsequent suits as evidence of underlying facts."); *Rivers v. Diaz*, 2008 WL 89838, at *3 (M.D. Fla. Jan. 7, 2008).

The Seventh Circuit has been clear that evidence of specific judicial reasoning for disposing of a criminal case is inadmissible in a subsequent civil proceeding. A judge's prior fact and credibility determinations, not based on first-hand knowledge, are "irrelevant to an adjudication of a civil rights claim." *Schultz v. Thomas*, 832 F.2d 108, 111 (7th Cir. 1987) (reversing judgment on jury verdict because allowing state court judge's findings and credibility determinations into evidence was reversible error); *Fisher v. Krajewski*, 873 F.2d 1057, 1063-64 (7th Cir.1989) (affirming exclusion of evidence of judge's determination in prior case where it was based on credibility determination of judge in prior proceedings).

In *Walker v. White*, No. 16 C 7024 (N.D. Ill.), Judge Shah found that the COI is inadmissible when the element of favorable termination was not at issue because then all that it could be used for was affirmative evidence of innocence. (Walker, 3/2/2023 Tr., attached as Ex. 33, at 40:18-20. ("[I]t would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence."). In granting a motion to bar the COI, Judge Shah also noted that its admission would open the door to the use of judicial findings for the truth of the matter, explaining

that "[t]here is no res judicata or preclusive effect of a [COI]...and it would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence." (*Id.* at 40:12-20.)

Yet, this is exactly what Plaintiff intends to use the COI to prove at trial. Plaintiff will declare to the jury that the COI establishes that his confessions was false, and he is factually innocent. Plaintiff should not be permitted to support that claim with his COI because, as Judge Shah explained, it is improper to use judicial findings for the truth of the matter where there is no res judicata or preclusive effect of the order granting the COI. Accordingly, exclusion of the COI as inadmissible hearsay is the best way to prevent jurors from using it for an improper purpose. (*See* Walker 3/7/2023 Tr., attached as Ex. 33, at 95:8-17.)

Assuming Plaintiff argues the COI is admissible via Rule 807, the residual exception, that argument must be rejected. Rule 807 provides that a hearsay statement is not excluded when each of two conditions are met:

> (1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and

> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

Courts use this exception sparingly. "As the Seventh Circuit has explained, 'in applying this rule, we have heeded congressional guidance to construe these conditions narrowly so that the residual exception does not swallow the rule against hearsay." *Bewley v. Turpin*, 2022 WL 2317426, *8 (S.D. Ind. June 27, 2022) (quoting *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 583 (7th Cir. 2019)); *see also Stolarczyk v. Senator International Freight Forwarding, LLC*, 376 F. Supp. 2d 834 (N.D. Ill. 2005) ("In addition to the presumption of unreliability afforded to hearsay

statements, Plaintiff also faces the Seventh Circuit's repeated 'emphasis on narrowly construing the residual provision.'") (quoting *Akrabawi v. Carnes Co*., 152 F.3d 688, 697 (7th Cir. 1998)).

### III. Introduction of the COI Into Evidence Also Poses a Risk of Unfair Prejudice that Greatly Outweighs Any Possible Probative Value.

Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See U.S. v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012) ("Federal Rule of Evidence 403 authorizes a district court to exclude 'relevant evidence' if the probative value is 'substantially outweighed by a danger of...unfair prejudice".). As explained above, Plaintiff's COI has no probative value to any of Plaintiff's claims. But if admitted, Plaintiff will use the COI as a sword against Defendant Officers as evidence that a court has found him innocent, that the criminal trial testimony and homicide investigation evidence has already been rejected (and need not be considered by this jury), including the witnesses who will again testify, and that Defendant Officers are ridiculous for trying to assert or even suggest otherwise, despite the fact that the Defendant Officers had no ability to . This is the true purpose Plaintiff wants the COI in evidence in this case and it is wholly unfair to Defendant Officers.

