IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCEL BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-4082 |
| v. | ) | |
| | ) | The Hon. Lindsay C. Jenkins |
| CITY OF CHICAGO, *et al.* | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF
THE COURT'S ORDER GRANTING SUMMARY JUDGMENT AGAINST
PLAINTIFF'S MALICIOUS PROSECUTION CLAIM**

**INTRODUCTION**

The Court has granted summary judgment in Defendants' favor and against Plaintiff with respect to Plaintiff's state law malicious prosecution claim, finding that the undisputed facts support that there was probable cause to arrest and charge Plaintiff as an accomplice to the murder of Paris Jackson, even setting aside the inculpatory statements Plaintiff made during Defendants' lengthy interrogation. The Court's order granting summary judgment against Plaintiff's state-law malicious prosecution claim failed to consider the totality of the evidence known to Defendants and then drew inferences against Plaintiff. It should be reconsidered.

The Court's ruling will have profound implications for the upcoming trial. The Court has excluded evidence of Plaintiff's certificate of innocence, finding that the relevance of the COI is limited in the absence of a malicious claim. *See* ECF No. 343 at 22. The ruling will constrain Plaintiff's presentation of evidence relating to Defendants' motivations and tactics over the course of the interrogation process, since Plaintiff will effectively be barred from showing that

1

Defendants were driven by the need to secure a confession to avoid the necessity of releasing Plaintiff.

Plaintiff recognizes that this motion comes very close to trial. But Plaintiff has concluded that it is preferable to seek reconsideration of the Court's summary judgment ruling prior to trial rather than risk the possibility of a retrial in the event of an outcome adverse to Plaintiff.

## ARGUMENT

Probable cause depends on the totality of the circumstances known to the defendant officers. *Williams v. City of Chicago*, No. 22 CV 3773, 2023 WL 6388891, at *7 (N.D. Ill. Sept. 29, 2023) (quoting *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013)). And it is axiomatic that the Court cannot draw inferences against the non-moving party on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Applied to malicious prosecution claims and the consideration of probable cause, this means that the Court "must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). Here, the Court does not appear to have done that. The Court instead focused on a narrow subset of the evidence rather than its totality, and then drew inferences against Plaintiff to downplay the contrary evidence.

This led to error because it obscured the fact that a reasonable jury could have found that Defendants, based on the totality of what was known to them, should have been suspicious enough to investigate further. It is true that a small amount of reasonably reliable evidence can establish probable cause even if there is some contrary evidence and even if more investigation might've turned up exculpatory facts. *E.g.*, *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003). But when the totality of the circumstances would make a reasonable officer "suspicious" about the accuracy of the inculpatory evidence, there is no probable cause and more

2

investigation is required. *Id*. ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate.") (emphasis added); *Guzell v. Hiller*, 223 F.3d 518, 520 (7th Cir. 2000) (police must continue to investigate after receiving information otherwise establishing probable cause if that information is "fishy"); *see also Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994) ("Having received a report of questionable reliability, the police needed to investigate.") (citing *Illinois v. Gates*, 462 U.S. 213, 227 (1983)).

Here, a reasonable jury could have concluded that, based on the known exculpatory evidence, aspects of the known inculpatory evidence were suspicious enough to require further investigation. This is because, with inferences drawn in Plaintiff's favor as summary judgment requires, a reasonable jury could find that the totality of the evidence known to the officers was suspicious enough to require further investigation into whether it was RJ Branch—or someone else—who killed Paris Jackson in the first place. And it goes without saying that, for Plaintiff to have been an accomplice to a murder by RJ Branch, RJ Branch needed to have committed a murder.

