IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MARCEL BROWN,** | |
| Plaintiff, | No. 19-cv-4082 |
| v. | The Honorable Lindsay C. Jenkins |
| **CITY OF CHICAGO,** *et al.* | |
| Defendants. | |

**DEFENDANTS' JOINT MOTION TO AMEND THE JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 59(e), Defendants, by and through their undersigned counsel, file this Motion for remittitur, for setoff, and to amend the Judgment to enter judgment in favor of Defendant Geri Lynn Yanow, as special representative for Kevin McDonald (hereafter "Defendant McDonald"). In support thereof, Defendants state as follows:

**INTRODUCTION**

After trial, the jury found in favor of Plaintiff and awarded him a total of $50 million in compensatory damages. The jury's award is grossly excessive and far beyond what juries have awarded in similar cases containing allegations of more egregious damages. Accordingly, the jury's compensatory damages award should be remitted to the total amount of $10 million. Separately, Defendants are also entitled to a setoff of damages from the judgment in the amount of $1.4 million, which is the amount of the settlement between Plaintiff and Defendants Cook County and Michelle Spizzirri (collectively the "County Defendants"). Finally, because Plaintiff cannot show that the jury imposed any liability for either claim on Defendant McDonald, the judgment as to him cannot stand.

1

**LEGAL STANDARD**

Under Rule 59(e), a party can move for remittitur of a jury's damages award. "A court can alter or amend a jury verdict under Rule 59(e) to correct a 'manifest error of law or fact' within 28 days of the entry of judgment." *See Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012); *see also* Fed. R. Civ. P. 59(e). While a court should "accord substantial deference to the jury's assessment of damages," *Spina v. Forest Pres. Dist. of Cook Cty.*, 207 F. Supp. 2d 764, 771 (N.D. Ill. 2002) (quoting *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985)), "the court must also ensure that the award is supported by competent evidence." *Ramsey*, 772 F.2d at 1313. If a Court find that a damages award is excessive, that constitutes a manifest error of law under Rule 59(e), and remittitur is appropriate. *See Patel v. Wagha*, No. 13 C 468, 2016 WL 3193459, at *2 (N.D. Ill. June 8, 2016).

Additionally, a judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law. *Duran v. Town of Cicero*, 653 F.3d 632, 642 (7th Cir. 2011). Thus, a "motion under Rule 59(e) to alter or amend the judgment is an appropriate vehicle to request a setoff of a jury verdict." *Fox ex rel. Fox v. Barnes*, No. 09 C 5453, 2013 WL 2111816, *2 (N.D. Ill. May 15, 2013) (citing *Zivitz v. Greenberg*, 279 F.3d 536, 539 (7th Cir. 2002)). A defendant is entitled to a setoff from a settlement if the settlement covers the same injury as that which the defendant was found responsible at trial. *FDIC v. Chicago Title Ins. Co.*, 12 F.4th 676, 690 (7th Cir. 2021).

**ARGUMENT**

I.  **The Jury's Award of Compensatory Damages Is Excessive And Should Be Remitted.**

Plaintiff was in pretrial custody from September 5, 2008, through January 6, 2011 – 854 days (or 2 years 4 months and 2 days). (*See* Dkt. 441 at Jury Instr. No. 26.) After his conviction, he was incarcerated from January 6, 2011, to July 18, 2018 - 2751 days (or 7 years 6 months and

13 days). (*See* Tr. 111:1-112:7; 2163:1-2[1]; *see also* 2d Am. Compl., Dkt. 136, at ¶ 57.) That is a total of 3,605 days, 45 days short of 10 years. Even if the judgment is allowed to stand, the award of $50 million—$10 million for pretrial detention damages and $40 million for damages arising out of the conviction—is excessive and should be subjected to a substantial remittitur. Importantly, the jury awarded this sum for **compensatory** damages, not punitive damages, which were separately awarded against only Detective Mancuso for $50,000.

