**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARCEL BROWN, et al.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, et al.,<br><br>Defendants. | No. 19-cv-4082<br><br>The Honorable Lindsay C. Jenkins<br>Magistrate Judge Heather K. McShain |

**PLAINTIFF'S REPLY IN SUPPORT OF BILL OF COSTS**

Plaintiff submitted his bill of costs and all supporting invoices totaling $116,172.73 for over five years of litigation. Defendants have opposed more than two-thirds of these costs, seeking to avoid costs that are well supported and plainly taxable under prevailing law in this jurisdiction. Defs' Resp., ECF No. 479. Nonetheless, after carefully reviewing Defendants' objections, and for the reasons discussed below, Plaintiff agrees voluntarily to withdraw certain costs and now seeks recovery of $98,138.87, as itemized in the attached tables. *See* **Exhibit 1**

**LEGAL STANDARD**

There is a "strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (quotation omitted); *accord Majeske*, 218 F.3d at 824 "Generally only misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay will suffice to justify denying costs." *Id.* Neither circumstance obtains here, and Plaintiff should recover whatever costs the Court determines are properly recoverable under 28 U.S.C. § 1920.

In order to determine the amount of costs to tax, the Court only needs to make two simple determinations: "(1) whether the cost imposed on the losing party is recoverable and (2) if so,

whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). "The prevailing party bears the burden of demonstrating the amount of its recoverable costs because the prevailing party knows, for example, how much it paid for copying and for what purpose the copies were used." *Telular Corp. v. Mentor Graphics Corp.*, No. 01 C 431, 2006 WL 1722375, at *1 (N.D. Ill. June 16, 2006). However, once Plaintiff has made this initial showing, "the burden of demonstrating that costs should be denied falls on the parties opposing costs" because "of [the] presumption in favor of awarding costs." *Kirk v. Clark Equip. Co.*, No. 17 CV 50144, 2020 WL 13032761, at *1 (N.D. Ill. Nov. 19, 2020).

## ARGUMENT

Defendants oppose Plaintiff's costs on numerous grounds. Most of their arguments are unfounded and contrary to law, but where Defendants have made a persuasive argument or identified mistakes in Plaintiff's bill of costs, Plaintiff has conceded the point, as detailed below.

## I. WITNESS FEES.

Defendants contest most of the $831.38 that Plaintiffs initially sought in witness fees, contending that fees should be awarded for only two witnesses, Michelle Spizzirri and Daniel McHugh, for at total of $99.28. Defs' Resp., at 3-5. Plaintiff, however, is entitled to fees for two other witnesses: Brittany Williamson and Renard Branch Jr.[1]

Plaintiff is entitled to reimbursement of witness fees for all subpoenaed trial witnesses, whether or not they ended up testifying at trial. *See Apostal v. City of Crystal Lake, Ill. State*

[1] Plaintiff no longer seeks reimbursement of fees for following City witnesses, because the City's returned the checks to these witnesses before they were cahsed.: Allegra Martin, Brian Dorsch, Charles Halpern, Eddie Reed, and John Haniacek. Plaintiff withdraws his claim with respect to Kayla Kuykendoll, who was listed in error; counsel was never able to locate and serve Ms. Kuykendoll with her witness fee during trial. Plaintiff further withdraws his claim with respect to Wham Cary and Allegra Martin. While both were served with subpoenas and a witness check, it appears that neither has yet cashed the check. While Plaintiff might still be able to recover these costs, on the theory that neither witness has returned their check and could well deposit it at any time, Plaintiff chooses to forego reimbursement..

*Police*, 165 F.R.D. 508, 512 (N.D. Ill. 1996) ("The fact that a subpoenaed witness did not testify at trial . . . is not a basis for denying the witness fees which have nevertheless been paid."). Renard Branch Jr., of course, did testify at trial. Brittany Williamson, who was an Amundsen Park witness, did not end up testifying but was listed as a potential trial witnesses by both parties. *See* ECF No. 348-2, 348-3 (witness lists). Plaintiff's decision ultimately not to call her at trial is immaterial, *id.*, and, in any case, that decision followed ongoing developments during trial with respect to the manner in which the Court allowed Defendants to elicit testimony regarding the police investigation about which Ms. Williamson would have testified. Plaintiff notes that Defendants also opted not to call her despite also serving her with a trial subpoena. Had Defendants prevailed, they would undoubtedly be seeking reimbursement of those costs.