The Seventh Circuit cautioned in *Patrick* that while a COI *may* be relevant to the malicious prosecution inquiry (which is no longer relevant in this case), there are important limitations to that probative value and that "the admissibility calculus should be weighed with care." *Patrick v. City of Chicago, et al*., 974 F.3d 824, 833 (7th Cir. 2020). There were "important limits to the probative value" of the plaintiff's COI in *Patrick*, in part because of how the petition was presented to the circuit court (it summarized the evidence of innocence) and in part because of how it was adjudicated (no hearing was held and the CCSAO took no position on the petition). *Id.* at 833.

73

Under the circumstances, the court found the COI "does not really reflect a factual finding arising from the crucible of the adversarial process, which our legal system regards as the best means of discovering the truth." *Id.*

While upholding the admission of the COI, "Patrick warns of the Rule 403 dangers of the certificate, particularly where the state court petition is light on facts and the state court litigation does not generate 'a factual finding arising from the crucible of the adversarial process.'" *Gray*, 2023 WL 7092992 at *12, (N.D. Ill. May 8, 2023) (quoting *Patrick*, 974 F.3d at 833). Additionally, "the state-court certificate finding is narrower than all the elements need[ed] to prove a federal civil-rights violation (be it due process, Fourth Amendment, or coerced-confession) or a state law malicious prosecution claim." *Id.* "There is also a possibility that introducing a [COI] in a civil-rights suit may risk confusing the issues." *Patrick*, 974 F.3d at 833. For all those reasons, *Patrick* recognized that the "defendants were understandably concerned that jurors may be tempted to give conclusive weight to the [COI] merely because it reflects a formal judicial finding." *Id.*

In *Arturo DeLeon-Reyes v. Reynaldo Guevara, et al.*, Case No. 18-cv-1028 (N.D. Ill.), Judge Seeger recently expressed his concerns about the admission of a COI:

> Can I just tell you -- and this may be a little judicial thunderbolt -- I'm not sure…I let it in in *Bolden*… I didn't have a lot of these 1983 cases at the SEC or at Kirkland & Ellis, so I'm still getting up to speed on this. . . . **I have some 403 concerns about whether they will get undo weight in front of a jury. . . . I have questions in my mind about whether hearing about a [COI] would get an inflated sense of importance in front of the jury. . . .** It looks like most judges -- most, it looks like, let it in because it is relevant to whether the case was disposed of in a manner that is indicative of innocence. That's what I did in *Bolden*. That's what I said in the *Bolden* case…But I have had some moments of quiet reflection since then about whether that's the right thing to do….

(Ex. 34, 6/28/2023 *DeLeon-Reyes* Trans., at 27:19-30:3. (emphasis added)).

This case exemplifies Judge Seeger's concerns. Moreover, Judge Seeger's concerns with the potential confusion of issues and weight that juries accord COIs, after having admitted a COI

in *Bolden*, have been borne out in a more recent case. In *Gray v. City of Chicago*, 2023 WL 7092992, (N.D. Ill. May 8, 2023), the plaintiff's counsel—the same attorney who represents Plaintiff here— began his closing argument as follows:

> Let's start with what's not disputed. The charges against Adam were resolved in a manner indicative of his innocence. . . . . The[] [CCSAO] said charges dismissed. And then they went one step further. They gave him a [COI] by agreement. And you can use your common sense. That is extraordinarily unusual. So you are looking at an innocent man.

(Ex. 35, Gray 5/23/2023 Trial Trans. at 3032:1-20.)

After the defendants' closing argument, during which defense counsel reviewed the evidence which she contended supported the criminal charges against Gray, the plaintiff's counsel began his rebuttal argument, "[The CCSAO] not only decided that the conviction couldn't stand, but that the charges needed to be dismissed, and this man needed to by agreement be awarded a [COI]." (*Id*. at 3162:6-21.)