There was a great deal of reliable evidence, known to the officers, that suggested that RJ Branch could not have been the one who murdered Paris Jackson. First off, after RJ Branch fired, police searched the area where Paris Jackson's body later appeared but did not find the body. ECF No. 272 ¶¶ 13, 14, 20. That is a hard fact to ignore. Another is that Rufus McGee saw Paris Jackson after the shooting and saw that Jackson was alive and unhurt. ECF No. 272 ¶¶ 6-12. That no witness who saw or heard RJ Branch shooting also saw Paris Jackson get hit or fall is also suspicious. All these facts were known to Defendants. ECF No. 271-18; ECF No. 272 ¶¶ 18-33.

From them, a reasonable jury could infer that Defendants needed to investigate further before obtaining probable cause.

Lending strength to that inference is the evidence that people other than RJ Branch were shooting in the area that night. ECF No. 272 ¶¶ 13, 14, 20. That evidence also was known to Defendants. ECF No. 271-18; ECF No. 272 ¶¶ 18-33. It similarly provides a reasonable basis for the jury to infer that Defendants had to investigate further to obtain probable cause.

Collectively, the missing-body evidence, the witnesses who claim to have seen RJ Branch shoot then seen Paris Jackson but not seen Jackson fall, McGee's testimony that Jackson survived, and the other-shooter evidence, taken as part of the totality of the circumstances known to the officers, would readily allow a reasonable jury to find that the inculpatory evidence against RJ Branch and, by extension, Marcel Brown, was suspicious enough to require further investigation. That means no probable cause and that requires the summary judgment ruling to be reversed.

The Court appears to have reached the opposite conclusion by departing from the totality of the circumstances perspective and applying a narrower one. Rather than evaluate probable cause based on the totality of the evidence, the Court appears to have focused on whether any particular subset of evidence, standing alone, provided probable cause: "The question, therefore, is whether those statements support probable cause." ECF No. 294 at 17. After concluding that, in isolation, the witness statements provided probable cause, the Court said this about the contrary evidence: "McGee could have been mistaken or lying about seeing Paris alive after the shooting, and the other evidence is inconclusive." ECF No. 294 at 19. But the question is not whether the contrary evidence was conclusive. Plaintiff does not have to prove innocence to negate probable cause. He need only show that, with all inferences drawn in his favor, a

4

reasonable juror could find that inculpatory evidence suspicious enough, or put another way, contradicted enough, that a reasonable officer would feel the need to look further.

It is true that, at summary judgment, when evaluating probable cause, the court may assume that a reasonable officer resolves conflicts in the evidence in a particular way. But that allowance for reasonable resolution is just that, an allowance for resolutions that are reasonable. Ignoring evidence that the body was not where it should have been when it should have been there—especially when there is evidence of other potential shooters and an eyewitness who saw the victim survive—is not reasonable, or at least a reasonable jury could so find. For that reason, the summary judgment order should be reconsidered and the malicious prosecution claim reinstated for trial.

//
//
//

## CONCLUSION

Under Illinois law, malicious prosecution cases, like this one, "with complex facts from which competing inferences can be drawn," should, on summary judgment, be left for the jury. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 138, 183 N.E.3d 767, 792 (reversing summary judgment on probable cause); *see also Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 746 (N.D. Ill. 2016) (denying summary judgment against malicious prosecution claim despite two eyewitness identifications because other evidence made the identifications suspicious enough to require more and noting that "[t]he question of probable cause is typically a proper issue [for a jury] if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.") (quoting *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013–14 (7th Cir. 2006) (reversing summary judgment as to malicious prosecution claim based on erroneous finding of probable cause)). Leaving probable cause for the jury is the correct path here.

Respectfully submitted,

**MARCEL BROWN**

By: /s/ Tom Kayes
    One of his attorneys

Vanessa del Valle
Jonathan Manes
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, Illinois 60611
(312) 503-8576

Locke E. Bowman
Jon Loevy
Tom Kayes
Loevy & Loevy
311 N. Aberdeen St., Ste. 3
Chicago, IL 60607
312 243 5900

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 19, 2024, she served the foregoing document upon all counsel who have filed appearances in this action via CM/ECF.

/s/ Tom Kayes