An award of $50 million for less than ten years of incarceration does not stand up against a reasonable analysis. It should be remitted to $10 million: $2.5 million for pretrial detention damages[2] and $7.5 million for damages arising out of the conviction, reflecting just over $1 million for each year of Brown's incarceration.

"A court is granted wide discretion when considering a motion for remittitur" *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 488 F. Supp. 2d 719, 737 (N.D. Ill. 2007). The Seventh Circuit has set forth three factors to guide this Court's analysis to determine whether remittitur is warranted: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015). The "monstrously excessive" standard and the "rational connection" standard are essentially "two ways of describing the same inquiry: whether the jury verdict was irrational." *Id.* (citing *Harvey v. Office*

---

[1] The trial transcripts are available at Dkts. 442-451, but they are not yet publicly available. Defendants attached the daily transcripts as a single exhibit (hereafter referenced as "Tr.") to Defs. Renewed Mot. for Judgment as a Matter of Law. (*See* Dkt. 459, Exhibit 1.)

[2] Defendants have argued in their Motion for Judgment as a Matter of Law under Rule 50(b) that Plaintiff was not entitled to damages for pretrial detention. If that is granted, then the $10 million in pretrial detention damages should be eliminated entirely.

3

*of Banks & Real Estate*, 377 F.3d 698, 713-14 (7th Cir. 2004)); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 n.13 (7th Cir. 1995)); *Green v. Houser*, 942 F.3d 772, 780–81 (7th Cir. 2019). The compensatory damages award here is neither rational nor comparable to similar cases, and thus it meets the standard for remittitur.

      A.      **The award is irrational.**

It was irrational of the jury to award $50 million for less than ten years of incarceration. The evidence does not support an award averaging more than $5 million per year of confinement in a correctional facility. Indeed, the award far exceeds even the $30 million Brown's own counsel asked for: $5 million for pretrial detention damages and $25 million in damages arising out of the conviction. (Tr. 2367:6-15.) Plaintiff's request—which itself was excessive—suggests that the jury's award was the "product of the jury's fevered imaginings or personal vendettas." *See Adams*, 798 F.3d at 543.

Brown described a prison experience reflective of the expected hardships of confinement. He testified that inmates were allowed out of their cells to get food twice per day and were allowed yard time twice per week. Brown was placed in segregation once, for thirty days, after he was interviewed as a part of an investigation by the prison's internal affairs department. (Tr. 413:8-23.) Brown did not join a gang at Menard, which he said made his life dangerous because he was unprotected from prison violence. (Tr. 393:6-394:13.) He testified that he was attacked "from time to time," (Tr. 330:14-15), although he did not identify the number, frequency, or severity of the attacks and did not testify about any injuries resulting from them. Brown did testify regarding one specific incident at the Cook County jail when a cellmate attempted to sexually assault him; Brown testified that he fought back, that fellow inmates helped get the attention of jail guards, and that the jail guards quickly intervened to stop the encounter, asked if Brown was okay, and then honored

his request to be separated from his cellmate. (Tr. 425:21-426:19.)[3] In addition, Brown testified that his cousin and co-defendant, RJ Branch, was in a gang and would send notes to his fellow gang members, instructing them to keep Brown safe. (Tr. 394:14-25.)

Brown testified that, while in prison, he attended programming on topics such as Christianity and anger management, (Tr. 415:5-11), and that he studied the Bible and attended worship services. (Tr. 418:23-420:12.) Brown eventually worked as cell house help, which allowed him to spend more time outside his cell. (Tr. 411:10-412:1.) He stayed in contact with his mother while he was in prison. (Tr. 699:16-20.) When she visited, they were allowed to spend two hours together. (Tr. 421:5-16.) Brown initially lost weight in prison, going from 115 pounds to 103 pounds during a lockdown. (Tr. 390:13-391:25.) After a few years of lifting weights, he eventually reached about 165 pounds. (*Id.*) Brown testified that many of the younger guards were nice to the inmates, and he had several cell mates whom he liked. (Tr. 388:22-389:2; 394:11-13.) He did not receive any disciplinary infractions during his incarceration, which he stated was uncommon. (Tr. 397:4-24.)