To the extent Defendants oppose the fees paid to these two witnesses on the ground that there is insufficient evidence such fees were actually tendered or paid, Plaintiffs attach additional evidence here, in the form of the executed trial subpoenas with proof of service that accompanied the witness checks. *See* **Exhibit 2**. Plaintiff need not provide cancelled checks to prove the money was deposited. *See Apostal*, 165 F.R.D. at 512-13 (rejecting argument that fees should not be awarded because checks were never cashed because, like here, the party opposing fees "submitted no proof of this fact, nor ha[d] the checks been tendered back to [the prevailing party]."). In any case, counsel inquired regarding the checks to these witnesses: Ms. Williamson and Mr. Branch have both cashed their checks. Plaintiff further represents that the travel fee provided to each witness was simply the mileage rate for the distance from the residence or workplace of each witness to the courthouse and back. *See* 28 U.S.C. § 1821(c).

Defendants contend that Plaintiff is somehow not entitled to recover fees for Renard Branch Jr.'s attendance because "Mr. Branch is Plaintiff's cousin and was clearly on Plaintiff's

side in this case." Defs' Resp. at 3. Defendants cite precisely zero authority for this argument. There is no "friends and family" discount when paying witness fees—or when taxing them to the losing party. To the contrary, Plaintiff had a statutory obligation to pay Mr. Branch when he was subpoenaed, and those fees are categorically taxable. *See* 28 U.S.C. § 1821(a)(1); § 1821(c)(4); § 1921(3). The fact that Plaintiff does not seek fees for other family members is neither here nor there. *See* Defs' Resp. at 3. What other family members chose to do is immaterial to whether Defendants are on the hook for the fees actually paid to Mr. Branch. Moreover, the Court's inquiry is not whether a witness might have voluntarily testified absent a subpoena and statutory fee, *see* Defs' Resp. at 3 (complaining that Mr. Branch returned voluntarily to hear the verdict), and, in any case, Defendants have no basis to second guess that a trial subpoena was necessary. Mr. Branch, unlike other family members, was represented by separate counsel as a witness in this litigation and may well have been advised not to testify had he not been compelled to do so.

Defendants also choose to pick a spurious fight over the $41.79 paid to Mr. Branch to cover his travel. *See* Defs' Resp. at 4. As noted, this amount corresponds to the ordinary mileage rate for travel from his job to the courthouse and back to work. The payment was tendered to Mr. Branch in care of his attorney, Jonathan Quinn.[2]

For these reasons, Plaintiff is entitled to costs in the amount of $229.45 for the witness fees paid to four witnesses: Michelle Spizzirri, Daniel McHugh, Brittany Williamson, and Renard Branch, Jr.

## II. DEPOSITION TRANSCRIPTS, VIDEO FEES, AND ASSOCIATED COSTS.

Defendants seek to avoid the bulk of the deposition-related costs Plaintiff incurred litigating this case over the course of five years. Nearly all of their arguments fail. Plaintiff

[2] Plaintiff inadvertently listed Mr. Branch's witness fees twice in his bill of costs. Plaintiff hereby corrects the error.

explains why below. Plaintiff has also attached a table as **Exhibit 1** that provides specific responses to Defendants' objections to each of Plaintiff's claimed costs, and then calculates the properly taxable amount of each item in accordance with the principles described below.

**Copies of deposition exhibits**. Plaintiff is entitled to "[c]osts for deposition exhibits," which "are recoverable if they were 'reasonable and necessary, in that they aid in understanding an issue in the case.'" *Hillmann v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *3 (N.D. Ill. Aug. 16, 2017) (quoting *Lewis v. City of Chi.*, No. 04 C 6050, 2012 WL 6720411, at *7 (N.D. Ill. Dec. 21, 2012) (citation omitted)). Defendants argue these costs should be disallowed because the exhibits in question were also produced by the parties in discovery and so Plaintiff already had them. Defs' Resp. at 6. Courts in this district routinely reject precisely this argument for a number of practical reasons.