The trumpeting of the COI as the reason that Gray's claim of innocence should be credited over defendants' contrary evidence should lead this Court to view with great skepticism Plaintiff's anticipated claim that the COI "is just another piece of evidence" that will be accorded no more weight than any other evidence. That argument is nonsense. The COI is a nuclear bomb; the blast radius of which will subsume the entirety of the case. Defendant Officers will be left in the position to try to undo the damage piece by piece; including having to explain to the jury legal proceedings that are difficult for a lay person to understand, post-conviction proceedings, the COI proceedings, all of which command an enormous amount of information. Practically speaking, though, the jury will just give the COI the *res judicata* effect that Illinois law expressly forecloses. *See* 735 ILCS 5/2-702(j) (the decision to grant or deny a certificate of innocence shall be binding only with respect to claims filed in the Court of Claims and shall not have a res judicata effect on any other proceeding). No matter what jury instruction the Court could craft or what Plaintiff suggests would

neutralize the explosion, the jury will ignore any reasoned analysis of the evidence relating to the claims in the case and approach the trial as a damages question since the decision on innocence has already been made. Admission of the COI will deprive Defendant Officers of a fair trial and is the definition of unfair prejudice Rule 403 serves to avoid.

In addition, Plaintiff may argue that the COI is relevant to his damages. Plaintiff cannot infer he suffered harm and losses by pointing to a COI as proof. Following Judge Shah's holding in *Walker*, Plaintiff does not need his COI to prove damages. In fact, the admission of the COI to establish Plaintiff's damages underscores the risk that the jury will be confused and erroneously conclude that Plaintiff has been found factually innocent and that this jury too must so conclude. In *Walker*, Judge Shah found that admittance of the COI itself for damages purposes still poses "a great risk that it would be construed for the truth of the matters asserted, that is, factual innocence, which, in my view, as I've said, would be hearsay coming from out-of-court sources, including from, in part, declarants who have zero personal knowledge of the underlying events." (*See* **Ex. 33**, 3/7/23 Trans. at 94:5-14.) Judge Shah further concluded that the risk that the jury may incorrectly believe that the COI is actual proof of the plaintiff's innocence, coupled with unfair prejudice to Defendants, required exclusion of the COI. (*Id.* at 95:20-96:20.)

**IV.    Introduction of the COI Would Lead to a Mini-Trial.**

In addition to being irrelevant, inadmissible hearsay, and being unfairly prejudicial, introduction of the COI would lead to an unnecessary mini-trial that would distract and confuse the jury and waste the Court's time. As Judge Shah explained in *Walker*, the entry of the COI would take the jury "down a side route" about how it was obtained. (Ex. 33 at 95:23-96:3.) For example, in *Bolden*, the court allowed the plaintiff to offer the COI for the purpose of demonstrating that the underlying criminal proceeding terminated in a manner indicative of his innocence. However, the court also allowed the defendants to offer evidence about the basis for

the COI, including that the state court awarded the COI because it found that the plaintiff's criminal trial counsel had been ineffective, and not because of fabricated evidence. The court also ruled that if the plaintiff opened the door by arguing that the CCSAO did not oppose his petition for a COI, then the defendants could respond by offering evidence about why the CCSAO did not oppose it. (Ex. 36, 09/22/21 Order on MIL). Indeed, exclusion of the COI favors judicial economy by eliminating the need for introduction of such evidence as well as argument about the inability of the City or Defendant Officers to participate in the process. (Ex. 33, Walker 3/6/2023 Trans. at 37:12-41:6.)

So too, here, if Plaintiff were allowed to introduce the COI, Defendant Officers would need to introduce testimony and evidence regarding the COI process. Defendant Officers would also seek to introduce evidence related to Defendants' inability to participate in the COI process. This unnecessary mini-trial and further jury confusion will be avoided, and judicial economy preserved, if this Court excludes Plaintiff's COI from trial, which will help ensure that the jury will make the important decisions at the heart of this case based solely on the substantive evidence, rather than being influenced by "certificates" indisputably issued for reasons wholly divorced from the merits of this case. *See Nathson Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 3987356, at *11 (N.D. Ill. Sept. 11, 2017) (holding that introduction of a COI would "have driven the entire trial into a lengthy sidetrack").

### DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO BAR PLAINTIFF'S EXPERT MATTHEW JONES FROM OFFERING UNDISCLOSED OPINIONS REGARDING THE PARIS JACKSON HOMICIDE INVESTIGATION

Plaintiff disclosed Jones as a police practices expert. Jones seeks to opine that, when Defendants interviewed Plaintiff about his role in the murder of Jackson, their conduct fell outside generally accepted police practices. Jones' proffered testimony focuses only on the time period that Plaintiff was detained at the "Area 5" police station between approximately 3 p.m. on

September 3, 2008 and 1:30 a.m. on September 5, 2008. Jones did not disclose any criticisms or opinions about any other aspect of the Jackson homicide investigation. (*See generally* M. Jones Combined Reports, attached as Ex. 37, at 4 (describing scope of opinions).) To the contrary, Jones' opinions "were focused solely in terms of what was going on in the interview video." (*See* March 3, 2023 M. Jones Depo. Tr., attached as Ex. 38, at 188:10-11.) Defendants ask the Court for a ruling *in limine* to bar Jones from opining on any other aspect of the Jackson homicide investigation because such testimony would amount to undisclosed opinions in violation of Rule 26 of the Federal Rules of Civil Procedure.

## **ARGUMENT**

The Court should bar Plaintiff's police practices expert, Jones, from offering any opinions about any aspect of the Jackson homicide investigation outside Defendants' police interview of Plaintiff because introducing such opinions at trial would violate the Federal Rules of Civil Procedure and would unfairly prejudice Defendants.

As Jones' expert reports show, Jones offer opinions which only address Defendants' custodial interview of Plaintiff. (*See* Ex. 37 at 4.) Jones' expert report does not touch on any other aspect of the Jackson homicide investigation. For instance, Jones does not analyze or mention any of the other numerous witnesses that Defendant Officers interviewed about the shooting in Amundsen Park nor does Jones consider other steps in Defendants' investigation, like executing a search warrant on the car Plaintiff used in the shooting or collecting other evidence. (*See generally id.*) Further, Defendants deposed Jones in this case on March 3, 2023 and April 20, 2023.[17] In the first part of his deposition, Jones admits that he did not review or consider certain materials in the

---

[17] Towards the end of the first portion of Jones' deposition, Jones testified he had additional opinions not articulated in his expert report. (Ex. B at 274:18-275:18.) Due to that fact and back pains Jones was experiencing, Defendants agreed to conduct a second part of his deposition on April 20, 2023, before which time Jones issued a "supplemental" report. (*Id.* at 282:8-283:23.)

Jackson homicide investigation file that reflected Defendants work gathering statements from witnesses to the Amundsen Park shooting. (*See*, *e.g.*, Ex. 38 at 187:8-188:13.) Further, Jones admits, "My opinions were focused ***solely*** in terms of what was going on in the interview video" [i.e., the video of Plaintiff's police interview]. (*Id*. at (Ex. 38 at 188:10-11)(emphasis added).[18]

Expert discovery closed in this case on October 29, 2023. (*See* Dkt. 221.) Considering the limited opinions contained in Jones' expert reports and Jones' admissions in his deposition, Jones must be barred from offering any opinions about the Jackson homicide investigation outside of Defendants' police interview of Plaintiff. The Federal Rules of Civil Procedure automatically bar Jones from offering such opinions at trial. Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1); *see also Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 951 (7th Cir. 2018) (finding Rule 37(c)(1) automatically barred non-disclosed expert testimony). "Formal disclosure of experts is not pointless." *See*, *e.g.*, *Musser v. Gentiva Health Services*, 356 F.3d 751, 757 (7th Cir. 2004) Rule 37(c)(1) commands exclusion of undisclosed opinions and the Court should exclude testimony where opinions have not been disclosed and trial is imminent. *Id*. at 757-58 (affirming exclusion of expert testimony of treating physicians and nurses whose opinions were not disclosed). Here, Jones has not been disclosed as an expert on any matter other than the custodial questioning of Plaintiff at the police station and, as such, the Court should bar Jones from attempting to offer additional, undisclosed opinions at trial.

---

[18] The only instance that Jones addresses events outside of the direct interaction between Plaintiff and Defendant Officers is his first report's mention of the allegation that unidentified police officers prevented an attorney, Stephen Wham Cary, from speaking to Plaintiff while Plaintiff was detained. Defendants have moved to bar this testimony because it amounts to an improper legal conclusion. (Dkt. 308 at 14-15.) Defendants have also separately moved *in limine* to bar evidence of the alleged encounter with the attorney and unidentified police officers. (*See* Mot. *in Limine* to Bar Evidence Relating to Stephen Wham Cary.)