Nor did the evidence suggest that Brown's incarceration caused him unusually lasting hardships deserving of extraordinary compensation. While he initially struggled to adjust to life outside of prison, he had adjusted well by the time of the trial. About a year after his release, he reconnected with his high school girlfriend. (Tr. 454.) They started dating again, and he moved in with her and her daughter. (Tr. 455:9-14.) After about a year, they had a daughter together. (Tr. 456:4-21.) Brown testified that he enjoys spending time with his girlfriend, his daughter, and his girlfriend's child who he said is like a daughter to him. (Tr. 456-457.) Brown attends therapy,

---

[3] As explained further in Defendants' Motion for a New Trial pursuant to Rule 59(a), Plaintiff's counsel improperly suggested in closing arguments that Brown was, in fact, raped during this encounter. The transcript of Plaintiff's testimony clearly demonstrates that Brown was not. (Tr. 418:13; 425:21-426:19.)

5

which has helped him with his depression and anxiety. (Tr. 459:8-18.) At the time of the trial, he was working at the Chicago Institute For Non-Violence. (Tr. 451:3-5.) He loves his job and believes that his background has helped him to connect with the young men with whom he works. (Tr. 451:3-452:25.) Brown attends church every Sunday and testified that his experiences have strengthened his relationship with God. (Tr. 420:13-21.)

To be sure, no experience as an inmate can be expected to be pleasant or desirable. But the award of $50 million bears no rational connection to Brown's experience.

### B. The jury verdict far exceeds verdicts in similar cases.

The jury in this case awarded several times what is typical in cases of this nature. In wrongful conviction cases in this district, "it is typical for plaintiffs to ask the jury to award $1 million per year for every year of incarceration." *Coleman v. City of Chicago*, Nos. 1:18-cv-00998, 1:17-cv-08696, 2019 U.S. Dist. LEXIS 219753, *23 (N.D. Ill. Dec. 23, 2019). At more than five times that rate, the jury's award is not even roughly comparable to those in recent similar cases in this district:

- *Estate of Amor v. City of Naperville*, 1:18-cv-2523 (2024): jury awarded $22.5 million for approximately 22 years of incarceration (less than $1.1 million per year) (Plaintiff's counsel is Loevy & Loevy) (*Amor* Minute Order re Verdict, Dkt. 384; Compl., Dkt. 1, at ¶¶ 1, 24, 40, 44);

- *Gray v. City of Chicago*, No. 1:18-cv-02624 (2023): jury awarded $27 million in compensatory damages for over 24 years of incarceration (approximately $1.125 million per year) (*Gray* Order re Verdict, Dkt. 541; 2d Am. Compl., Dkt. 82, at ¶¶63, 129);

- *Bolden v. City of Chicago*, No. 1:17-cv-00417 (2021): jury awarded $25 million in compensatory damages for over 22 years of incarceration (approximately $1.14 million per year) (*Bolden* Minute Order re Verdict, Dkt. 615; 5th Am. Compl., Dkt. 391, at ¶ 1);

- *Andersen v. City of Chicago*, No. 1:20-cv-05821 (2021): jury awarded $7.55 million in compensatory damages for approximately 27 years of incarceration (less than $280,000 per year) (Plaintiff's counsel is Loevy and Loevy) (*Andersen* Minute Order re Verdict, Dkt. 888; 1st Am. Compl., Dkt. 932, at ¶ 11);

- *Wrice v. City of Chicago*, No. 1:14-cv-05934 (2020): jury awarded $4 million in compensatory damages for approximately 31 years of incarceration (less than $130,000 per year) (*Wrice* Order re Verdict, Dkt. 574; *Wrice* Judgment, Dkt. 573; 1st Am. Compl., Dkt. 63, at ¶ 1);

- *Rivera v. Guevara*, No. 1:12-cv-04428 (2018): jury awarded $17 million in compensatory damages for 21 years of incarceration (less than $800,000 per year) (Plaintiff's counsel is Loevy & Loevy) (*Rivera* Minute Order re Verdict, Dkt. 670; Compl., Dkt. 1, at ¶¶ 1, 3, 29-30);