*First*, "even if the exhibits have been produced in discovery . . . exhibits are often authenticated during a deposition, and it may be necessary for attorneys to use the marked exhibit in order to benefit from that authentication." *In re Dairy Farmers of Am.*, Inc., 80 F. Supp. 3d 838, 856 (N.D. Ill. 2015). *Second*, "because documents are usually referred to in depositions by their assigned exhibit numbers"—as they were in this case—"litigants need to use the exhibit-stamped version of a document in order to benefit from a witness's deposition testimony about the document." *Hillmann v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *3 (N.D. Ill. Aug. 16, 2017). *Third*, "[t]he need for copies of deposition exhibits becomes especially acute in complex cases like this one," which involved dozens of depositions involving numerous exhibits each. *Doe v. Loyola Univ. Chicago*, No. 18-CV-7335, 2023 WL 3074676, at *5 (N.D. Ill. Apr. 25, 2023). As one court explained: "Imagine reading a deposition transcript about Exhibit #5. And then, imagine if the party didn't order the exhibits. What exhibit

was the witness talking about? . . . The price of uncertainty can be high." *Id. Finally*, it is simply not the case that all exhibits in this case were tendered in discovery. For example, in many depositions, either the "deponent, attorney, or both marked on the exhibit during the deposition, making the deposition copy unique." *Id.* Indeed, some of those marked deposition exhibits, such as maps of Amundsen Park, were even listed as trial exhibits by the parties.

The bottom line is that "there is nothing unreasonable about ordering a copy of the deposition exhibits, even if the party already has a copy of the documents from discovery. In fact, ordering a copy of the marked deposition exhibits is closer to routine." *Doe v. Loyola Univ. Chicago*, 2023 WL 3074676, at *6. Plaintiff is thus entitled to recover costs for copies of the exhibits and has figured these costs into the revised amounts he claims, as detailed in **Exhibit 1**.

**Video deposition costs.** Plaintiffs are entitled to the costs involved in videorecording depositions and holding depositions by videoconference/Zoom to facilitate such recording. Defendants categorically oppose all video costs on the theory that Plaintiff cannot recover for both a transcript and a video recording of a deposition. *See* Defs' Resp. at 6 (citing *Riddle v. First Tenn. Bank, Nat'l Ass'n*, No. 3:10-cv-00578, 2011 WL 6740334, at *2 (M.D. Tenn. Dec. 20, 2011)). But that is not the law in this jurisdiction. The Seventh Circuit held in 2008 that a party could recover for both a deposition transcript and video when reasonably necessary. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008). Indeed, the Circuit Court predicted that "most transcripts of video-recorded depositions" would be recoverable. *Id.* Since then, district courts have recognized that "[c]osts for video-recorded depositions are generally recoverable by the prevailing party." *Cooper v. Cassidy*, No. 12-CV-5104, 2015 WL 14071812,

at *1 (N.D. Ill. Dec. 22, 2015); *Kirk v. Clark Equip. Co.*, No. 17 CV 50144, 2020 WL 13032761, at *1 (N.D. Ill. Nov. 19, 2020).[3]

Defendants objection to video deposition costs, relying on a case more than a dozen years old, is a vestige of an era where videotaping depositions was a novel innovation. When the technology first arrived on the scene, video-depositions were a rare exception, and perhaps an indulgence. That is no longer true. In the dozen-plus years since, they have become the norm, and are routinely compensable as costs.

Here, there were several reasons why it was reasonably necessary for Plaintiff to videorecord the depositions and incur the ancillary fees associated with doing so. *First*, many of the fact witnesses who were deposed in this case were reluctant to testify, were difficult to track down, and may well have been unwilling or unable to testify at trial, making a videorecorded deposition reasonable. Defendants are well aware of this dynamic given the extensive back-and-forth among the parties regarding their efforts to locate and serve witnesses and the multiple extension of the fact discovery deadline that the parties obtained to attempt to locate additional witnesses for depositions. Remarkably, Defendants refuse even to concede that a videorecording of Marisol Ocampo's deposition was reasonably necessary, *see* Defs' Resp at 7, even though (as the Court undoubtedly remembers) Ms. Ocampo sat for a deposition only after Plaintiff obtained a writ of body attachment and U.S. Marshals physically arrested her and brought her to the courthouse. The City, of course, ended up playing more than an hour of the deposition testimony

---

[3] Defendant argues, in a footnote, that the Seventh Circuit's 2008 opinion in *Little*, 514 F.3d at 702, permitting recovery for both video and transcripts was superceded by an amendment to 28 U.S.C. § 1920 enacted later in 2008. Defs' Resp. at 7 n.3. But Defendants cite no in-circuit precedent for the supposed abrogation of *Little* and courts in this district have continued to follow *Little*'s holding for 16 years since the statute was amended. *See generally Hallihan v. Progressive Direct Ins. Co.*, No. 15-CV-01068, 2016 WL 7404445, at *2 (S.D. Ill. Dec. 22, 2016) (explaining that the 2008 amendments did not override *Little*, citing sources)

that Plaintiff had videorecorded. If Defendants will not even concede that this videorecording was "reasonably necessary," they are plainly applying the wrong standard.