## DEFENDANTS' MOTION *IN LIMINE* NO. 17 TO BAR EVIDENCE OR ARGUMENT REGARDING THE PASSAGE OF TIME BETWEEN THE PARIS JACKSON MURDER AND CRIMINAL TRIAL AND CONVICTION

Defendant Officers seek an Order barring Plaintiff from presenting evidence or making any argument regarding the passage of time between the murder of Jackson and Plaintiff's criminal trial and conviction. Allowing Plaintiff to make comments such as, for instance, that Plaintiff languished in jail for more than a year awaiting completion of his criminal trial must be barred because it would unfairly prejudice to Defendant Officers by wrongly blaming Defendant Officers for something over which they had no control. The passage of time between the Jackson murder and Plaintiff's criminal conviction is also ultimately irrelevant.

## ARGUMENT

Jackson was murdered in August 2008. Days later, Plaintiff and his cousin, Renard Branch, Jr. were charged with first-degree murder. They had a joint criminal trial, which began on November 24, 2009, and concluded on January 6, 2011. Plaintiff was convicted and sentenced on June 9, 2011.

Defendant Officers seek an Order barring Plaintiff from presenting evidence or making any argument regarding the passage of time between the Jackson murder and Plaintiff's criminal trial and ultimate conviction. First and foremost, permitting Plaintiff to criticize the criminal judicial system for the length of his trial would unfairly prejudice the Defendant Officers. Permitting Plaintiff to argue, for instance, that he languished in jail for more than a year before he was convicted implies to the jury that Defendant Officers are somehow to blame for the length of the criminal trial. Of course, Defendant Officers had no control over how quickly the underlying criminal trial was resolved, so suggesting they are to blame is inherently prejudicial and should be barred. Fed. R. Evid. 403. Such an argument also has no probative value to any issue in this case.

Indeed, the length of time between the Jackson murder and Plaintiff's criminal conviction is irrelevant to any issue that the jury will decide. As explained more fully in Defendant Officers' Motion *in Limine* No. 9, assuming Plaintiff prevails on his claims, Plaintiff can only recover for the time after he was convicted because the Court has already determined probable cause existed to arrest and charge Plaintiff with Jackson's murder. The issue of how many years are relevant to Plaintiff's potential damages is purely a legal issue. It must be decided by the Court, and so, any evidence or argument at trial about the passage of time between the murder and Plaintiff's conviction is irrelevant. Courts in this District routinely grant similar motions *in limine* barring evidence or argument regarding the passage of time between trial and underlying incident, and tellingly, these motions are usually unopposed. *See*, *e.g.*, *Pryor v. Corrigan*, No. 17-CV-1968, 2023 WL 1100436, at *23 (N.D. Ill. Jan. 30, 2023) ("In general, the Court prohibits counsel and the witnesses from making any comment about the length of time that it took to get to trial."); *see also Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *8 (N.D. Ill. Apr. 5, 2018) (granting unopposed motion *in limine*); *Glanz v. Illinois*, No. 15 C 6337, 2018 WL 11195497, at *4 (N.D. Ill. Mar. 15, 2018) (same). The Court should reach the same decision here.

## **CONCLUSION**

For the foregoing reasons, Defendant Officers respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning, or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel is instructed to warn and caution each and every witness under their control appearing in this litigation to strictly comply with the ruling of this Court.

Respectfully submitted,

Dated: July 3, 2024

**DEFENDANT OFFICERS**

By:   */s/ Kyle L. Flynn*
        One of Their Attorneys

John F. Gibbons
Kyle L. Flynn
Thomas Quinn Ford
Tyler Lynn Salway
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
gibbonsj@gtlaw.com
flynnk@gtlaw.com
fordq@gtlaw.com
salwayt@gtlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing document was served on all counsel via CM/ECF on July 3, 2024.

*/s/ Kyle L. Flynn*