- *Patrick v. City of Chicago*, No. 1:14-cv-03658 (2017): jury awarded $13.3 million in compensatory damages for more than 21 years of incarceration (less than $650,000 per year) (*Patrick* Minute Order re Verdict, Dkt. 364; 1st Am. Compl., Dkt. 92, at ¶ 1);

- *Fields v. City of Chicago*, Nos. 1:10-cv-01168 (2016) Nos. 17-3079 (7th Cir. 2020), 17-3125, 18-1207: jury awarded $22 million in compensatory damages for 18 years of incarceration (approximately $1.2 million per year) (Plaintiff's counsel is Loevy & Loevy) (*Fields* Minute Order re Verdict, Dkt. 1173; 3d Am. Compl., Dkt. 105, at ¶ 78);

- *Jimenez v. City of Chicago*, No. 1:09-cv-08081 (2012): jury awarded $25 million in compensatory damages for approximately 16.25 years of incarceration (just over $1.5 million per year) (Plaintiff's counsel is Loevy & Loevy) (*Jimenez* Minute Order re Verdict, Dkt. 289; Dkt. 1, at ¶1); and

- *Johnson v. Guevara*, No. 1:05-cv-1042 (2009): jury awarded $21 million in compensatory damages for approximately 12 years of incarceration ($1.75 million per year) (Plaintiff's counsel is Loevy & Loevy) (*Johnson* Minute Order re Verdict, Dkt. 283; Am. Compl., Dkt. 78-2, at ¶ 2).

Against this backdrop of smaller awards for longer periods of incarceration—all of them far below $5 million per year of incarceration—Brown's own counsel acknowledges the historic nature of the award in this case, describing it as "the largest award to a single wrongful-conviction plaintiff in United States history." Loevy + Loevy website, "Jury Awards Largest Wrongful Conviction Damages in U.S. History," https://www.loevy.com/jury-awards-largest-wrongful-conviction-damages-in-u-s-history/ (last visited Oct. 8, 2024). While prior verdicts do not necessarily cap what a jury can reasonably award, they "provide a reference point that assists the

court in assessing reasonableness," while allowing "room for a jury's award to exceed the relevant range of cases when the facts warrant." *Adams*, 798 F.3d at 545.

The awards in other cases do not leave enough "room" for a $50 million award to be considered rational. The historic award in this case does not compare even roughly to what is typical of wrongful-conviction cases like Brown's. Brown was 18 years old when he was arrested and remained incarcerated until he was 28 years old. (*See* Tr. 111:4-112:4; 206:12-13; 360:13-15.) Indeed, *Andersen* and *Patrick* stand out as especially relevant here, in that the plaintiffs in those cases were sent to prison at approximately the same age as Brown, and like him, they were incarcerated during their twenties. (*Andersen* 1st Am. Compl., 1:20-cv-05821, Dkt. 932, at ¶¶ 1-6, 11; *see also Patrick* 1st Am. Compl., 1:14-cv-03658, Dkt. 92, at ¶ 1.) Even though they remained incarcerated longer than Brown, they were awarded considerably less, both in total and per year of incarceration. Similarly, the plaintiff in *Bolden* was not much older than Brown when he was first incarcerated, and despite spending more than twice as long in prison, he was awarded only half as much. (*Bolden* 4th Am. Compl., 1:17-cv-00417, Dkt. 391, at ¶¶ 1, 9, 88.)

Other cases involved much younger, juvenile plaintiffs. In *Jimenez*, the plaintiff was arrested when he was only thirteen years old. *Jimenez*, (*Jimenez* Compl., No. 1:09-cv-08081, Dkt. 1, at ¶1.) The plaintiff in *Gray* was only fourteen years old when he was arrested. (*Gray* 2d Am. Compl., No. 1:18-cv-02624, Dkt. 82, at ¶ 7.) Gray presented evidence of such a horrific experience in detention that he became suicidal. (*See id.* at ¶ 155; *Gray* Mot. for New Trial, No. 1:18-cv-02624, Dkt. 553 at 16; *Gray* May 23, 2023 Tr, Dkt. 569, at 3092-3101 (describing experiences including being sent to mental health institution and writing "innocent" in his blood).)