Plaintiff's decision to obtain videorecordings was plainly reasonable in light of all the uncertainty involved in litigating a complex case over more than five years involving dozens of witnesses relevant to numerous interlocking claims. *See, e.g.*, *Cooper v. Cassidy*, No. 12-CV-5104, 2015 WL 14071812, at *2 (N.D. Ill. Dec. 22, 2015) ("[T]he relevant standard for whether a deposition may be taxed as a cost is whether it was necessary under the facts and circumstances at the time — irrespective of what happened at trial."). Plaintiff was prudent to obtain videorecordings given the uncertainty that any given witness might be unreachable, outside the jurisdiction, uncooperative, ill, or otherwise unavailable by the time trial rolled around. Nor could Plaintiff have predicted how trial would unfold years after the depositions.

*Second*, courts can consider, as an independent and sufficient basis for awarding video costs, whether a witness actually ended up being listed on one or the other party's "will call" or "may call" list at trial. *See The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2017 WL 4882379, at *5 (N.D. Ill. Oct. 30, 2017) ("[Video] costs may be awarded for witnesses who appear on the 'may call' or 'will call' trial witness lists."). That inquiry further supports Plaintiff's claim: *every single one* of the witnesses for whom Plaintiff seeks to recover videorecording fees was on one or both of the parties' witness lists. *See* ECF No. 348-2 (Pl's Witness List); ECF No. 348-3 (Defs' Witness List).[4] The fact that all of these witnesses were

[4] Plaintiff seeks videorecording costs for the following deponents; the party that listed each individual as a potential trial witness is indicated in parentheses: Brian Dorsch (both); Victor Kubica (both); Stephen Czablewski (Plaintiff); Eddie Reed (both); William Burke (both); Ruben Weber (both); Michael Mancuso (both); Michelle Spizzirri (both); Eugene Stanciel (both); Garrick Turner (both); Rufus McGee (both); William Whalen (Plaintiff); Aidan O'Connor (Defendants); Lisa Longo (Defendants); Marison Ocampo (both); Allegra Martin (Plaintiff); Kevin DeBoni (Defendants); Karen Kerbis (both); Daniel McHugh (both); Eric Olson (both); Charles Halpern (Plaintiff).

important enough to be listed as trial witnesses demonstrates that Plaintiff was reasonable to pay for videorecording costs in each case.

*Finally*, Defendants' arguments against awarding costs for videorecorded depositions are simply hypocritical. Defendants themselves videorecorded all or nearly all of the depositions that they arranged. Their judgment was the same as Plaintiff's: videorecordings were necessary to preserve the actual testimony of witnesses who might disappear or be outside of the jurisdiction by the time of trial. *See The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2017 WL 4882379, at *5 (N.D. Ill. Oct. 30, 2017) ("“[A] party is justified in obtaining a video in addition to a transcript if the other side did so.”). Knowing that Defendants were preserving all of their depositions on video in a hotly contested case, it was reasonable and necessary for Plaintiff to do the same. If Defendants had prevailed at trial, they would undoubtedly be seeking to recover the same video costs for the depositions they arranged. Fairplay dictates that Plaintiff's decisions to videorecord depositions were reasonable, necessary and, therefore, taxable.

Separately, Defendants fault Plaintiff for seeking to recover costs expended not just for videotaping depositions but also for associated videoconferencing services. *See* Defs' Resp. at 8. These costs, which amount to the fee required for the court reporter to host the deposition on a Zoom conference and to videorecord in that manner, were undoubtedly reasonable and necessary. All of these depositions took place following the onset of the COVID-19 pandemic. In-person depositions would have convened witnesses, counsel, videographers, and court reporters together in a small room, which was contrary to policy for long stretches of the pandemic and was, at all times, an unnecessary risk that many deponents and counsel were not willing to take absent exceptional need.