Many of these cases had factors that made higher damages appropriate than here. In *Johnson* and *Rivera*, for example, Reynaldo Guevara was a defendant, and he invoked the Fifth

8

Amendment during his testimony. In fact, Guevara was forced to assert the Fifth in *Rivera* over 200 times. (*Rivera* Defs. Mot. for New Trial, No. 1:12-cv-04428, Dkt. 745, at 7.) In *Wrice*, the only two Defendants both invoked the Fifth Amendment and declined to testify. (*See*, *e.g.*, *Wrice* 1st Am. Compl., No. 1:14-cv-05934, Dkt. 63, at ¶ 73.) Defendants there were accused of coercing a confession through physical torture. (*Id*. at ¶¶ 1, 14-31.) In both *Rivera* and *Wrice*, Rule 404(b) evidence was presented against Defendants to show they had a history of similar misconduct.[4] Here no such evidence was presented. Further, in *Johnson*, the plaintiff's child grew up without him, and the plaintiff's wife left him while he was in prison, (*Johnson* Am. Compl., 1:05-cv-1042, Dkt. 78-2, at ¶ 22), whereas here, Plaintiff was able to reconcile with his girlfriend and have a family upon release. Also, *Johnson* and *Jimenez* cases were tried more than a decade ago, so both verdicts are far removed for purposes of comparison.

In New York, a district court granted a similar remittitur in a reversed-conviction case. *See Newton v. City of New York*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016). In that case the jury awarded $18 million for 12 years of incarceration, or $1.5 million per year. *Id*. at 162. The court found that "verdicts in other comparable cases have centered around one million dollars or less per year of wrongful incarceration—providing further evidence as to the excessiveness of the jury award in this case." *Id*. at 174. It noted a survey of similar cases indicated "an award one million dollars per year of incarceration constitutes the upper boundary for a reasonable award." *Id*. (citing cases including *Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012), which recognized less than $1 million per year as typical). The court distinguished the award in *Jimenez* because of its unique facts, including the "severe trauma" of being a juvenile, tried and convicted as an adult, serving in

---

[4] *See Wrice* Defs. Mot. for New Trial, No. 1:14-cv-05934, Dkt. 594, at 20-23; *Wrice* Order on Defs. Mot. for New Trial, Dkt. 637, at 33-35; *see also Rivera* Defs. Mot. for New Trial, No. 1:12-cv-04428, Dkt. 713, at 14-16.

9

adult prison. *Newton*, 171 F. Supp. 3d at 174-75. The court also distinguished the verdict in *Johnson*, inter alia, expert testimony regarding Johnson's ongoing health problems, something not present in *Newton* or here. *Id.* at 176.

The $50 million compensatory award in this case is nowhere near the reference point set by recent prior awards, which confirm the observation in *Coleman* that $1 million per year of incarceration is the norm. Should the judgment otherwise stand, this standard calls for a remittitur of the jury award to $10 million.

**II.     Defendants Are Entitled To a Setoff of $1.4 Million From the Judgment Because of Brown's Settlement with the County Defendants.**

In addition, Defendants[5] are also entitled to a setoff against the compensatory damages award in the amount of $1.4 million, which is the amount for which Brown settled claims against the County Defendants prior to trial, because the settlement covers the same injuries for which Brown was awarded compensatory damages.