Defendants' memorandum anticipates that Plaintiff would make this common-sense argument, *see* Defs' Resp. at 8, but Defendants nonetheless contend that Plaintiff cannot recover video fees because the parties were able to take a certain number of depositions in person despite the pandemic. *Id.* But the fact that such arrangements were able to be made for the depositions of certain key witnesses like Defendant Mancuso and Plaintiff Brown—by agreement of all parties and deponents, to be clear—does not mean that that in-person depositions should reasonably have happened in every single case. To the contrary, the imperative throughout the pandemic was to minimize the risk of infection and spread. Holding depositions remotely was a prudent means of doing so. Indeed, Defendants made the same judgment call as Plaintiff: they deposed Plaintiff and certain other central witnesses in person, but conducted the rest by videoconference.

Defendants further contend that Plaintiff must show an "actual need" for a given deposition to be taken remotely. Defs' Resp. at 8. But the law only requires Plaintiff to show that the costs were reasonably necessary. It is in any case difficult to understand what Defendants mean by "actual need" or what kind of proof would satisfy them. Minimizing the risk of infection and spread was and remained an "actual need" throughout the pandemic. And while Plaintiff does not believe must enumerate the medical risk factors that played into the decision to take COVID precautions in each instance, Plaintiff notes, for example, that one member of his legal team was recovering from major surgery in the spring and early summer of 2022, which necessitated heightened precautions even at that relatively late stage in the pandemic.

Defendants also fault Plaintiff for seeking to recover the costs for "syncing" certain videos. *See* Defs' Resp. at 8. The fees in question were expended to synchronize the transcript and video of two witness' depositions: Michael Mancuso and Marisol Ocampo. *See* Exhibit 1 (lines 119-121). Both of these witnesses were called at trial, and the synchronized video

deposition testimony of both of them was in fact used at trial. Courts in this district have determined, going back more than a decade, that that such video "synchronization" costs are properly taxable when reasonably necessary, as they plainly were here. *See, e.g.*, *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 2011 WL 5008425, *3 (N.D. Ill. Oct. 20, 2011) ("“Costs associated with digitalization and synchronization of videotaped depositions may also be taxed."); *Olivarius v. Tharaldson Prop. Mgmt. Inc.*, No. 08 C 463, 2012 WL 1117468, at *4 (N.D. Ill. Apr. 3, 2012); *The Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2017 WL 4882379, at *5 (N.D. Ill. Oct. 30, 2017).

For all of these reasons, Plaintiff is entitled to recover the costs he expended associated with videorecorded depositions, as detailed in **Exhibit 1**.

**Deposition transcription costs.** Defendants seek to improperly limit the per-page rates that Plaintiff may recover for the cost of deposition transcripts. Plaintiff agrees with Defendants that the maximum recoverable rates for "original" transcripts was $3.65/page and $4.00/page before and after October 1, 2023, respectively. Defs' Resp. at 10 n.4.[5] But Defendants seek to improperly limit some of Plaintiff's transcript costs to the much lower "copy" rate of $0.90/page and $1.00/page. *See*, *e.g.*, Ex. 1, lines 48-50, 56, 60, 64, 68, 72, 74, 76-77, 79, 107, 110. Defendants do not explain their reasoning for this reduction in their memorandum and therefore fail to carry their burden to rebut these claimed costs. It appears, however, that Defendants are resting on the mistaken notion that Plaintiff may only recover at the "copy" rate if Defendants happen to have ordered the transcript first. That is not the law. Instead, "[i]n this context, an 'original' means the first copy ordered *by each side*, not the first copy ordered by any party." *Doe v. Loyola Univ. Chicago*, No. 18-CV-7335, 2023 WL 3074676, at *4 (N.D. Ill. Apr. 25,

[5] Plaintiff also agrees with Defendants that "attendance fees" charged by court reporters are limited to the rates authorized by the Court—*i.e.* up to $110 for 4 hours or less and up to $220 for a full day. Defs' Resp. at 10 n.4.

2023) (emphasis in original). "Courts interpret [Local Rule 54.1(b)] to mean that *each* party may tax costs for one copy of a transcript at $3.65 per page, and costs for a second copy at $0.90 per page." *Alam Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 2019 WL 3733443, at *1 (N.D. Ill. 2019) (emphasis in original); *see also Williams v. Schwarz*, 2018 WL 4705558, at *2 (N.D. Ill. 2018);*Temple v. City of Chicago*, 2016 WL 8669630, at *3 (N.D. Ill. 2016).