Courts in this district generally look to state law in resolving the issue of setoffs, including where the claims at issue arise under federal law, including section 1983. *See, e.g., FDIC*, 12 F.4th at 689–90; *Fox*, 2013 WL 2111816, at *4 (considering Illinois law because "§ 1983 is silent on the question of when a setoff for a prior settlement against a joint and several tortfeasor is appropriate"); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 782-84 (7th Cir. 2008) (applying Illinois Joint Tortfeasor Act to issue of setoff for damages recoverable under Warsaw Convention); *cf. Koh v. Village of Northbrook*, No. 11 C 02605, 2020 WL 6681352, at *4 (N.D. Ill. Nov. 12, 2020) (applying Illinois Joint Tortfeasor Act to proposed settlement in Section 1983 action).

---

[5] The setoff would apply to any judgment against Defendant City of Chicago as well, as the City indemnifies the Detectives.

Setoffs of damages awarded at trial are appropriate where a codefendant, who would be liable for contribution, settles with the plaintiff beforehand. *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2010). "The question of setoffs in Illinois is governed by Section 2(c) of the Illinois Joint Tortfeasor Contribution Act…[which] ensures that a nonsettling party will not be required to pay more than its *pro rata* share of the shared liability." *FDIC*, 12 F.4th at 689–90; *see also* 740 ILCS 100/2(c). A setoff for a settlement is designed to prevent a plaintiff from obtaining a double recovery for the same injury. *Kelley v. Courtyard Healthcare Ctr., LLC*, No. 21 CV 6594, 2024 WL 1050167, at *7 (N.D. Ill. Mar. 11, 2024). Put differently, a non-settling defendant is entitled to a setoff "where the settlement covers the same injury as that for which the non-settling defendant was found responsible." *FDIC*, 12 F.4th at 690.

That is certainly the case here. In June 2023, Brown and the County Defendants finalized a settlement: the County Defendants agreed to pay $1.4 million to settle all of Brown's claims against Defendant Michelle Spizzirri and Defendant Cook County, and Brown and the County Defendants further agreed that the parties would bear their own costs, fees, and expenses. (*See* Settlement Agreement and General Release, attached as Exhibit 1, at 1-2.[6]) Pursuant to the settlement agreement, the Court dismissed the County Defendants from the case. (Dkts. 260 and 261.)

As the Court knows, the case proceeded to trial against only Detectives Mancuso and McDonald, and Brown submitted two claims to the jury: (1) a Fifth Amendment claim of coerced incriminating statements, and (2) a Fourteenth Amendment due process claim based on fabrication of evidence. Importantly, Brown alleged that he suffered an identical injury due to the alleged conduct underlying both claims: "the loss of his liberty, physical harm, severe emotional distress

---

[6] Defendants have filed the Settlement Agreement and General Release under seal.

and anguish," i.e., his experience being convicted and incarcerated for the murder of Paris Jackson. (Dkt. 136 at ¶¶ 76 and 82.) The jury ultimately awarded Brown a total of $50 million in compensatory damages as well as $50,000 in punitive damages against Detective Mancuso only, and the Court thereafter entered judgment. (*See* Dkts. 426 and 439.)

Under the circumstances, it is clear that Detectives are entitled to a setoff of $1.4 million from the jury's compensatory damages award due to Brown's settlement with the County Defendants. The settlement is for the same injuries for which Brown was awarded compensatory damages – Brown's experience of being incarcerated for the murder of Paris Jackson. Brown specifically brought his Fifth Amendment coerced incriminating statements claim against Defendant Spizzirri, and though Brown did not technically bring his Fourteenth Amendment due process claim against Defendant Spizzirri, the claim arose clearly out of the same operative facts: the interrogation of Brown by Detectives and Defendant Spizzirri. More importantly though, the setoff inquiry focuses not on who Brown named for each claim but rather on the ***injury*** Brown was found to have suffered. Again, Brown's compensatory damages award is based on a single common injury – the time he spent incarcerated for the murder of Paris Jackson. Accordingly, Defendants are entitled to a setoff of $1.4 million from whatever the final compensatory damages award due to Brown turns out to be.