Here, all of the transcripts for which Plaintiffs seeks costs are "originals" in this sense; they were the first copies ordered by Plaintiff.[6] Accordingly, Plaintiff is entitled to recover his transcription costs up to a maximum of $3.65/page across the board. In addition, in a limited number of instances, Plaintiff ordered a "condensed" copy of the transcript in addition to the original and was charged separately for this copy. *See* Exhibit 1 (lines 48-50, 56, 60, 64, 68, 74). "Courts in this District, however, have permitted recovery for condensed transcript costs, noting that under Local Rule 54.1 'the losing party can be taxed for the cost of a deposition transcript plus one copy.'" *Pezl v. Amore Mio, Inc.*, No. 08 C 3993, 2015 WL 2375381, at *3 (N.D. Ill. May 13, 2015) (quoting *Rexam Beverage Can Co. v. Bolger*, No. 06 C 2234, 2008 WL 5068824, at *8 (N.D. Ill. Nov. 25, 2008)). In this case, it was especially necessary for Plaintiff to order a condensed copy because this Court's individual rules of practice direct parties to submit transcripts "in the condensed transcript format" where possible, as did Judge Ellis when she was presiding over this case. In these circumstances, Plaintiff is entitled to recover for the condensed copies he ordered at the reduced "copy" rate.

Separately, Defendants seek to excise costs for transcript "processing fees" and similar administrative charges imposed by the court reporter in order to process, produce, and deliver a transcript order. Defendants do not actually make any argument in support of these cuts in their

---

[6] In one instance, Plaintiff's counsel appears to have inadvertently placed two orders for the same transcript. *See* Exhibit 1, lines 2, 88. Plaintiff voluntarily withdraws his claim for costs for the later-ordered transcript.

memorandum; they merely describe the charges as "vague" in their itemized objections to Plaintiff's costs. *See* ECF No. 479, 479-1. Defendants thus fail to carry their burden to show the costs should be disallowed. In any case, courts in this district routinely award costs for precisely these kinds of "processing fees" and similar charges imposed by court reporters. *See, e.g.*, *SP Techs., LLC v. Garmin Int'l, Inc.*, No. 08 CV 3248, 2014 WL 300987, at *10 (N.D. Ill. Jan. 10, 2014); *Vesey v. Envoy Air, Inc.,* No. 18 CV 04124, 2020 WL 13682563, at *4 (C.D. Ill. Apr. 30, 2020), aff'd, 999 F.3d 456 (7th Cir. 2021). Plaintiff is entitled to recover those costs here.

Finally, Defendants have sought to reduce to zero Plaintiff's recovery for certain transcripts because the invoices in question do not specify the number of pages in the transcript. *See* Ex. 1, lines 91, 97, 98, 108, 109. Defendants contend that without page counts in the invoice it is impossible to compute the properly recoverable transcription cost and so, somehow, Plaintiff should recover nothing. Defendants do not even attempt to defend this position in their memorandum, perhaps because the position is indefensible. *First*, all of the depositions in question were reported by Veritext or US Legal Support, companies that *Defendants themselves* hired. Plaintiff cannot be penalized because Defendants' vendors issued threadbare invoices. *Second*, there is no mystery about how many pages are in these transcripts because all parties *have the actual transcripts*.[7] Plaintiffs do not forfeit costs just because Defendants must look beyond the face of the invoice to ascertain its propriety. *Finally*, there is no authority for the proposition that an invoice needs a page count to be reimbursed. To the contrary. *See* *Cunningham v. Jenkins*, No. 17-CV-126-RJD, 2022 WL 1555373, at *2 (S.D. Ill. May 17, 2022) ("Plaintiff has not pointed to any authority requiring invoices for deposition transcripts to include page numbers in order to be recoverable, and the Court is unaware of any such authority.").

[7] The number of pages in each of these transcripts is as follows: Alicea Hardiman (118); Brittany Williamson (172); Kayla Kuykendoll (155); Matthew S. Jones (284); Brian L. Cutler (248).

The Court should award Plaintiff the costs of deposition transcripts in accordance with the principles above. Plaintiff has recalculated these recoverable costs in **Exhibit 1**.