### III.     Defendant McDonald Should Be Removed From the Judgment.

Finally, the Court should enter judgment for Defendant McDonald. The Court should do so because there is no evidence in the record showing that the jury specifically found Defendant McDonald liable for either of Brown's claims. Given the record, the judgment contains a legal error and should be amended pursuant to Rule 59(e). *See Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642–43 (7th Cir. 2011) (finding Rule 59(e) properly applied to error in judgment caused by confusing and incorrect verdict form).

Brown requested the verdict form only permit the jury to indicate "For Plaintiff" or "Against Plaintiff" on either of his claims. (*See* Dkt. 426.) The record is clear that the jury must have found against Mancuso on one or more claims because they awarded punitive damages against Mancuso and because Mancuso was the only Detective implicated in the fabrication claim (*see* Defs. Renewed Joint Mot. for Judgment as a Matter of Law, Dkt. 459, at 42), which was decided in Brown's favor.

However, the same cannot be said about Defendant McDonald. At Brown's insistence, the Court used a verdict form that did not require the jury to find against any particular individual Defendant, and they were instructed to enter a verdict "For Plaintiff" as a result of a finding of liability against any one of the individuals listed on the claim, who were Weber, Turner, McDonald, or Mancuso. (*See* Dkt. 441 at Jury Instr. Nos. 22, 23 (requiring jury to find "for Plaintiff" if jury found that plaintiff proved elements of the claim against ***any*** "individual").) Weber and Turner had been dismissed as Defendants, but the City would indemnify them and pay damages for their constitutional violations. As explained in Defendants' Renewed Motion for Judgment as a Matter of Law, the only Detective for which there was any allegation or evidence of being involved in fabrication was Mancuso, so that claim could not serve as evidence that the jury found Defendant McDonald liable. (*See* Dkt. 459 at 42.) And based on the verdict form, there is no indication the jury found against Defendant McDonald on the coerced confession claim as opposed to Defendant Mancuso. The jury's verdict indicated that at least one of the individuals listed was found liable, but not which individual. There is no way to ascertain whether the jury made a finding that ***McDonald*** as opposed to Mancuso, Weber, or Turner violated Plaintiff's rights.

13

Ambiguous verdict forms may be altered to be read in conjunction with the jury instructions and interpreted consistently therewith. *Watts v. Laurent*, 774 F.2d 168, 180-81 (7th Cir. 1985). However, the jury here was instructed that once it found one detective violated Plaintiff's rights, it must find "for Plaintiff." (*See* Dkt. 441 at Jury Instr. Nos. 22, 23.) Therefore, pursuant to the instructions, they did not have to consider any individual detective, except Mancuso for the purposes of awarding punitive damages. *Watts*, 774 F.3d at 181 (declining to enter judgment as request by plaintiff on damages because "[w]e can never know with certainty as a matter of fact what was the intention of the original jury.").

Under the circumstances, the judgment contains impermissible speculation about what the jury decided, which amounts to an error of law. As such, the judgment should be amended pursuant to Rule 59(e) and entered in Defendant McDonald's favor. *See Duran*, 653 F.3d at 642–43.

## CONCLUSION

Based on the foregoing reasons and the reasons, Defendants ask the Court to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).

Dated: October 15, 2024

Respectfully submitted,
**DEFENDANT OFFICERS**

By:   */s/ Kyle L. Flynn*
      One of Their Attorneys

John F. Gibbons
Kyle L. Flynn
Thomas Quinn Ford
Tyler Lynn Salway
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
gibbonsj@gtlaw.com
flynnk@gtlaw.com
fordq@gtlaw.com
salwayt@gtlaw.com

**DEFENDANT CITY OF CHICAGO**

By:   */s/ James P. Fieweger*
      One of Its attorneys

James P. Fieweger
Carolyn E. Isaac
Ashni Gandhi
Special Assistant Corporation Counsel
MICHAEL BEST & FRIEDRICH LLP
444 W. Lake Street, Suite 3200
Chicago, IL 60606
jpfieweger@michaelbest.com
ceisaac@michaelbest.com
ashni.gandhi@michaelbest.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing document was served on all counsel via CM/ECF on October 15, 2024.

<i>/s/ Kyle L. Flynn</i>