**III. COURT TRANSCRIPTS AND OTHER TRANSCRIPTS.**

Defendants contest Plaintiff's costs for expedited transcripts but, as Defendants concede, such costs are recoverable if reasonable and necessary. Defs' Resp. at 10. Plaintiff required expedited court transcripts on five occasions, all amply justified: (1) transcripts of an on-the-record discovery ruling on December 3, 2020 that required Plaintiff to quickly take actions regarding ESI searches, *see* Ex. 1, ln. 16; (2) transcript of the final pretrial conference, necessary for numerous purposes at trial, Ex. 1, ln. 6; (3) transcript of the first trial day, necessary in order to file an emergency overnight motion regarding Defense counsel's improper comments during opening argument, Ex. 1, ln. 7; (4) transcripts of Mr. Brown's trial testimony, necessary in order to prepare for closing argument, Ex. 1, ln. 8; and (5) a transcript of the penultimate day of trial, necessary to file an overnight trial brief with respect to Marisol Ocampo's potential testimony the next day, Ex. 1. Ln 9. Expedited service was reasonable and necessary in each instance.

Plaintiff is also entitled to recover for his copy of the entire trial transcript, which was obtained at a rate of $1.35/page, because this transcript was Plaintiff's first copy and therefore can be taxed up to the $4/page cap for "originals." *See supra*. The fact that Defendants later chose to attach a complete trial transcript to one of its post-trial motions is immaterial. *See* Defs' Resp. at 10-11. Plaintiff did not know that was coming and reasonably obtained a copy sooner to prepare for post-trial motions and ascertain whether quick post-trial filings were necessary (*e.g.* filing demonstratives, indices, or other trial documents).

Plaintiff is also entitled to costs for transcripts of three central pieces of evidence: Plaintiff's ERI, *see* Ex. 1, ln. 18, the recordings of 9-1-1 dispatch on the evening of the shooting

and the following morning, *see* Ex. 1, ln. 19, and jail calls that Defendants wished to use at trial, *see* Ex. 1, ln. 45-47. The ERI was plainly central evidence and the transcript was used extensively at trial. Dispatch audio was also central evidence given that it documented reports of crossfire (up to 20 shots), groups of men with guns, and a shot fired 45 minutes after Plaintiff left the park. The transcript of that audio was used by both parties at trial during Defendant Mancuso's testimony. *See, e.g.*, Trial Tr. 908-909, 958-59.

Transcripts of the jail calls were necessary for a different reason: Defendants identified 30 lengthy calls they wished to introduce at trial, and Plaintiff was required to review them in full, given that Defendants did not initially identify the specific portion of each call they intended to use, and Plaintiff needed to determine whether other portions were necessary for the sake of completeness. *See* ECF Nos. 297; 335, at 2-5; 344. Given the compressed time period, Plaintiff secured an inexpensive, automated transcript to expedite counsel's review. *See* Ex. 1, ln. 45-47 (Rev.com invoices). This was a necessary and eminently reasonable expense that was necessitated by Defendants' choice to designate so many lengthy calls.

**IV. PRINTING COSTS AND CLERK FEES.**

Defendants contest $221 for costs relating to manila folders, redwelds and custom labels. Defs' Resp. at 11. Plaintiff agrees to withdraw these costs and seeks only the uncontested sum of $1,576.82 for printing costs. Plaintiff likewise agrees to withdraw the $150 *pro hac vice* fee paid to the Clerk. *Id.* at 11-12. *See* Ex. 1, at 30 (summarizing revised claim for costs).

**CONCLUSION**

The Court should tax costs claimed by Plaintiffs in accordance with the rules and principles described above. The total amount the Court should award is $98,138.87, as detailed above and in the attached **Exhibit 1**.

Respectfully submitted,

**PLAINTIFF BROWN**

By: /s/ Jonathan Manes
One of his attorneys

Jonathan Manes
Roderick and Solange MacArthur Justice Center
160 E. Grand Ave., 6th Fl.
Chicago, Illinois 60611
(312) 503-0012

Locke E. Bowman
Jon Loevy
Tom Kayes
Loevy & Loevy
311 N. Aberdeen St., Ste. 3
Chicago, IL 60607
(312) 243-5900

December 17, 2024.

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on December 17, 2024, he served the foregoing document and accompanying exhibits upon all counsel who have filed appearances in this action via CM/ECF.

/s/ Jonathan Manes